## Commonwealth o Massachusetts
## MIDDLESEX   SUPERIOR COURT DEPARTMENT
## THE TRIAL COURT
### Woburn

## Docket#2181CV00437

I. :. Arthur Johns, Deputy Assistant Clerk of the Superior Court, Within and for said County

of Middlesex, do certify that the annexed papers are true copies made by photographic process of

pleadings in **2181CV00437** entered in the Superior Court on the **26h** day of **February** in the year of our Lord 2021**.**

In testimony whereof, I hereunto set my hand and affix seal of said Middlesex Superior Court at

Woburn in said county, this **14h** day **of June**, in the year of our Lord **Two Thousand Twenty-One.**

Arthur Johns
Deputy Assistant Clerk

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

**2181CV00437 Cass, Stephen F. vs. Downs, Jeanne et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Equitable Remedies | **FILE DATE:** | 02/26/2021 |
| **ACTION CODE:** D13 | | **CASE TRACK:** | A - Average |
| **DESCRIPTION:** Declaratory Judgment G.L. c. 231A | | | |
| **CASE DISPOSITION DATE:** | | **CASE STATUS :** | Open |
| **CASE DISPOSITION:** | Pending | **STATUS DATE :** | 02/26/2021 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil C Rm 740 |

| PARTIES | |
|---|---|

| | | |
|---|---|---|
| **Plaintiff**<br>Cass, Stephen F.<br>P.O. Box 2723<br>Orleans, MA 02653 | **Attorney**<br>Pro Se<br>Massachusetts Bar<br>Added Date: 02/26/2021 | **PROPER** |
| **Defendant**<br>Downs, Jeanne | **Private Counsel**<br>Adam Simms<br>Pierce Davis and Perritano LLP<br>Pierce Davis and Perritano LLP<br>10 Post Off Square<br>Suite 1100 N<br>Boston, MA 02109<br>Work Phone (617) 350-0950<br>Added Date: 06/09/2021 | **632617** |
| **Defendant**<br>Grieco, Ellen | **Private Counsel**<br>Adam Simms<br>Pierce Davis and Perritano LLP<br>Pierce Davis and Perritano LLP<br>10 Post Off Square<br>Suite 1100 N<br>Boston, MA 02109<br>Work Phone (617) 350-0950<br>Added Date: 06/09/2021 | **632617** |
| **Defendant**<br>Miller, Louise | **Private Counsel**<br>Adam Simms<br>Pierce Davis and Perritano LLP<br>Pierce Davis and Perritano LLP<br>10 Post Off Square<br>Suite 1100 N<br>Boston, MA 02109<br>Work Phone (617) 350-0950<br>Added Date: 06/09/2021 | **632617** |
| **Defendant**<br>Murphy, Hesse, Toomey and Lehane, LLP | | |
| **Defendant**<br>Tate, Regina | | |


**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

| Defendant | Private Counsel | 632617 |
|---|---|---|
| Unobskey, Arthur | Adam Simms<br>Pierce Davis and Perritano LLP<br>Pierce Davis and Perritano LLP<br>10 Post Off Square<br>Suite 1100 N<br>Boston, MA 02109<br>Work Phone (617) 350-0950<br>Added Date: 06/09/2021 | |
| **Defendant**<br>Wayland School Committee | **Private Counsel**<br>Adam Simms<br>Pierce Davis and Perritano LLP<br>Pierce Davis and Perritano LLP<br>10 Post Off Square<br>Suite 1100 N<br>Boston, MA 02109<br>Work Phone (617) 350-0950<br>Added Date: 06/09/2021 | 632617 |

### FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 02/26/2021 | Civil Filing Fee (per Plaintiff) | 240.00 | 240.00 | 0.00 | 0.00 |
| 02/26/2021 | Civil Security Fee (G.L. c. 262, § 4A) | 20.00 | 20.00 | 0.00 | 0.00 |
| 02/26/2021 | Civil Surcharge (G.L. c. 262, § 4C) | 15.00 | 15.00 | 0.00 | 0.00 |
| 02/26/2021 | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b | 35.00 | 35.00 | 0.00 | 0.00 |
| | **Total** | **310.00** | **310.00** | **0.00** | **0.00** |



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| | | INFORMATIONAL DOCKET ENTRIES | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 02/26/2021 | | Attorney appearance<br>On this date Pro Se added for Plaintiff Stephen F. Cass | |
| 02/26/2021 | | Case assigned to:<br>DCM Track A - Average was added on 02/26/2021 | |
| 02/26/2021 | 1 | Original civil complaint filed. | |
| 02/26/2021 | 2 | Civil action cover sheet filed. | |
| 02/26/2021 | | Demand for jury trial entered. | |
| 02/26/2021 | | EDocument sent:<br>A Tracking Order was generated and sent to:<br>Plaintiff:  Stephen F. Cass P.O. Box 2723, Orleans, MA 02653 | |
| 05/20/2021 | 3 | Amended: First amended complaint filed by Stephen F. Cass<br>and Jury Demand | |
| 06/01/2021 | 4 | Service Returned for<br>Defendant Tate, Regina: Service made in hand;<br><br>on 5/24/21, at Crown Colony Drive, Murphy, Hesse, Toomey and Lehane,<br>Suite 410, Quincy, MA 02169 | |
| 06/08/2021 | 5 | Service Returned for<br>Defendant Downs, Jeanne: Service made at last and usual;<br><br>195 Concord Rd, Wayland, MA, on 05/24/2021 | |
| 06/08/2021 | 6 | Service Returned for<br>Defendant Unobskey, Arthur: Service made in hand;<br><br>Seth Crandell, agent, 41 Cochituate Rd, Wayland, MA, on 05/24/2021 | |
| 06/08/2021 | 7 | Service Returned for<br>Defendant Miller, Louise: Service made in hand;<br><br>Seth Crandell, agent, Selectman's Office, 41 Cochituate Rd, Wayland, MA,<br>on 05/24/2021 | |
| 06/08/2021 | 8 | Service Returned for<br>Defendant Grieco, Ellen: Service made at last and usual;<br><br>14 Mellen Lane, Wayland, MA, on 05/24/2021 | |
| 06/08/2021 | 9 | Service Returned for<br>Defendant Wayland School Committee: Service made in hand;<br><br>Seth Crandell, agent, 41 Cochituate Rd, Wayland, MA, on 05/24/2021 | |
| 06/09/2021 | 10 | Defendants Jeanne Downs, Arthur Unobskey, Louise Miller, Ellen Grieco,<br>Wayland School Committee's Notice of<br>Filing of Notice of Removal | |



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| 06/09/2021 | Attorney appearance<br>On this date Adam Simms, Esq. added as Private Counsel for Defendant Jeanne Downs. |
|---|---|
| 06/09/2021 | Attorney appearance<br>On this date Adam Simms, Esq. added as Private Counsel for Defendant Arthur Unobskey. |
| 06/09/2021 | Attorney appearance<br>On this date Adam Simms, Esq. added as Private Counsel for Defendant Louise Miller. |
| 06/09/2021 | Attorney appearance<br>On this date Adam Simms, Esq. added as Private Counsel for Defendant Ellen Grieco. |
| 06/09/2021 | Attorney appearance<br>On this date Adam Simms, Esq. added as Private Counsel for Defendant Wayland School Committee. |

MIDDLESEX, SS.     *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this Fourteenth day of June, 2021.

_____
Deputy Assistant Clerk

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX ss.**

**SUPIEROR COURT DEPARTMENT OF THE TRIAL COURT**

Docket # 2181CV437

---

Stephen F. Cass

                    Plaintiff

v.

JEANNE DOWNS, ARTHUR UNOBSKEY, LOUISE
MILLER, ELLEN GRIECO, REGINA TATE,
MURPHY, HESSE, TOOMEY AND LEHANE, LLP,
WAYLAND SCHOOL COMMITTEE

                    Defendant

**COMPLAINT AND JURY DEMAND**

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

FEB 2 6 2021

CLERK

## INTRODUCTION

This action is being commenced to recover damages sustained by plaintiff Stephen F. Cass as a result of the retaliatory actions of Defendants Jeanne Downs, Ellen Grieco, Louise Miller, Arthur Unobskey, Regina Tate, Murphy, Hesse, Toomey and Lehane, LLP, and Wayland School Committee ("WSC") (collectively "Defendants"). Mr. Cass seeks compensation for the wrongful and/or tortious acts of the Defendants, specifically their retaliatory actions which violated Cass' civil rights under 42 U.S.C. § 1983 and MA G.L. c. 12, § 11H,I as well as their defamation, negligent and intentional infliction of emotional distress, negligent supervision, civil conspiracy and whistleblower retaliation.

Cass served as athletic director at for the Wayland Public Schools ("WPD") from 2013-2015. Upon accepting the job, he was unaware of numerous problems which plagued the athletic program including two athletic director predecessors being fired in the previous three years, the

hiring of two auditing firms to review athletic finances who determined over $300,000 had been misused by the athletic program, and budgets overruns in excess of 30%.

School committee members in particular were adamant that the athletic department's fiscal and operational issues needed to be addressed and made numerous public comments on the subject and directly to Cass himself. As result, Cass went to work to balance the budget and review the operation issues in his department. Most the issues he uncovered were the result of the actions of the Wayland High School ("WHS") football coach who was also the assistant principal. Rather than support Cass in addressing the issues, the WHS principal illegally fired Cass. As a result of the actions of his supervisor, Cass ultimately took his complaints to the WSC in accordance with his school policy. They refused to meet with him.

After Cass' employment ended, the WSC and their attorney Regina Tate submitted false and incomplete information to state agencies under the guise of 'investigating' Cass' complaints. Their actions, together with the actions of WPS officials, caused Cass to be labeled a liar and become a pariah in Wayland. Cass was even arrested by police friends of the football coach as a result of his whistleblowing actions.

Cass was vindicated when a jury unanimously found he was fired in violation of the Massachusetts Whistleblower Act. After the trial, Cass expected to be immediately rehired to his athletic director position in accordance with WSC policy. However, rather than rehire him, WSC members and WPS officials made disparaging public remarks and applauded school officials for their actions.

For years, WSC members and WPS officials were committed to covering up the issues Cass disclosed. This led to a final incident in January 2020 in which the WSC, as they had done previously, hired a WPD officer to intimidate and prevent Cass from speaking at a WSC meeting

in order to inform the Wayland community that WSC and WPS officials had covered up allegations of rape and sexual assault committed by football players.

## PARTIES

1.      Plaintiff currently resides at 9 Captain Linnell Rd., Orleans, Barnstable County, Massachusetts.  His mailing address is PO Box 2723, Orleans, MA 02653.

2.      Defendant Arthur Unobskey ("Unobskey") is an employee of the Wayland Public Schools.  He is sued in her individual capacity.  His employment address is 41 Cochituate Rd., Wayland, MA 01778, Middlesex County, Massachusetts.

3.      Defendant Louise Miller ("Miller") is an employee of the Town of Wayland.  She is sued in her individual capacity.  Her employment address is 41 Cochituate Rd., Wayland, MA 01778, Middlesex County, Massachusetts.

4.      Defendant Wayland School Committee ("WSC") is a public agency.  Its employment address is 41 Cochituate Rd., Wayland, MA 01778, Middlesex County, Massachusetts.

5.      Defendant Ellen Grieco ("Grieco") is the former Chair of the Wayland School Committee.  She is sued in her individual capacity.  She currently resides at 14 Mellen Ln., Wayland, MA 01778, Middlesex County, Massachusetts,

6.      Defendant Jeanne Downs ("Downs") is the current Chair of the Wayland School Committee.  She is sued in her individual capacity.  She currently resides at 195 Concord Rd.., Wayland, MA 01778, Middlesex County, Massachusetts

7.      Defendant Regina Tate ("Tate") is former Town Counsel for the Wayland Public Schools.  She is sued in her individual capacity.  Her place of employment is listed as Murphy,

3

Hesse, Toomey and Lehane, LLP, Crown Colony Plaza, 300 Crown Colony Drive, Suite 410, P.O. Box 9126, Quincy, MA 02169.

8.    Defendant Murphy, Hesse, Toomey and Lehane, LLP ("MHTL") is a law firm which formerly represented the Wayland Public Schools.  Their address is Murphy, Hesse, Toomey and Lehane, LLP, Crown Colony Plaza, 300 Crown Colony Drive, Suite 410, P.O. Box 9126, Quincy, MA 02169.

## VENUE & JURISDICTION

9.    The Superior Court has original subject matter jurisdiction of this action pursuant to G.L. c. 212, § 4, and G.L. c. 214, § 1.

10.    This Court has personal jurisdiction pursuant to G.L. c. 223A, § 2 because the parties maintain their principal places of business and/or residences within the Commonwealth of Massachusetts.

11.    This Court has concurrent jurisdiction over Plaintiff's claims arising under federal law pursuant to 20 U.S.C. § 1681 and 42 U.S.C. § 1983.

12.    Venue is appropriate in Middlesex County pursuant to G.L. c. 223, § 1.

## GENERAL FACTUAL ALLEGATIONS

### *Stephen Cass' Hiring as Wayland Athletic Director*

13.    Cass was employed as Director of Athletics and Health and Wellness Instructor by WPS from July 2013 through June 23, 2015.

14.    In his contract, he was employed as an 80% athletic director and 20% Health and Wellness teacher.

15.    On the last page of the contract, it stated that *"I hereby accept the conditions stated herein and agree to abide by all relevant laws, Wayland School Committee policies, and*

*administrative rules and regulations which apply to my position."*

16.     WSC policy DIF titled <u>Anti-Fraud and Whistleblower Policy</u> states the following: "All persons who make a report of a violation or suspected violation of this policy are subject to the protections of G.L. c. 149, §185, and of G.L. c. 12A, § 14. Accordingly, no such person who attempts to comply with this policy shall:

- be dismissed or threatened with dismissal;

- be disciplined, suspended, or threatened with discipline or suspension;

- be penalized or be the subject of any other retribution or retaliation;

- be intimidated or coerced, or

- be subjected to any other adverse employment action.

17.     Cass received a BA from Yale University where he captained the soccer team.  He has an MBA from The Ohio State University and national athletic director certification.  He served as athletic director at three schools prior to working in Wayland and worked in the athletic departments of both his alma maters.

<u>*Athletic Department issues Cass' Inherited and Uncoverred*</u>

18.     During the interview process, Cass was never informed of the severe fiscal and operational problems which had plagued Wayland athletics for years.

19.     Two WPS athletic directors had been fired in the three years before Cass' hiring. Martha Jamieson was fired in 2010 and filed a lawsuit against WPS.  Her successor Justice Smith was fired in 2013 for mismanaging the athletic budget.

20.     In her lawsuit, Jamieson made numerous allegations about the football program including: the team getting generally preferential treatment; cheating in violation of Massachusetts Interscholastic Athletic Association (MIAA) rules; drinking and drug use being

covered up by WPS officials and the WPD; incidents of rape and sexual assault being covered up by WPS officials. She also spoke in general terms of a football coach and program totally out of control and above accountability. In addition, she gave numerous examples of an unnaturally close and unhealthy relationship between the football program and WPD officers, several of whom played football with or for Parseghian at WHS.

21. Between 2011-2013, WPS hired two auditing firms to review athletic department finances. They uncovered numerous irregularities including over $300,000 in misused funds and recommended tighter controls surrounding athletic finances.

22. Cass began scrutinizing financial documents in August 2013. In doing so, he uncovered a long list of issues that had not been mentioned to him before accepting his position, including violations for which Parseghian was ultimately convicted by the State Ethics Commission on December 12, 2017.

23. In addition, Cass learned that there were issues relating to equity and Title IX in WHS athletics. The lack of equity resulted mostly from the actions of Parseghian who used his administrative position and power within WHS to direct a disproportionate amount of resources and funds to the football program, often in violation of school policy and state law.

24. Cass informed his superiors of the many illegal and inequitable practices within the athletic program. None of these individuals was willing to support Cass in resolving the problems or confront the coaches involved.

<u>*Cass' Accomplishments and Departure from WHS*</u>

25. During Cass' two years, Wayland varsity teams achieved more on-field success than at any time in history. In 2014, Wayland teams won more state championships (7), than in any other calendar year before or since. According to the Boston Globe's All-Sports ranking,

during Cass' two years in charge, Wayland teams won more games than in the four years before his arrival or the six years since.

26.     In addition to on-field success, Cass reduced the budget deficit from nearly $100,000 to $7,000 in each of his two years as athletic director.

27.     Despite these accomplishments and the support of the vast majority or coaches, athletes, and WHS parents, Cass was informed his contract would not be renewed in May 2015. WHS Principal Allyson Mizoguchi, who had a long and close relationship with Parseghian, authored a highly negative and exaggerated professional evaluation of Cass and terminated his employment with WPS.

28.     On May 19, 2015 Cass was officially informed in a private meeting with Superintendent Paul Stein that his contract would not be renewed.

29.     Cass prevailed at trial in US District Court by a unanimous jury verdict on his Massachusetts Whistleblower Claim in July 2019.

<em>Cass Exposes Issues</em>

30.     As a result of WPS leaders attempting to fire him illegally and coverup the many issues and illegalities in the WHS athletic programs, Cass appealed to the WSC to both intervene in his employment situation and address the violations of school policy and law.

31.     Cass wrote a two-page letter to the WSC on May 19, 2015 listing his employment situation and the issues he'd uncovered in general terms.  He received no reply from the WSC.

32.     On May 26, 2015, Cass spoke publicly at a WSC to raise the issues and appeal to the WSC in intervene.

33.     This caused his employment situation and the related issues to become a public matter, something he had tried to avoid.  Many news articles were subsequently written in the

MWDN and the Boston Globe about problems within the WHS athletic program beginning with a front page article in the MWDN titled "Wayland Athletic Director warns of 'illegal practices' in youth sports."

34.     On June 3, 2015, Cass received an email from WSC chair Ellen Grieco informing him that the WSC was not willing to meet with him, in violation of school policy and his employment rights.

35.     Attorney Tate falsely informed the WSC that they were not allowed to meet with Cass.

36.     During the spring and summer, Attorney Tate made numerous spoken and written comments which disparaged Cass rather than applaud his courage for addressing issues and confronting an all-powerful coach.

37.     WPS officials, WSC members, and Tate repeatedly refused to meet with Cass to discuss the issues he uncovered, were intent on firing him illegally, and repeatedly lied to the public to discredit Cass.  As a result, after his employment with WPS ended, Cass continued to speak publicly and provide information to the public through written documents both to clear his own name but also to force WPS officials to investigate the issues he uncovered.  These issues included, *inter alia,* fiscal fraud and ethics violations in the football program, covering up rape and sexual assault allegations in the football program, cheating in violation of MIAA policy, the football team having misappropriated funds belonging to other Wayland teams, fiscal fraud in the boys soccer program, illegal hiring practices, and other violations of school policy and state law.

38.     Cass spoke publicly at numerous WSC meetings in the summer and fall of 2015 imploring WSC members to investigate his claims and to provide examples of the problems he

uncovered.  The last of his speeches was on October 5.

39.     As result of his raising issues publicly, throughout the summer of 2015, Cass was harassed at the supermarket, jogging, eating dinner…virtually any time he went out in public. During the summer, several of Parseghian's high school friends in the Wayland Police Department ("WPD") joined in on the harassment.  100's of anonymous comments attacking Cass appeared in online media.  One morning, Cass found his car covered in white powder at his Wayland home.

40.     This came to a head on October 26, 2015 when Cass was arrested in his home for the alleged theft of a five-year old computer based on false claims by WPS officials.

41.     Cass was found not guilty by directed verdict at trial.  The Boston Globe Spotlight Team and Editor of the MetroWest Daily News wrote about the absurdity of the arrest and prosecution and remarked on the conspiratorial conduct of the Wayland football parents and police.

42.     In response to the arrest, WSC made numerous public comments praising WPS officials for their actions.

*Cass' Employment Situation*

43.     In December 2019, Cass and the WPS and Town reached a financial settlement in regard to their previous lawsuit.  The settlement agreement provided Cass the ability to take legal action against any WPS or Town employee who was not a named defendant.  It was also silent as to how Cass' reinstatement and retirement credit would be handled.

44.     Cass fully expected he would be immediately reinstated to his job in accordance with WSC policy DIF.  Rather than reward his actions, WSC member Downs made several public comments which had negative connotations about Cass.

9

45.     No WPS employee was reprimanded, dismissed, or disciplined as a result of illegally violating Cass' employment rights despite WSC policy DIF stating "Violation of this section of the policy may result in disciplinary action, up to and including dismissal."

46.     Since Cass was not reinstated to his athletic director position on July 1, 2020 (the first legal day of the new school year), Cass appealed to Superintendent Unobskey on August 24 but received no reply.

47.     On January 16, 2020, the WPC and WPS officials engaged in a final act of intimidation and retaliation.  Cass emailed WSC member Grieco that he would attend a WSC meeting the following next day.  Cass had prepared a speech documenting how WPS officials and the WPD had covered up past incidents of rape and sexual assault.  In response, Downs sent Cass' an email reply that Cass perceived as a veiled threat.  Upon Cass' arrival at Town Offices, he encountered WPS officer Chris Cohen, who was one of three WPD officers who had arrested Cass.  Rather than risk being falsely arrested again Cass chose not speak at the WSC and publicly expose the terrible crimes and coverup due to the intimidation.

### *Damage to Cass' Career and Life*

48.     As a result of the conduct of the WSC and WPS officials, Cass' professional reputation has been effectively ruined.  Cass has applied for over 1000 jobs since his arrest but has not been able to find gainful employment.  Several educational search firms informed Cass they will not work with him due to the publicity resulting from his arrest.

49.     Cass expected to be reinstated to his position in the WPS if it was determined he had been fired in violation of Massachusetts law and WSC policy DIF.  Since he has virtually no job prospects as a result of the actions which occurred in Wayland, severe financial and emotional distress from which he suffers to this day.

## COUNT I
## CIVIL CONSPIRACY
### (Grieco, Downs, Tate)

50.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

51.     The Defendants acted in unison to interfere with Mr. Cass's civil rights, to defame him, wrongfully imprison him, and intentionally cause him severe emotional distress in an effort to punish him for speaking out publicly with respect to the following matters:

    a.  WPS officials covering up incidents of rape and sexual assault by Wayland football players.

    b.  Treatment of female student athletes in a manner which violated Title IX.

    c.  Town and WPS's indifference and failure to investigate and remedy Title IX violations which existed with respect to the treatment of female athletes.

    d.  WPS officials punishing WHS female students for violations of school and MIAA policies but not doing the same to male students, especially football players.

    e.  The football program misappropriating funds belonging to other WHS teams.

    f.  The football program fundraising in violation of WSC policies and state law.

52.     Defendants Irving and Grieco made false statements to the public and at WSC meetings to harm Cass' reputation and cover-up their own illegal actions and the illegal actions of WPD and WPS employees.

53.     Irving and Grieco coordinated and allowed a pattern of harassment to continue against Cass for speaking publicly regarding violations of federal and state law in the WHS athletic program.

11

54.     Defendants conspired to have had Cass falsely arrested and prosecuted for a crime they knew he did not commit.

55.     Defendants Lyons and Simon provided false information to the investigation regarding Cass' computer as part of a coordinated action to falsely charge Cass with a crime.

56.     At all relevant times, the Defendants' conduct was planned, knowing, willing and intentional.

57.     As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer substantial damages.

## COUNT II
## DEFAMATION
**(Grieco, Downs, Tate)**

58.     Cass restates, realleges and incorporates by reference each preceding paragraph as

59.     Defendants made numerous public comments to WSC members and WPS officials that were false and misleading.

60.     Defendants knowingly and willfully defamed Cass and acted in reckless disregard to his legal rights and how their words and actions would impact Cass' standing and reputation in the community.

61.     As a result of the Defendants' actions, Mr. Cass has suffered actual injury or harm.

## COUNT III
## NEGIGENT SUPERVISION
**(Grieco, Downs)**

62.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

63.     Defendants owed Cass a duty to take reasonable care in supervising WPS officials during the course of business so that they did not commit tortious injuries.

64.     Defendants breached their duty to properly supervise individuals who reported to

12

them.

65.     Cass' injuries resulted due to the conduct of the Defendants.

66.     As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer substantial damages.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

67.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

68.     Defendants knew or should have known that their intentional conduct would cause emotional distress.

69.     Defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

70.     The actions of the Defendants were the cause of the plaintiff's distress.

71.     The emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

72.     As a result of the Defendants' outrageous actions, Cass has suffered physical and emotional effects due to the Defendants intentional conduct, including not limited to depression, anxiety, sleeping issues, and frequent thoughts of suicide.

73.     The Defendants actions were extreme and outrageous such that any reasonable person in Cass' position would have suffered emotional distress under the circumstances Cass was forced to endure due to the Defendants intentional conduct.

74.     As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer severe emotional distress and substantial damages.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

75.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

76.     Defendants owed Cass a duty of care to provide Cass the rights as all other WPS employees, to not allow him to be subjected to harassment by school employees as a result of his whistleblowing activities.  They owed him a duty of care to properly investigate the issues of policy and law he uncovered.

77.     Any reasonable person in the same situation would have likely suffered emotional distress as result of the Defendant's conduct.

78.     Defendant's actions have caused actual physical harm to Cass including nervousness, anxiety, difficulty sleeping, and traumatic flashbacks.

79.     As a result of the Defendants' wrongful acts, Cass has suffered and continues to suffer severe emotional distress and substantial damages.

## COUNT VI
## WHISTLEBLOWER RETALIATION
### (Wayland School Committee)

80.     Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set forth herein.

81.     Defendants retaliated against Cass by not reinstating him to his position as athletic director for WPS.

82.     Defendants retaliated against Cass by placing a WPD officer at a WSC meeting to prevent Cass from speaking publicly about crimes being covered up by WSC members and WPS officials.

83.     As a result of the Defendants' wrongful actions Mr. Cass has suffered and continues to suffer damages.

**COUNT VII**
**VIOLATION OF 42 U.S.C. § 1983 and G.L. c. 12, § 11H, I**
**(Downs, Grieco, Unobskey, Miller)**

84.     Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set forth herein.

85.     Defendants, acting under the color of state law, wrongfully deprived Cass of his constitutional rights, privileges, and freedom by retaliating against him for exercising his First Amendment rights by publicly speaking out regarding ongoing violations of state and federal law within WPS.

86.     Defendants committed these acts with malice as a result of Cass' whistleblowing activities that brought embarrassment to public criticism of WSC members and WPS officials.

87.     The Defendants completed all such acts knowing their conduct would deprive Cass of his "right of enjoying and defending his life and liberty" and his "safety and happiness" as defined in the Massachusetts Declaration of Rights.  In addition, they did "interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by [Cass] of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth."

88.     As a direct and proximate result of the Defendants' wrongful actions and deliberate indifference to Cass's rights, Cass has suffered emotional distress, monetary damages, and his character and standing in the community have been irreparably harmed.

**WHEREFORE**, Plaintiff Stephen F. Cass respectfully requests that this Honorable Court:

89.     Enter a judgment in favor of Cass and against the Defendants on all Counts prayed herein;

90.     Award Cass the damages he sustained because of Defendants' breaches and wrongful actions in an amount to be determined at trial; and

91.     Award Cass multiple and/or punitive damages where allowable, in an amount to be determined at trial; and

92.     Order Cass to be reinstated to his position as athletic director for the Wayland Public Schools together with full seniority rights; and

93.     Award Cass his costs and attorneys' fees; and

94.     Award such other and further relief as may appear just and proper.


## JURY DEMAND

Plaintiff Stephen F. Cass hereby requests a jury on all counts so triable.

Respectfully submitted,

**STEPHEN F. CASS,**

PO Box 2723
Orleans, MA 02653
stephenfcass@yahoo.com
339.368.2961

(PO Box 2723)

Dated: February 26, 2021

---

**MIDDLESEX, SS.**   *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this Fourteenth day of June, 2021.

Deputy Assistant Clerk

16

CIVIL ACTION COVER SHEET

**DOCKET NUMBER**

2181CV437 C

**Trial Court of Massachusetts**
**The Superior Court**

| PLAINTIFF(S): | Stephen F. Cass | COUNTY | |
|---|---|---|---|
| ADDRESS: | 9 Captain Linnell Rd. (PO Box 2723) | | Middlesex |
| Orleans, MA 02653 | | | |

DEFENDANT(S):   Ellen Grieco, Jeanne Downs, Arthur Unobskey, Louise Miller, Regina Tate

Wayland School Committee, Murphy, Hesse, Toomey and Lehane, LLP

| ATTORNEY: | | |
|---|---|---|
| ADDRESS: | | ADDRESS: please see attached document |

BBO:

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D13 | DECLARATORY JUDGEMENT (G.L. c. 231A) | A | [X] YES   [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?     [ ] YES   [X] NO

Is this a class action under Mass. R. Civ. P. 23?     [ ] YES   [X] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ............................................................. $ _____
   2. Total doctor expenses ............................................................... $ _____
   3. Total chiropractic expenses ........................................................ $ _____
   4. Total physical therapy expenses .................................................... $ _____
   5. Total other expenses (describe below) .............................................. $ _____
   Subtotal (A): $ _____

B. Documented lost wages and compensation to date ....................................... $ 1,280,000
C. Documented property damages to date .................................................. $ _____
D. Reasonably anticipated future medical and hospital expenses ........................... $ _____
E. Reasonably anticipated lost wages .................................................... $ 3,220,000
F. Other documented items of damages (describe below) ................................... $ 1,100,000

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

FEB 2 6 2021

CLERK

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
   loss of career, severe emotional distress, loss of home, friends and community,

TOTAL (A-F): $ 5,600,000

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $ _____

Signature of Attorney/ Unrepresented Plaintiff: X _____   Date: _____

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

Stephen Cass v. John Ritchie , Barnstable ss

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: _____

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Transfer of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference In Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party †

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action Involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property  Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

## TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

NAMES and ADDRESSES OF DEFENDANTS
Stephen F. Cass v. Named Defendants
Middlesex County, MA
February 26, 2021

Ellen Grieco
14 Mellen Ln.
Wayland, MA 01778
Middlesex County, Massachusetts

Arthur Unobskey
41 Cochituate Rd.
Wayland, MA 01778
Middlesex County, Massachusetts

Louise Miller
41 Cochituate Rd.
Wayland, MA 01778
Middlesex County, Massachusetts

Wayland School Committee
41 Cochituate Rd.
Wayland, MA 01778
Middlesex County, Massachusetts

Jeanne Downs
195 Concord Rd.
Wayland, MA 01778
Middlesex County, Massachusetts

Regina Tate
c/o Murphy, Hesse, Toomey and Lehane, LLP
Crown Colony Plaza
300 Crown Colony Drive
Suite 410
P.O. Box 9126
Quincy, MA 02169.

Murphy, Hesse, Toomey and Lehane, LLP
Crown Colony Plaza
300 Crown Colony Drive
Suite 410
P.O. Box 9126
Quincy, MA 02169.

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

| | | |
|---|---|---|
| **Lost Wages to Date** | 6 years x $230,00/yr (minus $100,000 credit) | $1,280,000 |
| **Anticipated Lost Wages** | 14 years x 230,000/yr | $3,220,000 |
| **Emotional Distress** | $50,000 x 20 yrs (loss of career / community) | $1,000,000 |
| **Emotional Distress** | **Police intimidation January 2020** | $  100,000 |
| | | |
| **TOTAL** | | $5,600,000 |

Respectfully submitted,


STEPHEN F. CASS,


February 26, 2021

#3

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX ss.**                                    **SUPIEROR COURT DEPARTMENT OF THE TRIAL COURT**

                                                              **Docket # 2181CV00437**

                                                              C

Stephen F. Cass

                            Plaintiff

v.

                                                              **FIRST AMENDED COMPLAINT AND JURY DEMAND**

Jeanne Downs, Arthur Unobskey, Louise Miller, Ellen Grieco, Regina Tate, Wayland School Committee

                            Defendants

> FILED
> IN THE OFFICE OF THE
> CLERK OF COURTS
> FOR THE COUNTY OF MIDDLESEX
>
> MAY 2 0 2021
>
> CLERK

## INTRODUCTION

This action is being commenced to recover damages sustained by plaintiff Stephen F. Cass resulting from the actions of Jeanne Downs, Ellen Grieco, Louise Miller, Arthur Unobskey, Regina Tate, and Wayland School Committee ("WSC") (collectively "Defendants").  Mr. Cass seeks compensation for the wrongful and/or tortious acts of the Defendants, specifically their retaliatory actions which violated Cass' civil rights under 42 U.S.C. § 1983 and MA G.L. c. 12, § 11H,I as well as their defamation, negligent and intentional infliction of emotional distress, negligent supervision, civil conspiracy, whistleblower retaliation, breach of contract, and breach of implied covenant of good faith and fair dealing.

Cass served as athletic director for the Wayland Public Schools ("WPS") from 2013-2015. Upon accepting the job, he was unaware of numerous problems which plagued the athletic program including two athletic director predecessors being fired in the previous three years, the

1

hiring of two auditing firms to review athletic finances who uncovered as much as $600,000 in misused money, and budgets overruns in excess of 30%.

School committee members in particular were adamant that the athletic department's fiscal and operational issues needed to be addressed and made numerous public comments on the subject and directly to Cass himself.  As result, Cass went to work to balance the budget and review the operational issues in his department.  Most of the issues he uncovered were the result of the actions of  Wayland High School ("WHS") football coach Scott Parseghian who was also the assistant principal.  Rather than support Cass in addressing the issues, the WHS principal and Superintendent illegally fired Cass.  In accordance with WSC policy, Cass then took his complaints to the WSC who refused to meet with him in violation of his employment rights.

The school's attorney Regina Tate possessed the legal acumen and had the responsibility to ensure the WSC acted in accordance with the law.  She was receiving substantial fees for her work and chose to intentionally and illegally violate Cass' employment rights, made disparaging public and private remarks about Cass, and ultimately lied in Federal Court in an attempt to coverup her actions.

After Cass' employment ended, the WSC and Attorney Tate submitted false and incomplete information to state agencies under the guise of 'investigating' Cass' complaints.  Their actions, together with the actions of WPS officials, caused Cass to be labeled a liar and become a pariah in Wayland.  Cass was later falsely arrested by police friends of the football coach as a result of his whistleblowing actions.  The subsequent criminal trial resulting from the arrest ended in a rare directed verdict in Cass' favor.

Cass was vindicated when a jury unanimously found he was fired in violation of the Massachusetts Whistleblower Act.  After the trial, Cass expected to be immediately rehired to his

#3

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX ss.**

**SUPIEROR COURT DEPARTMENT OF THE TRIAL COURT**

**Docket # 2181CV00437**

Stephen F. Cass

Plaintiff

v.

JEANNE DOWNS, ARTHUR UNOBSKEY, LOUISE MILLER, ELLEN GRIECO, REGINA TATE, WAYLAND SCHOOL COMMITTEE

Defendants

**FIRST AMENDED COMPLAINT AND JURY DEMAND**



FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 2 0 2021

CLERK

### INTRODUCTION

This action is being commenced to recover damages sustained by plaintiff Stephen F. Cass resulting from the actions of Jeanne Downs, Ellen Grieco, Louise Miller, Arthur Unobskey, Regina Tate, and Wayland School Committee ("WSC") (collectively "Defendants"). Mr. Cass seeks compensation for the wrongful and/or tortious acts of the Defendants, specifically their retaliatory actions which violated Cass' civil rights under 42 U.S.C. § 1983 and MA G.L. c. 12, § 11H,I as well as their defamation, negligent and intentional infliction of emotional distress, negligent supervision, civil conspiracy, whistleblower retaliation, breach of contract, and breach of implied covenant of good faith and fair dealing.

Cass served as athletic director for the Wayland Public Schools ("WPS") from 2013-2015. Upon accepting the job, he was unaware of numerous problems which plagued the athletic program including two athletic director predecessors being fired in the previous three years, the

1

hiring of two auditing firms to review athletic finances who uncovered as much as $600,000 in misused money, and budgets overruns in excess of 30%.

School committee members in particular were adamant that the athletic department's fiscal and operational issues needed to be addressed and made numerous public comments on the subject and directly to Cass himself.  As result, Cass went to work to balance the budget and review the operational issues in his department.  Most of the issues he uncovered were the result of the actions of  Wayland High School ("WHS") football coach Scott Parseghian who was also the assistant principal.  Rather than support Cass in addressing the issues, the WHS principal and Superintendent illegally fired Cass.  In accordance with WSC policy, Cass then took his complaints to the WSC who refused to meet with him in violation of his employment rights.

The school's attorney Regina Tate possessed the legal acumen and had the responsibility to ensure the WSC acted in accordance with the law.  She was receiving substantial fees for her work and chose to intentionally and illegally violate Cass' employment rights, made disparaging public and private remarks about Cass, and ultimately lied in Federal Court in an attempt to coverup her actions.

After Cass' employment ended, the WSC and Attorney Tate submitted false and incomplete information to state agencies under the guise of 'investigating' Cass' complaints.  Their actions, together with the actions of WPS officials, caused Cass to be labeled a liar and become a pariah in Wayland.  Cass was later falsely arrested by police friends of the football coach as a result of his whistleblowing actions.  The subsequent criminal trial resulting from the arrest ended in a rare directed verdict in Cass' favor.

Cass was vindicated when a jury unanimously found he was fired in violation of the Massachusetts Whistleblower Act.  After the trial, Cass expected to be immediately rehired to his

2

athletic director position in accordance with WSC policy.  However, rather than rehire him, WSC

members and WPS administrators made disparaging public remarks and applauded the school

officials who broke the law.

For years, WSC members and WPS officials were committed to covering up the issues Cass

disclosed.  This led to a final incident in January 2020 in which the WSC, as they had done

previously, hired a Wayland Police Department ("WPD") officer to intimidate and prevent Cass

from speaking at a WSC meeting so to inform the Wayland community that school officials had

covered up allegations of rape and sexual assault committed by football players.

## PARTIES

1.      Plaintiff currently resides at 9 Captain Linnell Rd., Orleans, Barnstable County,

Massachusetts.  His mailing address is PO Box 2723, Orleans, MA 02653.

2.      Defendant Arthur Unobskey ("Unobskey") is an employee of the Wayland Public

Schools.  He is sued in her individual capacity.  His employment address is 41 Cochituate Rd.,

Wayland, MA 01778, Middlesex County, Massachusetts.

3.      Defendant Louise Miller ("Miller") is an employee of the Town of Wayland.  She is

sued in her individual capacity.  Her employment address is 41 Cochituate Rd., Wayland, MA

01778, Middlesex County, Massachusetts.

4.      Defendant Wayland School Committee ("WSC") is a public agency.  Its

employment address is 41 Cochituate Rd., Wayland, MA 01778, Middlesex County,

Massachusetts.

5.      Defendant Ellen Grieco ("Grieco") is the former Chair of the Wayland School

Committee.  She is sued in her individual capacity.  She currently resides at 14 Mellen Ln.,

Wayland, MA 01778, Middlesex County, Massachusetts.

6.      Defendant Jeanne Downs ("Downs") is the current Chair of the Wayland School Committee.  She is sued in her individual capacity.  She currently resides at 195 Concord Rd.., Wayland, MA 01778, Middlesex County, Massachusetts.

7.      Defendant Regina Tate ("Tate") is former Town Counsel for the Wayland Public Schools.  She is sued in her individual capacity.  Her place of employment is listed as Murphy, Hesse, Toomey and Lehane, LLP, Crown Colony Plaza, 300 Crown Colony Drive, Suite 410, P.O. Box 9126, Quincy, MA 02169.

## VENUE & JURISDICTION

8.      The Superior Court has original subject matter jurisdiction of this action pursuant to G.L. c. 212, § 4, and G.L. c. 214, § 1.

9.      This Court has personal jurisdiction pursuant to G.L. c. 223A, § 2 because the parties maintain their principal places of business and/or residences within the Commonwealth of Massachusetts.

10.      This Court has concurrent jurisdiction over Plaintiff's claims arising under federal law pursuant to 20 U.S.C. § 1681 and 42 U.S.C. § 1983.

11.      Venue is appropriate in Middlesex County pursuant to G.L. c. 223, § 1.

## GENERAL FACTUAL ALLEGATIONS

### *Timing of the Complaint*

12.      On February 28, 2018, Cass received and was able to review previously private emails and documents pertaining to the conduct of the Defendants.  This forms the initial date of the three-year Statute of Limitations for many elements of this complaint.

13.      Cass made good faith requests to obtain all relevant documents from the Defendants but was repeatedly refused or required to pay exorbitant sums.  In response to one request, WPS

4

Superintendent Unobskey stated it would cost $83,501 to obtain emails.  Cass ultimately had to pay over $2,800 to obtain public documents from the Wayland schools. (Exhibit F)

14.     On October 19, 2020, Cass received copies of the WPS Collective Bargaining Agreements ("CBA") from WPS Human Resources Director Kathleen Buckley.  These documents were previously withheld from Cass despite repeated requests to obtain them.  This forms another date regarding Statute of Limitations for some elements of this case.

15.     Cass had previously made a public records request to obtain WPS Policies from Superintendent Unobskey on August 7, 2018.  He responded, "To clarify, the documents you requested exist", then informed Cass he would have to pay $1,242.50 for them. (Exhibit F)

16.     Cass prevailed at trial in US District Court by a unanimous jury verdict on his Massachusetts Whistleblower Claim in July 2019.  Many documents which form the basis of this complaint were withheld throughout the discovery process for that legal action.

17.     Throughout the aforementioned legal action, the WSC, its employees and attorneys engaged in the withholding/spoilage of evidence, witness tampering, and multiple blatant acts of perjury.

### *Stephen Cass' Hiring as Wayland Athletic Director*

18.     Cass was employed as Director of Athletics and Health and Wellness Instructor by WPS from July 2013 through June 23, 2015.

19.     In his contract, he was employed as an 80% athletic director and 20% Health and Wellness teacher.

20.     On the last page of the contract, it stated that *"I hereby accept the conditions stated herein and agree to abide by all relevant laws, Wayland School Committee policies, and administrative rules and regulations which apply to my position."*

21.    WSC policy DIF titled <u>Anti-Fraud and Whistleblower Policy</u> states the following: "All persons who make a report of a violation or suspected violation of this policy are subject to the protections of G.L. c. 149, §185, and of G.L. c. 12A, § 14.  Accordingly, no such person who attempts to comply with this policy shall:

- be dismissed or threatened with dismissal;

- be disciplined, suspended, or threatened with discipline or suspension;

- be penalized or be the subject of any other retribution or retaliation;

- be intimidated or coerced, or

- be subjected to any other adverse employment action.

22.    Cass received a BA from Yale University where he captained the soccer team.  He has an MBA from The Ohio State University and national athletic director certification.  He served as athletic director at three schools prior to working in Wayland and worked in the athletic departments of both his alma maters.

### *Athletic Department issues Cass' Inherited and Uncovered*

23.    During the interview process, Cass was never informed of the severe fiscal and operational problems which had plagued Wayland athletics for years.

24.    Two WPS athletic directors had been fired in the three years before Cass' hiring. Martha Jamieson was fired in 2010 and filed a lawsuit against WPS.  Her successor Justice Smith was fired in 2013 for mismanaging the athletic budget.

25.    In her lawsuit, Jamieson long with several WHS faculty members made numerous allegations about the football program including: the team getting generally preferential treatment; cheating in violation of Massachusetts Interscholastic Athletic Association (MIAA) rules; drinking and drug use being covered up by WPS officials and the WPD; incidents of rape

and sexual assault being covered up by WPS officials.  She also spoke in general terms of a football coach and program totally out of control and above accountability.  In addition, she gave numerous examples of an unnaturally close and unhealthy relationship between the football program and WPD officers, several of whom played football with or for Parseghian at WHS.

26.    Between 2011-2013, WPS hired two auditing firms to review athletic department finances.  They uncovered numerous irregularities including as much as $600,000 in misused funds and recommended tighter controls surrounding athletic finances.

27.    Cass began scrutinizing financial documents in August 2013.  In doing so, he uncovered a long list of issues that had not been mentioned to him before accepting his position, including violations for which Parseghian was ultimately convicted by the State Ethics Commission on December 12, 2017.

28.    Cass was informed of and witnessed sex discrimination in WHS athletics.  This resulted mostly from the actions of Parseghian who used his administrative position and power within WHS to direct a disproportionate amount of resources and funds to the football program, often in violation of school policy and state law.

29.    Cass informed his superiors of the many illegal and inequitable practices within the athletic program.  None were willing to support Cass in resolving the problems or confront the coaches involved.

*Cass' Accomplishments, Termination, and 'Whistleblowing'*

30.    During Cass' two years, Wayland varsity teams achieved more on-field success than at any time in history.  Cass also reduced the budget deficit from nearly $100,000 to $7,000 in each of his two years as athletic director.

31.    Despite these accomplishments and the support of the vast majority of WHS

7

coaches, athletes, and parents, Cass was informed his contract would not be renewed in May 2015 by WHS Principal Allyson Mizoguchi, who had a long, close relationship with Parseghian.

32.      As a result of WPS leaders attempting to fire him illegally and coverup the issues he raised, Cass wrote a two-page letter to the WSC on May 19, 2015 listing his employment situation and the issues he'd uncovered in general terms.

33.      On May 26, 2015, Cass spoke publicly at a WSC meeting imploring that body to investigate issues he uncovered and intervene in his employment matter.  This caused the situation to become a public matter, something he had tried to avoid.  Many news articles were subsequently published in the MetroWest Daily News ("MWDN") and Boston Globe about problems within the WHS athletic program beginning with a front-page article in the MWDN titled "Wayland Athletic Director warns of 'illegal practices' in youth sports."

34.      On June 3, 2015, Cass received an email from WSC chair Ellen Grieco informing him that the WSC was not willing to meet with him, in violation of WSC policy GBK and his employment rights guaranteed under the CBA agreement Article III, C6(a,b). (Exhibit E, pg. 7)

35.      On June 3, 2015, Attorney Tate falsely informed the WSC that they were not allowed to meet with Cass. (Exhibit D, ¶ 13)

36.      During the spring and summer, Attorney Tate made numerous spoken and written comments which disparaged Cass rather than applaud his courage for addressing issues and confronting an all-powerful coach.

37.      The WSC and Attorney Tate sent incomplete information to State Agencies regarding Cass' complaints.  All they did was forward Cass' May 19, 2015 letter to state agencies, which was never intended to be a complete list of issues but simply a request for WSC members to meet with him.  Cass had provided WPS officials with detailed information about

8

problems in the athletic program on September 18, 2014, March 31, 2015 and May 5, 2015. (Exhibit A, ¶ 2. Exhibit G)

38.     Issues which the WSC and Tate did not properly investigate or send full information to government or regulatory agencies include:

a.   They commissioned a highly falsified Title IX report in which large football and wrestling expenditures were omitted, did not investigate issues such as girls not having equal access to athletic facilities and the coaches of girls teams being far inferior to their counterparts coaching boys' teams.  In the end, they improperly omitted football from their final report to the Office of Civil Rights.  Information from their falsified Title IX report was subsequently published in the MWDN.

b.   Did not investigate $10,000's in missing football fundraising money from a fundraiser through eteamsponsor.com and several other fundraisers conducted in violation of WSC policy or state law.  They did not investigate huge sums of missing fundraising money in the boys soccer program.  In 2013-14 alone, according to parents, the team raised approximately $8,000 yet only $1,870 was deposited into the account.  The Inspector General's office wrote the WSC stating that the WSC should investigate these issues yet they never did.

c.   In their submission to the Department of Education, regarding CORI compliance, they omitted nearly every name who was not in compliance and thus received a favorable finding.

d.   They did not submit information on a lack of compliance with concussion testing by coaches.  Wayland coaches ran afoul of Massachusetts law (Chapter 166 of Acts of 2010) and Department of Public Health regulations regarding mandatory annual

concussion training, yet neither the WSC nor Tate submitted this information.

    e.   Violations of Massachusetts Interscholastic Athletic Association ("MIAA") policy
in the football and wrestling programs were not submitted to the MIAA.

39.    Since WPS officials and WSC members repeatedly refused to meet with Cass, he
continued to speak publicly and provide information to the public through written documents
both to clear his own name but also to force WPS officials to investigate the issues he uncovered.
He spoke publicly at numerous WSC meetings in the summer and fall of 2015 to provide
examples of the problems he uncovered and imploring WSC members to investigate his claims.
The last of his speeches was on October 5.

40.    As result of his raising issues publicly and the WSC not investigating his
complaints, throughout the summer of 2015 Cass was harassed at the supermarket, jogging,
eating dinner…virtually any time he went out in public.  During the summer, several of
Parseghian's high school friends in the WPD joined in on the harassment.  100's of anonymous
comments attacking Cass appeared in online media.  One morning, Cass found his car covered in
white powder at his Wayland home.

41.    This came to a head on October 26, 2015 when Cass was falsely arrested in his
home for the alleged theft of a five-year old computer based on false claims by WPS officials.

42.    Cass was found not guilty by directed verdict at trial.  The Boston Globe Spotlight
Team and Editor of the MWDN wrote about the absurdity of the arrest and prosecution and
remarked on the conspiratorial conduct of the Wayland football parents and police. (Exhibit H)

43.    In response to the arrest, the WSC made numerous public statements praising WPS
officials for their actions.

44.    Cass continued to advocate for an end to sex discrimination at WHS and for the

WSC to investigate allegations of sexual misconduct being directed at female WHS students. Emails between Cass and the WSC on this subject are dated July 21, 2015, October 18, 2016, December 16, 2016, January 19, 2017, January 22, 2017, April 23, 2017, May 14, 2017, July 14, 2017, January 15, 2020, May 4, 2020, September 12, 2020, January 20, 2021

### *Cass' Employment Situation*

45.     In December 2019, Cass and the WPS and Town reached a financial settlement in regard to their previous lawsuit.  The Settlement Agreement provided Cass the ability to take legal action against any WPS or Town employee who was not a named defendant.  It was also silent as to how Cass' reinstatement and retirement credit would be handled.

46.     Cass fully expected he would be immediately reinstated to his job in accordance with WSC policy DIF.  Rather than reward his actions, WSC member Downs made several public comments about Cass which had negative connotations.

47.     No WPS employee was reprimanded, dismissed, or disciplined as a result of illegally violating Cass' employment rights despite WSC policy DIF stating "Violation of this section of the policy may result in disciplinary action, up to and including dismissal." (Exhibit I)

48.     On January 16, 2020, the WPC and WPS officials engaged in a final act of intimidation and retaliation.  Cass emailed WSC member Grieco that he would attend a WSC meeting the following next day.  Cass had prepared a speech documenting how WPS officials and the WPD had covered up past incidents of rape and sexual assault.  In response, Downs sent Cass' an email reply that Cass perceived as a veiled threat.  Upon Cass' arrival at Town Offices, he encountered WPS officer Chris Cohen, who was one of three WPD officers who had arrested Cass.  Rather than risk being falsely arrested again Cass chose not to speak at the WSC meeting and publicly expose the terrible crimes and coverup due. (Exhibit J)

49.     Since Cass was not reinstated to his athletic director position on July 1, 2020 (the first legal day of the new school year), Cass appealed to Superintendent Unobskey on August 24 but received no reply. (Exhibit L)

*Damage to Cass' Career and Life*

50.     As a result of the conduct of the WSC and WPS officials, Cass' professional reputation has been effectively ruined.  Cass has applied for over 500 jobs since his arrest but has not been able to find gainful employment.  Several educational search firms informed Cass they will not work with him due to the publicity resulting from his arrest.

51.     Cass expected to be reinstated to his position in the WPS if it was determined he had been fired in violation of Massachusetts law and WSC policy DIF.  Since he has virtually no job prospects as a result of the actions which occurred in Wayland, the severe financial and emotional distress from which he suffers continues to this day.

## COUNT I
## CIVIL CONSPIRACY
## (ALL DEFENDANTS)

52.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

53.     The Defendants acted in unison to interfere with Mr. Cass's civil rights, to defame him, wrongfully imprison him, and negligently and intentionally cause him severe emotional distress in an effort to punish him for speaking out publicly, *inter alia*, with respect to the following matters:

   a.   WPS officials covering up incidents of rape and sexual assault by Wayland football players.

12

b. WPS officials covering up allegations of sexual misconduct by varsity coaches with WHS students.

c. WPS officials and WSC members not reporting sexual misconduct allegations to the Department of Children and Families in violation of their legal duties as 'Mandated Reporters' of child abuse and neglect.

d. Sexual discrimination regarding the treatment of female student athletes at WHS.

e. WPS's indifference and failure to investigate and remedy Title IX violations which existed with respect to the treatment of female athletes.

f. WPS officials punishing WHS female students for violations of school and MIAA policies but not doing the same to male students, especially football players.

g. The football program misappropriating funds belonging to other WHS teams.

h. Fiscal malfeasance in the football and boys soccer programs.

i. State Ethics violations committed by multiple coaches.

j. His employment rights as guaranteed by WSC policy and the CBA.

54.   Defendants conspired to have Cass prosecuted for a crime they knew he did not commit.

55.   At all relevant times, the Defendants' conduct was planned, knowing, willing and intentional.

56.   As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer substantial damages.

## COUNT II
## DEFAMATION
### (Grieco, Downs, Tate, Wayland School Committee)

57.   Cass restates, realleges and incorporates by reference each preceding paragraph as

13

if specifically set forth herein.

58.     Defendants made numerous public comments they knew were false and misleading.

59.     Grieco and Downs made false statements to the public and at WSC meetings to

harm Cass' reputation and cover-up the actions of other WPS employees and administrators.

(Exhibit B, ¶¶ 3,4,8.  Exhibit C, ¶¶ 6,7,8,11,15.  Exhibit D, ¶¶ 4,9,11,13)

60.     Tate made public comments at WSC meetings blaming Cass rather than applauding

his courage to confront longstanding issues within the WHS athletic program. (Exhibit D, ¶ 13)

61.     Public comments made by WSC members were done with the specific intent of

damaging Cass' reputation in Wayland and beyond.

62.     Defendants knowingly and willfully defamed Cass and acted in reckless disregard

to his legal rights and how their words and actions would impact Cass' standing and reputation in

the community.

63.     As a result of the Defendants' actions, Mr. Cass has suffered actual injury or harm.

## COUNT III
## NEGIGENT SUPERVISION
### (Grieco, Downs, Wayland School Committee)

64.     Cass restates, realleges and incorporates by reference each preceding paragraph as

if specifically set forth herein.

65.     Grieco, Downs, and WSC breached their duty to properly supervise individuals who

reported to them.

66.     Grieco, Downs, and WSC owed Cass a duty to take reasonable care in supervising

WPS officials during the course of business so that they did not commit tortious injuries

including violating Cass' employment rights, facilitating his arrest and prosecution, and other

retaliatory acts.

67.     WSC did not properly supervise Principal Mizoguchi or their Attorney John Wilusz when both lied to a Federal Judge by stating Cass did not possess the proper credentials to work as the WPS athletic director.

68.     Cass' injuries resulted due to the conduct of the Defendants.

69.     As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer substantial damages.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(All Defendants)**

70.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

71.     Defendants knew or should have known that their intentional conduct would cause emotional distress, including: placing armed WPD officer at WSC meetings to prevent Cass from speaking; allowing WPS officials to defame Cass in the media and with local residents; WSC members making disparaging public comments about Cass; not properly investigating Cass' allegations which subjected him to scorn, ridicule, and harassment within the Town of Wayland; WSC continuing the baseless prosecution of Cass' through his criminal trial.

72.     Defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

73.     The actions of the Defendants were the cause of the plaintiff's distress.

74.     The emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

75.     As a result of the Defendants' outrageous actions, Cass has suffered physical and emotional effects due to the Defendants intentional conduct, including not limited to anxiety,

15

sleeping issues, and severe depression.

76.     The Defendants actions were extreme and outrageous such that any reasonable person in Cass' position would have suffered emotional distress under the circumstances Cass was forced to endure due to the Defendants intentional conduct.

77.     As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer severe emotional distress and substantial damages.

## COUNT V
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

78.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

79.     Defendants owed Cass a duty of care to provide Cass the rights of all other WPS employees and to not allow him to be subjected to harassment by school employees as a result of his whistleblowing activities.  They owed him a duty of care to properly investigate the issues of policy and law he uncovered.  They used WPD officers to intimidate and prevent him from speaking at WSC meetings.

80.     WSC should have read and been aware of the allegations in the Jamieson lawsuit. They also violated the law by signing a secret settlement agreement and not publicly disclosing it.  If they had done either and taken appropriate action, Cass would not have been subjected to his adverse employment action and harassment by the Wayland football community.

81.     Any reasonable person in the same situation would have likely suffered emotional distress as result of the Defendant's conduct.

82.     Defendant's actions have caused actual physical harm to Cass including nervousness, anxiety, difficulty sleeping, debilitating depression, and traumatic flashbacks.

83.     As a result of the Defendants' wrongful acts, Cass has suffered and continues to suffer severe emotional distress and substantial damages.

## <u>COUNT VI</u>
## DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 20 U.S.C. $ 1681
### (Wayland School Committee)

84.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

85.     Title IX prohibits exclusion from participation in, denial of benefits of or discrimination under any education or athletic activity receiving federal financial assistance.

86.     WSC is an agency of the Town and an educational body that receives federal financial assistance for its activities and is therefore covered under Title XI.

87.     Title IX prohibits retaliation against individuals who report sex discrimination against others. The Supreme Court ruled that "so to should Title IX be read to prohibit retaliation for advocacy on behalf of those subjected to sex discrimination." *Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005)*

88.     Mr. Cass engaged in activity that is protected under Title IX, including but not limited to:

I.   Reporting discrimination against WHS athletes on the basis of their sex to the WSC;

II.   Opposing and speaking out in regard to the WSC's failure to investigate and correct Title IX violations occurring at WHS in regard to the treatment of female athletes;

III.   Speaking out regarding the WSC's commissioning of and acceptance of a highly falsified Title IX report compiled by the WPS business manager and submitted to the Office of Civil Rights.

IV.   Opposing and speaking out in regard to the WSC's failure to investigate and Title IX

violations occurring at WHS including sexual misconduct directed against female

students by male students; and

V.   Opposing and speaking out in regard to the WSC's failure to investigate Title IX

violations occurring at WHS including sexual misconduct directed against female

students by Wayland coaches.

89.     The WSC deliberately and intentionally subjected Mr. Cass to adverse employment

and retaliatory actions including not reinstating him to his position as athletic director and using

local the police to intimidate Cass from speaking on the above-described protected activity.

90.     The WSC bears responsibility for a written statement by Principal Mizoguchi in

which she stated she opposed Cass' reinstatement because of his past and possible future

advocacy for gender equality and opposition to sex discrimination at WHS. (Exhibit M, ¶ 8)

91.     There was a causal connection between the WSC's adverse actions against Mr. Cass

and his protected activities.

92.     The WSC's unlawful conduct was the proximate cause of Mr. Cass's loss of

employment and general damages, including loss of compensation and benefits, which continue

to this day.

## COUNT VII
### VIOLATION OF 42 U.S.C. § 1983 and G.L. c. 12, § 11H, I
### (Downs, Grieco, Unobskey, Miller)

93.     Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set

forth herein.

94.     Defendants, acting under the color of state law, wrongfully deprived Cass of his

constitutional rights, privileges, and freedom by retaliating against him for exercising his First

18

Amendment rights by publicly speaking out regarding ongoing violations of state and federal law within WPS.

95.     Defendants committed these acts with malice as a result of Cass' whistleblowing activities that brought embarrassment to and public criticism of WSC members and WPS officials.

96.     The Defendants completed all such acts knowing their conduct would deprive Cass of his "right of enjoying and defending his life and liberty" and his "safety and happiness" as defined in the Massachusetts Declaration of Rights.  In addition, they did "interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by [Cass] of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth."

97.     As a direct and proximate result of the Defendants' wrongful actions and deliberate indifference to Cass's rights, Cass has suffered emotional distress, monetary damages, and his character and standing in the community have been irreparably harmed.

## COUNT VIII
### BREACH OF CONTRACT
### (Wayland School Committee, Grieco, Unobskey)

98.     Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set forth herein.

99.     As set forth above, Cass entered into an enforceable employment contract with the WSC and the Wayland Superintendent, a position which Unobskey has held since 2017.  His position as Health & Wellness teacher was covered by the CBA.

100.     WSC and Grieco's refusal to meet with Cass in the spring of 2015 in was in violation of the CBA and the implied terms of his employment contract. (Exhibit C, ¶ 3, First

Amend Compl. ¶ 20)

101.   WSC and Unobskey breached the contract by refusing to reinstate Cass to his position as athletic director and restore his seniority rights. (Exhibit B, ¶ 8.  Exhibit L)

102.   WSC allowed lies to be proffered by Principal Mizoguchi and its Attorney John Wilusz to a Federal Judge falsely stating Cass did not possess the proper credentials to work as the WPS athletic director and thus could not be reinstated to his position.

103.   Cass performed his job with commitment and excellence and in accordance with the terms of the contract.

104.   As a direct, proximate and foreseeable result of the Defendants' breach of the employment contract and the terms of the WSC policies and the CBA, Plaintiff has suffered substantial harm, loss, and damages of at least $1,000,000 and continues to increase.

## COUNT IX
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Wayland School Committee, Grieco, Unobskey)

105.   Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set forth herein.

106.   Implied in every Massachusetts contract is a covenant of good faith and fair dealing.  That implied covenant existed in Cass' employment contract.

107.   WSC and Grieco's refusal to meet with Cass in the spring of 2015 in accordance with the CBA violates the implied covenant of good faith and fair dealing. (Exhibit C, ¶ 3)

108.   Defendant's unjustified and unsupported refusal to reinstate Cass to his job with full seniority rights in accordance with WSC policies, the CBA, and the language in his contract violates the implied covenant of good faith and fair dealing. (Exhibit B, ¶ 8.  Exhibit L)

109.   WSC and Grieco had a legal duty to not intimidate potential witnesses for Cass'

civil trial vs. Wayland.  By information and belief, both the WSC and their Attorney Adam Simms engaged in witness tampering by subtly threatening WPS employees.

110.    As a direct, proximate and foreseeable result of the Defendants' breach of the implied covenant and good faith and fair dealing, Plaintiff has suffered substantial harm, loss, and damages of at least $1,000,000 and continues to increase.


**WHEREFORE**, Plaintiff Stephen F. Cass respectfully requests that this Honorable Court:

    i.    Enter judgment against Defendants;

    ii.    Award Cass the damages he sustained because of Defendants' breaches and wrongful actions in an amount to be determined at trial;

    iii.    Award plaintiff's attorney's fees, costs and expert witness fees; and

    iv.    Award Cass multiple and/or punitive damages where allowable, in an amount to be determined at trial;

    v.    Award compensatory damages for lost wages and benefits, physical illness, physical and emotional pain and suffering, emotional distress, humiliation, anxiety, embarrassment, reputational damage, loss of enjoyment of life and out-of-pocket expenses and other financial losses, plus lawful interest;

    vi.    Order Cass to be reinstated to his position as athletic director for the Wayland Public Schools together with full seniority rights and retirement benefits; and

    vii.    Award such other and further relief as may appear just and proper.


## JURY DEMAND

Plaintiff Stephen F. Cass hereby requests a jury on all counts so triable.

Respectfully submitted,

STEPHEN F. CASS

PO Box 2723
Orleans, MA 02653
stephenfcass@yahoo.com
339.368.2961

Dated: May 20, 2021

---

MIDDLESEX, SS.   **Commonwealth of Massachusetts**
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

**In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this Fourteenth day of June, 2021.**

**Deputy Assistant Clerk**

4

## Commonwealth of Massachusetts

JUN 0 1 2021

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. *2181CV00437*

*Stephen Cass* PLAINTIFF(S),

v.

*Regina Tate* et al, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO _*Regina Tate*_ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the *Middlesex Sup* Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: *Middlesex Superior*
    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex_ Court, *200 Tradecenter* (address), by mail or in person, **AND** *Woburn MA 01801*
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _PO Box 2723, Orleans, MA 02653_

3.  **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____.

_____

Michael A. Sullivan
Clerk-Magistrate

. Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Norfolk County Sheriff's Office,** P.O. Box 699245, Quincy, MA 02269 / Tel. (781) 326-7271
**Norfolk, SS**

May 25, 2021

I hereby certify and return that on 5/24/2021 at 1:40 PM I served a true and attested copy of the summons and first amended complaint and jury demand and exhibits in this action in the following manner: To wit, by delivering in hand to Regina Tate at 300 Crown Colony Drive Murphy, Hesse, Toomey and Lehane, Suite 410 Quincy, MA 02169 . Attestation - 1 Copy ($5.00) Basic Service Fee ($30.00) Conveyance ($1.50) Postage and Handling ($1.00) Travel ($11.20) Total: $48.70

**Deputy Sheriff  Paul Donoghue**

**Deputy Sheriff**

_____, 20____

5

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUN 0 8 2021

CLERK

# Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2181CV00437

_Stephen Cass_, PLAINTIFF(S),

V.

_Jeanne Downs_ DEFENDANT(S)



## SUMMONS

THIS SUMMONS IS DIRECTED TO _Jeanne Downs_ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Middlesex Sup_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: _Middlesex Superior_
    a. Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex_ Court,
    _200 Tradecenter_ (address), by mail or in person, **AND**
    _woburn_
    _MA_
    _01801_ 3.
    b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _PO Box 2723, Orleans, MA 02653_

    **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____ , 20 ____ .

_____

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Middlesex Sheriff's Office** • 400 Mystic Ave, 3rd Floor, Medford, MA 02155 • 617-547-1171
**Middlesex, ss.**

May 26, 2021

I hereby certify and return that on 5/24/2021 at 11:38 AM I served a true and attested copy of the SUMMONS AND 1ST AMENDED COMPLAINT & JURY DEMAND & EXHIBITS in this action in the following manner: To wit, by leaving at the last and usual place of abode of JOANNE DOWNS, 195 CONCORD Road Wayland, MA 01778 . Fees: Attest ($5.00) Basic Service Fee ($20.00) Postage and Handling ($3.00) Office Expense ($2.00) Total: $30.00

Kevin Kelley

_____

Deputy Sheriff

, 20____

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUN 08 2021

CLERK

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _218CV00437_

_Stephen Cass_, PLAINTIFF(S),

v.

_Arthur Unobskey_, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO _Arthur Unobskey_ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Middlesex Sup._ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: _Middlesex Superior_
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex_ Court, _200 Tradecenter Woburn MA 01801_ (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _PO Box 2723, Orleans, MA 02653_

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____ , 20 ___ .

_____

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Middlesex Sheriff's Office** • 400 Mystic Ave; 3rd Floor, Medford, MA 02155 • 617-547-1171
**Middlesex, ss.**

May 26, 2021

I hereby certify and return that on 5/24/2021 at 9:18 AM I served a true and attested copy of the SUMMONS AND 1ST AMENDED COMPLAINT & JURY DEMAND & EXHIBITS in this action in the following manner: To wit, by delivering in hand to SETH CRANDELL, SELECTMAN'S OFFICE, agent, person in charge WHO ACCEPTED service for ARTHUR UNOBSKEY, at TOWN OF WAYLAND 41 COCHITUATE Road Wayland, MA 01778 . Fees: Attest ($5.00) Basic Service Fee ($30.00) Postage and Handling ($3.00) Total: $38.00

_____

Kevin Kelley

_____
Deputy Sheriff

_____ , 20 ___

ω

*1*

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUN 0 8 2021

_____ CLERK

## Commonwealth of Massachusetts

MIDDLESEX, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. *2181CV00437*

*Stephen Cass* , PLAINTIFF(S),

v.

*Louise Miller* , DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO *Louise Miller* . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the *Middlesex Sup.* Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: *Middlesex Superior*
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, *Middlesex* Court, *200 Trade center* (address), by mail or in person, **AND**
   *Woburn*
   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
   *MA* address: *PO Box 2723, Orleans, MA 02653*
   *01801*
3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____ , 20 ____ .

_____
Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Middlesex Sheriff's Office** • 400 Mystic Ave, 3rd Floor, Medford, MA 02155 • 617-547-1171
**Middlesex, ss.**

**May 26, 2021**

I hereby certify and return that on 5/24/2021 at 9:18 AM I served a true and attested copy of the SUMMONS AND 1ST AMENDED COMPLAINT & JURY DEMAND & EXHIBITS in this action in the following manner: To wit, by delivering in hand to SETH CRANDELL, SELECTMAN'S OFFICE, agent, person in charge WHO ACCEPTED service for LOUISE MILLLER, at TOWN OF WAYLAND 41 COCHITUATE Road Wayland, MA 01778 . Fees: Attest ($5.00) Basic Service Fee ($30.00) Postage and Handling ($3.00) Total: $38.00

_____
Kevin Kelley

_____
Deputy Sheriff

, 20 ____

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2181CV00437

Stephen Cass , PLAINTIFF(S),

v.

Ellen Grieco, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO Ellen Grieco . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex Sup. Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days**. If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: Middlesex Superior
    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Court, 200 Trade Center (address), by mail or in person, **AND**
    Woburn
    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
    MA address: PO Box 2723, Orleans MA 02653
    01801 3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

4.   **Legal Assistance.**  You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic
     information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:**  The "civil docket number" appearing at the top of this notice is the
     case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss.
     You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____ , 20____ .

Michael A. Sullivan
Clerk-Magistrate

Note:  The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the
summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

**Middlesex Sheriff's Office** • 400 Mystic Ave, 3rd Floor, Medford, MA 02155 • 617-547-1171
**Middlesex, ss.**

May 26, 2021

I hereby certify and return that on 5/24/2021 at 11:28 AM I served a true and attested copy of the SUMMONS AND 1ST
AMENDED COMPLAINT & JURY DEMAND & EXHIBITS in this action in the following manner: To wit, by leaving at the last and
usual place of abode of ELLEN GRIECO, 14 MELLEN LANE Wayland, MA 01778 . Fees: Attest ($5.00) Basic Service Fee
($20.00) Postage and Handling ($3.00) Office Expense ($2.00) Total: $30.00

Kevin Kelley
Deputy Sheriff

, 20____

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUN 0 8 2021

_____
CLERK

# Commonwealth of Massachusetts

9

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2181CV00437

_Stephen F. Cass_, PLAINTIFF(S),

v.

_Wayland School Committee_, DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO _Wayland School Committee_ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Middlesex Sup_. Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days**. If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: _Middlesex Superior_
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex Court,_
   _200 Trade center_ (address), by mail or in person, **AND**
   _Woburn_
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
   _MA_ address: _PO Box 2723, Orleans MA 02653_
   _01801_

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20 ___.

_____

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Middlesex Sheriff's Office** • 400 Mystic Ave, 3rd Floor, Medford, MA 02155 • 617-547-1171
**Middlesex, ss.**

May 26, 2021

I hereby certify and return that on 5/24/2021 at 9:18 AM I served a true and attested copy of the SUMMONS AND 1ST AMENDED COMPLAINT & JURY DEMAND & EXHIBITS in this action in the following manner: To wit, by delivering in hand to SETH CRANDELL, SELECTMAN'S OFFICE, agent, person in charge WHO ACCEPTED service for WAYLAND SCHOOL COMMITTEE, at 41 COCHITUATE Road Wayland, MA 01778 . Fees: Attest ($5.00) Basic Service Fee ($30.00) Postage and Handling ($3.00) Total: $38.00

_____
Kevin Kelley

_____
Deputy Sheriff

_____, 20 ___

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 2181CV00437 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Cass, Stephen F. vs. Downs, Jeanne et al | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|

| TO: File Copy | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |
|---|---|

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 05/27/2021 | |
| Response to the complaint filed (also see MRCP 12) | | 06/28/2021 | |
| All motions under MRCP 12, 19, and 20 | 06/26/2021 | 07/26/2021 | 08/25/2021 |
| All motions under MRCP 15 | 04/22/2022 | 05/23/2022 | 05/23/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 02/16/2023 | | |
| All motions under MRCP 56 | 03/20/2023 | 04/17/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/15/2023 |
| Case shall be resolved and judgment shall issue by | | | 02/26/2024 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 02/26/2021 | ASSISTANT CLERK Arthur T DeGuglielmo | PHONE (781)939-2754 |
|---|---|---|

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT DEPARTMENT
                                        C.A. NO. 2181CV00437

| | |
|---|---|
| STEPHEN F. CASS, )<br>     Plaintiff, )<br> )<br>VS. )<br> )<br>JEANNE DOWNS, ARTHUR UNOBSKEY, )<br>LOUISE MILLER, ELLEN GRIECO, REGINA TATE, )<br>and WAYLAND SCHOOL COMMITTEE, )<br>     Defendants. ) | **RECEIVED**<br><br>6/9/2021 |

### NOTICE OF FILING OF NOTICE OF REMOVAL

Please take notice that a Notice of Removal, a true and correct copy of which is attached

hereto, was filed by the defendants, in the office of the Clerk of the United States District Court

for the District of Massachusetts on June 9, 2021, relative to the removal and transfer of the

above-captioned action. The Certified Notice of Removal will be filed with this Court upon

receipt from the United States District Court by this office.

The Defendants,
JEANNE DOWNS, ARTHUR UNOBSKEY,
LOUISE MILLER, ELLEN GRIECO,
and WAYLAND SCHOOL COMMITTEE,
By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ Adam Simms*

Adam Simms, BBO #632617
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com

IC

The Defendant,
REGINA TATE,
By her Attorneys,

/s/ Peter L. Mello

Peter L. Mello, BBO # 659680
MURPHY, HESSE, TOOMEY & LEHANE, LLP
Crown Colony Plaza
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000
pmello@mhtl.com

Dated: June 9, 2021

## CERTIFICATE OF SERVICE

I, Adam Simms, certify that on June 9, 2021, true copes of the foregoing documents were served by both electronic and first-class mail, postage prepaid on *pro se* plaintiff as follows:

Stephen F. Cass
9 Captain Linnell Road
P.O. Box 2723
Orleans, MA 02653
stephenfcass@yahoo.com

Peter L. Mello, BBO # 659680
MURPHY, HESSE, TOOMEY & LEHANE, LLP
Crown Colony Plaza
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000
pmello@mhtl.com

/s/ Adam Simms

Adam Simms, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN F. CASS,<br>    Plaintiff, | )<br>)<br>) |
| VS. | ) C.A. No. 1:21-CV- |
| | ) |
| JEANNE DOWNS, ARTHUR UNOBSKEY,<br>LOUISE MILLER, ELLEN GRIECO, REGINA TATE,<br>and WAYLAND SCHOOL COMMITTEE,<br>    Defendants. | )<br>)<br>)<br>) |

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
## 28 U.S.C. § 1441(a)

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS:

Petitioners, Jeanne Downs, Arthur Unobskey, Louise Miller, Ellen Grieco, Wayland

School Committee, and Regina Tate, respectfully petition this Court, pursuant to 28 U.S.C. §

1441(a), for removal of the above-entitled action to the United States District Court for the District

of Massachusetts, Civil Section, from the Superior Court of the Commonwealth of Massachusetts

in and for the County of Middlesex, and for their Notice of Removal state as follows:

    1.    The petitioners are named as defendants by the plaintiff, Stephen F. Cass in a civil

action filed in the Superior Court of the Commonwealth of Massachusetts in and for the County

of Middlesex, entitled Stephen F. Cass vs. Jeanne Downs, et al, C.A. No. 2181CV00437. On May

21, 2021, the plaintiff served Summonses and copies of the Amended Complaint upon the

defendants. Copies of the Summons and Amended Complaint served upon are attached hereto as

Exhibits "A" and "B," respectively. The petitioners have not yet answered or otherwise responded

to said Summons and Complaint, nor has an appearance been filed in the Superior Court on their

behalf.

2.      This is a suit of a wholly civil nature brought in a Massachusetts state court. The action is pending in the Superior Court of the Commonwealth of Massachusetts in and for the County of Essex and, accordingly, under 28 U.S.C. § 101 and § 1441(a), the United States District Court for the District of Massachusetts is the proper forum for removal.

3.      In Count VI and VII of his action, the plaintiff alleges that the petitioners violated his First Amendment rights under Title 1X and 42 U.S.C. § 1983, respectfully.

4.      Because this civil action arises under the Constitution and laws of the United States, the United States District Court has original jurisdiction under 28 U.S.C. § 1331.

5.      The petitioners are filing this Notice of Removal within thirty (30) days of service of the Summons and Complaint, within thirty days of the date this action became removable, and within the time for filing this petition. See 28 U.S.C. § 1446.

6.      The petitioners will file a Notice of Filing of this Notice of Removal and a copy of this Notice of Removal with the Clerk of the Superior Court of Massachusetts, County of Middlesex.

7.      Pursuant to Local Rule 81.1(a), the petitioner shall request of the Clerk of the Superior Court of Massachusetts, County of Middlesex, certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein, and shall file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

WHEREFORE, petitioners, Jeanne Downs, Arthur Unobskey, Louise Miller, Ellen Grieco, Wayland School Committee, and Regina Tate and pray that the above-entitled action now pending in the Superior Court of the Commonwealth of Massachusetts in and for Middlesex County be removed from that Court to this United States District Court.

2

The Defendants,
JEANNE DOWNS, ARTHUR UNOBSKEY,
LOUISE MILLER, ELLEN GRIECO,
and WAYLAND SCHOOL COMMITTEE,
By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ Adam Simms*
_____
Adam Simms, BBO #632617
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com

The Defendant,
REGINA TATE,
By her Attorneys,

*/s/ Peter L. Mello*
_____
Peter L. Mello, BBO # 659680
MURPHY, HESSE, TOOMEY & LEHANE, LLP
Crown Colony Plaza
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000
pmello@mhtl.com

Dated: June 9, 2021

3

## CERTIFICATE OF SERVICE

I, Adam Simms, certify that on June 9, 2021, true copes of the foregoing documents were served by both electronic and first-class mail, postage prepaid on *pro se* plaintiff as follows:

Stephen F. Cass
9 Captain Linnell Road
P.O. Box 2723
Orleans, MA 02653
stephenfcass@yahoo.com

*/s/ Adam Simms*
_____
Adam Simms, Esq.

4



# B

#3

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX ss.**

**SUPIEROR COURT DEPARTMENT
OF THE TRIAL COURT**

**Docket # 2181CV00437**

Stephen F. Cass

                    Plaintiff

v.

JEANNE DOWNS, ARTHUR UNOBSKEY, LOUISE
MILLER, ELLEN GRIECO, REGINA TATE,
WAYLAND SCHOOL COMMITTEE

                    Defendants

**FIRST AMENDED COMPLAINT
AND JURY DEMAND**

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 2 0 2021

CLERK

## INTRODUCTION

This action is being commenced to recover damages sustained by plaintiff Stephen F. Cass

resulting from the actions of Jeanne Downs, Ellen Grieco, Louise Miller, Arthur Unobskey, Regina

Tate, and Wayland School Committee ("WSC") (collectively "Defendants").  Mr. Cass seeks

compensation for the wrongful and/or tortious acts of the Defendants, specifically their retaliatory

actions which violated Cass' civil rights under 42 U.S.C. § 1983 and MA G.L. c. 12, § 11H,I as

well as their defamation, negligent and intentional infliction of emotional distress, negligent

supervision, civil conspiracy, whistleblower retaliation, breach of contract, and breach of implied

covenant of good faith and fair dealing.

Cass served as athletic director for the Wayland Public Schools ("WPS") from 2013-2015.

Upon accepting the job, he was unaware of numerous problems which plagued the athletic

program including two athletic director predecessors being fired in the previous three years, the

1

hiring of two auditing firms to review athletic finances who uncovered as much as $600,000 in

misused money, and budgets overruns in excess of 30%.

School committee members in particular were adamant that the athletic department's fiscal

and operational issues needed to be addressed and made numerous public comments on the subject

and directly to Cass himself. As result, Cass went to work to balance the budget and review the

operational issues in his department. Most of the issues he uncovered were the result of the actions

of Wayland High School ("WHS") football coach Scott Parseghian who was also the assistant

principal. Rather than support Cass in addressing the issues, the WHS principal and

Superintendent illegally fired Cass. In accordance with WSC policy, Cass then took his

complaints to the WSC who refused to meet with him in violation of his employment rights.

The school's attorney Regina Tate possessed the legal acumen and had the responsibility to

ensure the WSC acted in accordance with the law. She was receiving substantial fees for her work

and chose to intentionally and illegally violate Cass' employment rights, made disparaging public

and private remarks about Cass, and ultimately lied in Federal Court in an attempt to coverup her

actions.

After Cass' employment ended, the WSC and Attorney Tate submitted false and incomplete

information to state agencies under the guise of 'investigating' Cass' complaints. Their actions,

together with the actions of WPS officials, caused Cass to be labeled a liar and become a pariah in

Wayland. Cass was later falsely arrested by police friends of the football coach as a result of his

whistleblowing actions. The subsequent criminal trial resulting from the arrest ended in a rare

directed verdict in Cass' favor.

Cass was vindicated when a jury unanimously found he was fired in violation of the

Massachusetts Whistleblower Act. After the trial, Cass expected to be immediately rehired to his

2

athletic director position in accordance with WSC policy.  However, rather than rehire him, WSC members and WPS administrators made disparaging public remarks and applauded the school officials who broke the law.

For years, WSC members and WPS officials were committed to covering up the issues Cass disclosed.  This led to a final incident in January 2020 in which the WSC, as they had done previously, hired a Wayland Police Department ("WPD") officer to intimidate and prevent Cass from speaking at a WSC meeting so to inform the Wayland community that school officials had covered up allegations of rape and sexual assault committed by football players.

## PARTIES

1.      Plaintiff currently resides at 9 Captain Linnell Rd., Orleans, Barnstable County, Massachusetts.  His mailing address is PO Box 2723, Orleans, MA 02653.

2.      Defendant Arthur Unobskey ("Unobskey") is an employee of the Wayland Public Schools.  He is sued in her individual capacity.  His employment address is 41 Cochituate Rd., Wayland, MA 01778, Middlesex County, Massachusetts.

3.      Defendant Louise Miller ("Miller") is an employee of the Town of Wayland.  She is sued in her individual capacity.  Her employment address is 41 Cochituate Rd., Wayland, MA 01778, Middlesex County, Massachusetts.

4.      Defendant Wayland School Committee ("WSC") is a public agency.  Its employment address is 41 Cochituate Rd., Wayland, MA 01778, Middlesex County, Massachusetts.

5.      Defendant Ellen Grieco ("Grieco") is the former Chair of the Wayland School Committee.  She is sued in her individual capacity.  She currently resides at 14 Mellen Ln., Wayland, MA 01778, Middlesex County, Massachusetts.

3

6. Defendant Jeanne Downs ("Downs") is the current Chair of the Wayland School Committee. She is sued in her individual capacity. She currently resides at 195 Concord Rd.., Wayland, MA 01778, Middlesex County, Massachusetts.

7. Defendant Regina Tate ("Tate") is former Town Counsel for the Wayland Public Schools. She is sued in her individual capacity. Her place of employment is listed as Murphy, Hesse, Toomey and Lehane, LLP, Crown Colony Plaza, 300 Crown Colony Drive, Suite 410, P.O. Box 9126, Quincy, MA 02169.

## VENUE & JURISDICTION

8. The Superior Court has original subject matter jurisdiction of this action pursuant to G.L. c. 212, § 4, and G.L. c. 214, § 1.

9. This Court has personal jurisdiction pursuant to G.L. c. 223A, § 2 because the parties maintain their principal places of business and/or residences within the Commonwealth of Massachusetts.

10. This Court has concurrent jurisdiction over Plaintiff's claims arising under federal law pursuant to 20 U.S.C. § 1681 and 42 U.S.C. § 1983.

11. Venue is appropriate in Middlesex County pursuant to G.L. c. 223, § 1.

## GENERAL FACTUAL ALLEGATIONS

### *Timing of the Complaint*

12. On February 28, 2018, Cass received and was able to review previously private emails and documents pertaining to the conduct of the Defendants. This forms the initial date of the three-year Statute of Limitations for many elements of this complaint.

13. Cass made good faith requests to obtain all relevant documents from the Defendants but was repeatedly refused or required to pay exorbitant sums. In response to one request, WPS

4

Superintendent Unobskey stated it would cost $83,501 to obtain emails.  Cass ultimately had to pay over $2,800 to obtain public documents from the Wayland schools. (Exhibit F)

14.     On October 19, 2020, Cass received copies of the WPS Collective Bargaining Agreements ("CBA") from WPS Human Resources Director Kathleen Buckley.  These documents were previously withheld from Cass despite repeated requests to obtain them.  This forms another date regarding Statute of Limitations for some elements of this case.

15.     Cass had previously made a public records request to obtain WPS Policies from Superintendent Unobskey on August 7, 2018.  He responded, "To clarify, the documents you requested exist", then informed Cass he would have to pay $1,242.50 for them. (Exhibit F)

16.     Cass prevailed at trial in US District Court by a unanimous jury verdict on his Massachusetts Whistleblower Claim in July 2019.  Many documents which form the basis of this complaint were withheld throughout the discovery process for that legal action.

17.     Throughout the aforementioned legal action, the WSC, its employees and attorneys engaged in the withholding/spoilage of evidence, witness tampering, and multiple blatant acts of perjury.

### *Stephen Cass' Hiring as Wayland Athletic Director*

18.     Cass was employed as Director of Athletics and Health and Wellness Instructor by WPS from July 2013 through June 23, 2015.

19.     In his contract, he was employed as an 80% athletic director and 20% Health and Wellness teacher.

20.     On the last page of the contract, it stated that *"I hereby accept the conditions stated herein and agree to abide by all relevant laws, Wayland School Committee policies, and administrative rules and regulations which apply to my position."*

21.     WSC policy DIF titled <u>Anti-Fraud and Whistleblower Policy</u> states the following:

"All persons who make a report of a violation or suspected violation of this policy are subject to

the protections of G.L. c. 149, §185, and of G.L. c. 12A, § 14.  Accordingly, no such person who

attempts to comply with this policy shall:

- be dismissed or threatened with dismissal;

- be disciplined, suspended, or threatened with discipline or suspension;

- be penalized or be the subject of any other retribution or retaliation;

- be intimidated or coerced, or

- be subjected to any other adverse employment action.

22.     Cass received a BA from Yale University where he captained the soccer team.  He

has an MBA from The Ohio State University and national athletic director certification.  He

served as athletic director at three schools prior to working in Wayland and worked in the

athletic departments of both his alma maters.

### Athletic Department issues Cass' Inherited and Uncovered

23.     During the interview process, Cass was never informed of the severe fiscal and

operational problems which had plagued Wayland athletics for years.

24.     Two WPS athletic directors had been fired in the three years before Cass' hiring.

Martha Jamieson was fired in 2010 and filed a lawsuit against WPS.  Her successor Justice

Smith was fired in 2013 for mismanaging the athletic budget.

25.     In her lawsuit, Jamieson long with several WHS faculty members made numerous

allegations about the football program including: the team getting generally preferential

treatment; cheating in violation of Massachusetts Interscholastic Athletic Association (MIAA)

rules; drinking and drug use being covered up by WPS officials and the WPD; incidents of rape

and sexual assault being covered up by WPS officials. She also spoke in general terms of a football coach and program totally out of control and above accountability. In addition, she gave numerous examples of an unnaturally close and unhealthy relationship between the football program and WPD officers, several of whom played football with or for Parseghian at WHS.

26.     Between 2011-2013, WPS hired two auditing firms to review athletic department finances. They uncovered numerous irregularities including as much as $600,000 in misused funds and recommended tighter controls surrounding athletic finances.

27.     Cass began scrutinizing financial documents in August 2013. In doing so, he uncovered a long list of issues that had not been mentioned to him before accepting his position, including violations for which Parseghian was ultimately convicted by the State Ethics Commission on December 12, 2017.

28.     Cass was informed of and witnessed sex discrimination in WHS athletics. This resulted mostly from the actions of Parseghian who used his administrative position and power within WHS to direct a disproportionate amount of resources and funds to the football program, often in violation of school policy and state law.

29.     Cass informed his superiors of the many illegal and inequitable practices within the athletic program. None were willing to support Cass in resolving the problems or confront the coaches involved.

### *Cass' Accomplishments, Termination, and 'Whistleblowing'*

30.     During Cass' two years, Wayland varsity teams achieved more on-field success than at any time in history. Cass also reduced the budget deficit from nearly $100,000 to $7,000 in each of his two years as athletic director.

31.     Despite these accomplishments and the support of the vast majority of WHS

coaches, athletes, and parents, Cass was informed his contract would not be renewed in May

2015 by WHS Principal Allyson Mizoguchi, who had a long, close relationship with Parseghian.

32.     As a result of WPS leaders attempting to fire him illegally and coverup the issues he

raised, Cass wrote a two-page letter to the WSC on May 19, 2015 listing his employment

situation and the issues he'd uncovered in general terms.

33.     On May 26, 2015, Cass spoke publicly at a WSC meeting imploring that body to

investigate issues he uncovered and intervene in his employment matter.  This caused the

situation to become a public matter, something he had tried to avoid.  Many news articles were

subsequently published in the MetroWest Daily News ("MWDN") and Boston Globe about

problems within the WHS athletic program beginning with a front-page article in the MWDN

titled "Wayland Athletic Director warns of 'illegal practices' in youth sports."

34.     On June 3, 2015, Cass received an email from WSC chair Ellen Grieco informing

him that the WSC was not willing to meet with him, in violation of WSC policy GBK and his

employment rights guaranteed under the CBA agreement Article III, C6(a,b). (Exhibit E, pg. 7)

35.     On June 3, 2015, Attorney Tate falsely informed the WSC that they were not

allowed to meet with Cass. (Exhibit D, ¶ 13)

36.     During the spring and summer, Attorney Tate made numerous spoken and written

comments which disparaged Cass rather than applaud his courage for addressing issues and

confronting an all-powerful coach.

37.     The WSC and Attorney Tate sent incomplete information to State Agencies

regarding Cass' complaints.  All they did was forward Cass' May 19, 2015 letter to state

agencies, which was never intended to be a complete list of issues but simply a request for WSC

members to meet with him.  Cass had provided WPS officials with detailed information about

problems in the athletic program on September 18, 2014, March 31, 2015 and May 5, 2015. (Exhibit A, ¶ 2. Exhibit G)

38.     Issues which the WSC and Tate did not properly investigate or send full information to government or regulatory agencies include:

a.  They commissioned a highly falsified Title IX report in which large football and wrestling expenditures were omitted, did not investigate issues such as girls not having equal access to athletic facilities and the coaches of girls teams being far inferior to their counterparts coaching boys' teams. In the end, they improperly omitted football from their final report to the Office of Civil Rights. Information from their falsified Title IX report was subsequently published in the MWDN.

b.  Did not investigate $10,000's in missing football fundraising money from a fundraiser through eteamsponsor.com and several other fundraisers conducted in violation of WSC policy or state law. They did not investigate huge sums of missing fundraising money in the boys soccer program. In 2013-14 alone, according to parents, the team raised approximately $8,000 yet only $1,870 was deposited into the account. The Inspector General's office wrote the WSC stating that the WSC should investigate these issues yet they never did.

c.  In their submission to the Department of Education, regarding CORI compliance, they omitted nearly every name who was not in compliance and thus received a favorable finding.

d.  They did not submit information on a lack of compliance with concussion testing by coaches. Wayland coaches ran afoul of Massachusetts law (Chapter 166 of Acts of 2010) and Department of Public Health regulations regarding mandatory annual

concussion training, yet neither the WSC nor Tate submitted this information.

    e.  Violations of Massachusetts Interscholastic Athletic Association ("MIAA") policy

       in the football and wrestling programs were not submitted to the MIAA.

39.    Since WPS officials and WSC members repeatedly refused to meet with Cass, he

continued to speak publicly and provide information to the public through written documents

both to clear his own name but also to force WPS officials to investigate the issues he uncovered.

He spoke publicly at numerous WSC meetings in the summer and fall of 2015 to provide

examples of the problems he uncovered and imploring WSC members to investigate his claims.

The last of his speeches was on October 5.

40.    As result of his raising issues publicly and the WSC not investigating his

complaints, throughout the summer of 2015 Cass was harassed at the supermarket, jogging,

eating dinner…virtually any time he went out in public.  During the summer, several of

Parseghian's high school friends in the WPD joined in on the harassment.  100's of anonymous

comments attacking Cass appeared in online media.  One morning, Cass found his car covered in

white powder at his Wayland home.

41.    This came to a head on October 26, 2015 when Cass was falsely arrested in his

home for the alleged theft of a five-year old computer based on false claims by WPS officials.

42.    Cass was found not guilty by directed verdict at trial.  The Boston Globe Spotlight

Team and Editor of the MWDN wrote about the absurdity of the arrest and prosecution and

remarked on the conspiratorial conduct of the Wayland football parents and police. (Exhibit H)

43.    In response to the arrest, the WSC made numerous public statements praising WPS

officials for their actions.

44.    Cass continued to advocate for an end to sex discrimination at WHS and for the

WSC to investigate allegations of sexual misconduct being directed at female WHS students. Emails between Cass and the WSC on this subject are dated July 21, 2015, October 18, 2016, December 16, 2016, January 19, 2017, January 22, 2017, April 23, 2017, May 14, 2017, July 14, 2017, January 15, 2020, May 4, 2020, September 12, 2020, January 20, 2021

### *Cass' Employment Situation*

45.     In December 2019, Cass and the WPS and Town reached a financial settlement in regard to their previous lawsuit. The Settlement Agreement provided Cass the ability to take legal action against any WPS or Town employee who was not a named defendant. It was also silent as to how Cass' reinstatement and retirement credit would be handled.

46.     Cass fully expected he would be immediately reinstated to his job in accordance with WSC policy DIF. Rather than reward his actions, WSC member Downs made several public comments about Cass which had negative connotations.

47.     No WPS employee was reprimanded, dismissed, or disciplined as a result of illegally violating Cass' employment rights despite WSC policy DIF stating "Violation of this section of the policy may result in disciplinary action, up to and including dismissal." (Exhibit I)

48.     On January 16, 2020, the WPC and WPS officials engaged in a final act of intimidation and retaliation. Cass emailed WSC member Grieco that he would attend a WSC meeting the following next day. Cass had prepared a speech documenting how WPS officials and the WPD had covered up past incidents of rape and sexual assault. In response, Downs sent Cass' an email reply that Cass perceived as a veiled threat. Upon Cass' arrival at Town Offices, he encountered WPS officer Chris Cohen, who was one of three WPD officers who had arrested Cass. Rather than risk being falsely arrested again Cass chose not to speak at the WSC meeting and publicly expose the terrible crimes and coverup due. (Exhibit J)

49. Since Cass was not reinstated to his athletic director position on July 1, 2020 (the first legal day of the new school year), Cass appealed to Superintendent Unobskey on August 24 but received no reply. (Exhibit L)

### *Damage to Cass' Career and Life*

50. As a result of the conduct of the WSC and WPS officials, Cass' professional reputation has been effectively ruined.  Cass has applied for over 500 jobs since his arrest but has not been able to find gainful employment.  Several educational search firms informed Cass they will not work with him due to the publicity resulting from his arrest.

51. Cass expected to be reinstated to his position in the WPS if it was determined he had been fired in violation of Massachusetts law and WSC policy DIF.  Since he has virtually no job prospects as a result of the actions which occurred in Wayland, the severe financial and emotional distress from which he suffers continues to this day.

### COUNT I
### CIVIL CONSPIRACY
### (ALL DEFENDANTS)

52. Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

53. The Defendants acted in unison to interfere with Mr. Cass's civil rights, to defame him, wrongfully imprison him, and negligently and intentionally cause him severe emotional distress in an effort to punish him for speaking out publicly, *inter alia*, with respect to the following matters:

    a. WPS officials covering up incidents of rape and sexual assault by Wayland football players.

12

b. WPS officials covering up allegations of sexual misconduct by varsity coaches with WHS students.

c. WPS officials and WSC members not reporting sexual misconduct allegations to the Department of Children and Families in violation of their legal duties as 'Mandated Reporters' of child abuse and neglect.

d. Sexual discrimination regarding the treatment of female student athletes at WHS.

e. WPS's indifference and failure to investigate and remedy Title IX violations which existed with respect to the treatment of female athletes.

f. WPS officials punishing WHS female students for violations of school and MIAA policies but not doing the same to male students, especially football players.

g. The football program misappropriating funds belonging to other WHS teams.

h. Fiscal malfeasance in the football and boys soccer programs.

i. State Ethics violations committed by multiple coaches.

j. His employment rights as guaranteed by WSC policy and the CBA.

54. Defendants conspired to have Cass prosecuted for a crime they knew he did not commit.

55. At all relevant times, the Defendants' conduct was planned, knowing, willing and intentional.

56. As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer substantial damages.

## COUNT II
### DEFAMATION
**(Grieco, Downs, Tate, Wayland School Committee)**

57. Cass restates, realleges and incorporates by reference each preceding paragraph as

13

if specifically set forth herein.

58.     Defendants made numerous public comments they knew were false and misleading.

59.     Grieco and Downs made false statements to the public and at WSC meetings to harm Cass' reputation and cover-up the actions of other WPS employees and administrators. (Exhibit B, ¶¶ 3,4,8.  Exhibit C, ¶¶ 6,7,8,11,15.  Exhibit D, ¶¶ 4,9,11,13)

60.     Tate made public comments at WSC meetings blaming Cass rather than applauding his courage to confront longstanding issues within the WHS athletic program. (Exhibit D, ¶ 13)

61.     Public comments made by WSC members were done with the specific intent of damaging Cass' reputation in Wayland and beyond.

62.     Defendants knowingly and willfully defamed Cass and acted in reckless disregard to his legal rights and how their words and actions would impact Cass' standing and reputation in the community.

63.     As a result of the Defendants' actions, Mr. Cass has suffered actual injury or harm.

## COUNT III
### NEGIGENT SUPERVISION
### (Grieco, Downs, Wayland School Committee)

64.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

65.     Grieco, Downs, and WSC breached their duty to properly supervise individuals who reported to them.

66.     Grieco, Downs, and WSC owed Cass a duty to take reasonable care in supervising WPS officials during the course of business so that they did not commit tortious injuries including violating Cass' employment rights, facilitating his arrest and prosecution, and other retaliatory acts.

67.     WSC did not properly supervise Principal Mizoguchi or their Attorney John Wilusz when both lied to a Federal Judge by stating Cass did not possess the proper credentials to work as the WPS athletic director.

68.     Cass' injuries resulted due to the conduct of the Defendants.

69.     As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer substantial damages.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

70.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

71.     Defendants knew or should have known that their intentional conduct would cause emotional distress, including: placing armed WPD officer at WSC meetings to prevent Cass from speaking; allowing WPS officials to defame Cass in the media and with local residents; WSC members making disparaging public comments about Cass; not properly investigating Cass' allegations which subjected him to scorn, ridicule, and harassment within the Town of Wayland; WSC continuing the baseless prosecution of Cass' through his criminal trial.

72.     Defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

73.     The actions of the Defendants were the cause of the plaintiff's distress.

74.     The emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

75.     As a result of the Defendants' outrageous actions, Cass has suffered physical and emotional effects due to the Defendants intentional conduct, including not limited to anxiety,

15

sleeping issues, and severe depression.

76.     The Defendants actions were extreme and outrageous such that any reasonable person in Cass' position would have suffered emotional distress under the circumstances Cass was forced to endure due to the Defendants intentional conduct.

77.     As a result of the Defendants' wrongful acts, Mr. Cass has suffered and continues to suffer severe emotional distress and substantial damages.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

78.     Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

79.     Defendants owed Cass a duty of care to provide Cass the rights of all other WPS employees and to not allow him to be subjected to harassment by school employees as a result of his whistleblowing activities.  They owed him a duty of care to properly investigate the issues of policy and law he uncovered.  They used WPD officers to intimidate and prevent him from speaking at WSC meetings.

80.     WSC should have read and been aware of the allegations in the Jamieson lawsuit. They also violated the law by signing a secret settlement agreement and not publicly disclosing it.  If they had done either and taken appropriate action, Cass would not have been subjected to his adverse employment action and harassment by the Wayland football community.

81.     Any reasonable person in the same situation would have likely suffered emotional distress as result of the Defendant's conduct.

82.     Defendant's actions have caused actual physical harm to Cass including nervousness, anxiety, difficulty sleeping, debilitating depression, and traumatic flashbacks.

83.    As a result of the Defendants' wrongful acts, Cass has suffered and continues to suffer severe emotional distress and substantial damages.

**COUNT VI**
**DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE IX OF
THE EDUCATION AMENDMENTS OF 1972 20 U.S.C. $ 1681
(Wayland School Committee)**

84.    Cass restates, realleges and incorporates by reference each preceding paragraph as if specifically set forth herein.

85.    Title IX prohibits exclusion from participation in, denial of benefits of or discrimination under any education or athletic activity receiving federal financial assistance.

86.    WSC is an agency of the Town and an educational body that receives federal financial assistance for its activities and is therefore covered under Title XI.

87.    Title IX prohibits retaliation against individuals who report sex discrimination against others. The Supreme Court ruled that "so to should Title IX be read to prohibit retaliation for advocacy on behalf of those subjected to sex discrimination." *Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005)*

88.    Mr. Cass engaged in activity that is protected under Title IX, including but not limited to:

   I.   Reporting discrimination against WHS athletes on the basis of their sex to the WSC;

   II.  Opposing and speaking out in regard to the WSC's failure to investigate and correct Title IX violations occurring at WHS in regard to the treatment of female athletes;

   III. Speaking out regarding the WSC's commissioning of and acceptance of a highly falsified Title IX report compiled by the WPS business manager and submitted to the Office of Civil Rights.

17

IV.   Opposing and speaking out in regard to the WSC's failure to investigate and Title IX

violations occurring at WHS including sexual misconduct directed against female

students by male students; and

V.   Opposing and speaking out in regard to the WSC's failure to investigate Title IX

violations occurring at WHS including sexual misconduct directed against female

students by Wayland coaches.

89.   The WSC deliberately and intentionally subjected Mr. Cass to adverse employment

and retaliatory actions including not reinstating him to his position as athletic director and using

local the police to intimidate Cass from speaking on the above-described protected activity.

90.   The WSC bears responsibility for a written statement by Principal Mizoguchi in

which she stated she opposed Cass' reinstatement because of his past and possible future

advocacy for gender equality and opposition to sex discrimination at WHS. (Exhibit M, ¶ 8)

91.   There was a causal connection between the WSC's adverse actions against Mr. Cass

and his protected activities.

92.   The WSC's unlawful conduct was the proximate cause of Mr. Cass's loss of

employment and general damages, including loss of compensation and benefits, which continue

to this day.

### COUNT VII
### VIOLATION OF 42 U.S.C. § 1983 and G.L. c. 12, § 11H, I
### (Downs, Grieco, Unobskey, Miller)

93.   Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set

forth herein.

94.   Defendants, acting under the color of state law, wrongfully deprived Cass of his

constitutional rights, privileges, and freedom by retaliating against him for exercising his First

Amendment rights by publicly speaking out regarding ongoing violations of state and federal law within WPS.

95.   Defendants committed these acts with malice as a result of Cass' whistleblowing activities that brought embarrassment to and public criticism of WSC members and WPS officials.

96.   The Defendants completed all such acts knowing their conduct would deprive Cass of his "right of enjoying and defending his life and liberty" and his "safety and happiness" as defined in the Massachusetts Declaration of Rights.  In addition, they did "interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by [Cass] of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth."

97.   As a direct and proximate result of the Defendants' wrongful actions and deliberate indifference to Cass's rights, Cass has suffered emotional distress, monetary damages, and his character and standing in the community have been irreparably harmed.

## COUNT VIII
### BREACH OF CONTRACT
### (Wayland School Committee, Grieco, Unobskey)

98.   Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set forth herein.

99.   As set forth above, Cass entered into an enforceable employment contract with the WSC and the Wayland Superintendent, a position which Unobskey has held since 2017.  His position as Health & Wellness teacher was covered by the CBA.

100.   WSC and Grieco's refusal to meet with Cass in the spring of 2015 in was in violation of the CBA and the implied terms of his employment contract. (Exhibit C, ¶ 3, First

19

Amend Compl. ¶ 20)

101.    WSC and Unobskey breached the contract by refusing to reinstate Cass to his position as athletic director and restore his seniority rights. (Exhibit B, ¶ 8.  Exhibit L)

102.    WSC allowed lies to be proffered by Principal Mizoguchi and its Attorney John Wilusz to a Federal Judge falsely stating Cass did not possess the proper credentials to work as the WPS athletic director and thus could not be reinstated to his position.

103.    Cass performed his job with commitment and excellence and in accordance with the terms of the contract.

104.    As a direct, proximate and foreseeable result of the Defendants' breach of the employment contract and the terms of the WSC policies and the CBA, Plaintiff has suffered substantial harm, loss, and damages of at least $1,000,000 and continues to increase.

## COUNT IX
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Wayland School Committee, Grieco, Unobskey)

105.    Plaintiff restates, realleges and incorporates all foregoing paragraphs as if fully set forth herein.

106.    Implied in every Massachusetts contract is a covenant of good faith and fair dealing.  That implied covenant existed in Cass' employment contract.

107.    WSC and Grieco's refusal to meet with Cass in the spring of 2015 in accordance with the CBA violates the implied covenant of good faith and fair dealing. (Exhibit C, ¶ 3)

108.    Defendant's unjustified and unsupported refusal to reinstate Cass to his job with full seniority rights in accordance with WSC policies, the CBA, and the language in his contract violates the implied covenant of good faith and fair dealing. (Exhibit B, ¶ 8.  Exhibit L)

109.    WSC and Grieco had a legal duty to not intimidate potential witnesses for Cass'

civil trial vs. Wayland.  By information and belief, both the WSC and their Attorney Adam Simms engaged in witness tampering by subtly threatening WPS employees.

110.    As a direct, proximate and foreseeable result of the Defendants' breach of the implied covenant and good faith and fair dealing, Plaintiff has suffered substantial harm, loss, and damages of at least $1,000,000 and continues to increase.

**WHEREFORE**, Plaintiff Stephen F. Cass respectfully requests that this Honorable Court:

 i. Enter judgment against Defendants;

 ii. Award Cass the damages he sustained because of Defendants' breaches and wrongful actions in an amount to be determined at trial;

 iii. Award plaintiff's attorney's fees, costs and expert witness fees; and

 iv. Award Cass multiple and/or punitive damages where allowable, in an amount to be determined at trial;

 v. Award compensatory damages for lost wages and benefits, physical illness, physical and emotional pain and suffering, emotional distress, humiliation, anxiety, embarrassment, reputational damage, loss of enjoyment of life and out-of-pocket expenses and other financial losses, plus lawful interest;

 vi. Order Cass to be reinstated to his position as athletic director for the Wayland Public Schools together with full seniority rights and retirement benefits; and

 vii. Award such other and further relief as may appear just and proper.

## JURY DEMAND

Plaintiff Stephen F. Cass hereby requests a jury on all counts so triable.

Respectfully submitted,

STEPHEN F. CASS

PO Box 2723
Orleans, MA 02653
stephenfcass@yahoo.com
339.368.2961

Dated: May 20, 2021

Case 1:21-cv-10965   Document 1-3   Filed 06/09/21   Page 1 of 3

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Stephen F. Cass | Jeanne Downs, Arthur Unobskey, Louis Miller, Ellen Grieco, Wayland School Committee, and Regina Tate |

| (b) County of Residence of First Listed Plaintiff   Barnstable | County of Residence of First Listed Defendant   Middlesex |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| pro se plaintiff <br> 9 Captain Linnell Road, P.O. Box 2723, Orleans, MA 02653 <br> stephenfcass@yahoo.com | Adam Simms, BBO #1632617, PIERCE DAVIS & PERRITANO LLP <br> 10 Post Office Square, Ste 1100N, Boston, MA 02109, 617-350-0950 <br> asimms@piercedavis.com  & Att. Peter L. Mello,BBO #659680 (Tate) |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance <br> ❏ 120 Marine <br> ❏ 130 Miller Act <br> ❏ 140 Negotiable Instrument <br> ❏ 150 Recovery of Overpayment & Enforcement of Judgment <br> ❏ 151 Medicare Act <br> ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> ❏ 153 Recovery of Overpayment of Veteran's Benefits <br> ❏ 160 Stockholders' Suits <br> ❏ 190 Other Contract <br> ❏ 195 Contract Product Liability <br> ❏ 196 Franchise | **PERSONAL INJURY** <br> ❏ 310 Airplane <br> ❏ 315 Airplane Product Liability <br> ❏ 320 Assault, Libel & Slander <br> ❏ 330 Federal Employers' Liability <br> ❏ 340 Marine <br> ❏ 345 Marine Product Liability <br> ❏ 350 Motor Vehicle <br> ❏ 355 Motor Vehicle Product Liability <br> ❏ 360 Other Personal Injury <br> ❏ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY** <br> ❏ 365 Personal Injury - Product Liability <br> ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> ❏ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ❏ 370 Other Fraud <br> ❏ 371 Truth in Lending <br> ❏ 380 Other Personal Property Damage <br> ❏ 385 Property Damage Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881 <br> ❏ 690 Other <br><br> **LABOR** <br> ❏ 710 Fair Labor Standards Act <br> ❏ 720 Labor/Management Relations <br> ❏ 740 Railway Labor Act <br> ❏ 751 Family and Medical Leave Act <br> ❏ 790 Other Labor Litigation <br> ❏ 791 Employee Retirement Income Security Act | ❏ 422 Appeal 28 USC 158 <br> ❏ 423 Withdrawal 28 USC 157 <br><br> **PROPERTY RIGHTS** <br> ❏ 820 Copyrights <br> ❏ 830 Patent <br> ❏ 840 Trademark <br><br> **SOCIAL SECURITY** <br> ❏ 861 HIA (1395ff) <br> ❏ 862 Black Lung (923) <br> ❏ 863 DIWC/DIWW (405(g)) <br> ❏ 864 SSID Title XVI <br> ❏ 865 RSI (405(g)) <br><br> **FEDERAL TAX SUITS** <br> ❏ 870 Taxes (U.S. Plaintiff or Defendant) <br> ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 375 False Claims Act <br> ❏ 400 State Reapportionment <br> ❏ 410 Antitrust <br> ❏ 430 Banks and Banking <br> ❏ 450 Commerce <br> ❏ 460 Deportation <br> ❏ 470 Racketeer Influenced and Corrupt Organizations <br> ❏ 480 Consumer Credit <br> ❏ 490 Cable/Sat TV <br> ❏ 850 Securities/Commodities/ Exchange <br> ❏ 890 Other Statutory Actions <br> ❏ 891 Agricultural Acts <br> ❏ 893 Environmental Matters <br> ❏ 895 Freedom of Information Act <br> ❏ 896 Arbitration <br> ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> ❏ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** <br> ❏ 210 Land Condemnation <br> ❏ 220 Foreclosure <br> ❏ 230 Rent Lease & Ejectment <br> ❏ 240 Torts to Land <br> ❏ 245 Tort Product Liability <br> ❏ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☒ 440 Other Civil Rights <br> ❏ 441 Voting <br> ❏ 442 Employment <br> ❏ 443 Housing/ Accommodations <br> ❏ 445 Amer. w/Disabilities - Employment <br> ❏ 446 Amer. w/Disabilities - Other <br> ❏ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ❏ 463 Alien Detainee <br> ❏ 510 Motions to Vacate Sentence <br> ❏ 530 General <br> ❏ 535 Death Penalty <br> **Other:** <br> ❏ 540 Mandamus & Other <br> ❏ 550 Civil Rights <br> ❏ 555 Prison Condition <br> ❏ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION** <br> ❏ 462 Naturalization Application <br> ❏ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District *(specify)*
- ❏ 6  Multidistrict Litigation

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: <br> 42 U.S.C. Section 1983 and Title 20 U.S.C. Section 1681 <br> Brief description of cause: <br> Plaintiff alleges violation of first amendment rights |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: <br> JURY DEMAND:   ☒ Yes   ❏ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE Patti B. Saris, 1:17-cv-11441-PBS | DOCKET NUMBER Related case list attached |
|---|---|---|---|

| DATE <br> 06/09/2021 | SIGNATURE OF ATTORNEY OF RECORD <br> /s/ Adam Simms |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

Print     Save As...     Reset

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**RELATED CASES**:

Stephen F. Cass v. Town of Wayland, et al.
The Honorable Patti B. Saris, 1:17-cv-11441-PBS

Stephen F. Cass v., Robert Irving, et. al.
Middlesex Superior Court, C.A. No. 2181CV00436

Stephen F. Cass v., Scott Parseghian, et. al.
Barnstable Superior Court, C.A. No. 2172CV0060

Stephen F. Cass v. John Ritchie
Barnstable Superior Court, C.A. No. 2072CV00454

Stephen F. Cass v. Augusto Saviatto
Orleans District Court, C.A. No. 2026CV000121

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only) Stephen F. Cass vs. Jeanne Downs, et al.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

    [ ]   I.    410, 441, 470, 535, 830*, 891, 893, 895, R.23, REGARDLESS OF NATURE OF SUIT.

    [✓]   II.   110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442, 443, 445, 446, 448, 710, 720, 740, 790, 820*, 840*,  850, 870,  871.

    [ ]   III.  120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315,  330, 340, 345, 350, 355, 360, 365, 367, 368, 375, 385, 400, 422, 423, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555,  625, 690, 751, 791, 861-865,  890, 896, 899, 950.

            *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    The Honorable Patti B. Saris, 1:17-cv-11441-PBS

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                    YES [✓]      NO [ ]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                    YES [ ]      NO [✓]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                    YES [ ]      NO [✓]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                    YES [ ]      NO [✓]

7.  Do all of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

                                                    YES [✓]      NO [ ]

    A.   If yes, in which division do all of the non-governmental parties reside?

         Eastern Division [✓]         Central Division [ ]              Western Division [ ]

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division [ ]         Central Division [ ]              Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

                                                    YES [ ]      NO [✓]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Adam Simms, BBO #632617

ADDRESS PIERCE DAVIS & PERRITANO LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02109

TELEPHONE NO. 617-350-0950 asimms@piercedavis.com

(CategoryForm12-2011.wpd  - 12/2011)



---- ✂ ---------------------------------------------------------------------------

**Merchant Instructions**                    *Cut On Dotted Line*

**Online e-Label Record**



**QR Code Instructions**

**Scan QR Code to Request Free Package Pickup or to Find a Post Office to drop off Packages**

1. Center the label onto the largest side of the package so that the label information does not wrap around any edge.
2. If not using a self-adhesive label, tape or glue shipping label to the package. DO NOT TAPE OVER BARCODE. Be sure all label edges are secured.
3. DO NOT PHOTOCOPY. Each shipping label number is unique to the intended shipment and can be used only once. If needed, contact merchant for replacement label.
4. If reusing box or container, remove, cover, or mark out completely any other barcode and address markings.
5. Mail the parcel at a Post Office, drop it in a collection box, leave it with a letter carrier or schedule a free carrier pickup at usps.com

| **USPS Tracking Number:** |
| 9201 9902 5456 7429 9964 42 |
| Priority Mail® Return Service |
| Print Date:  6/8/2021 |
| **From:** Keyla Chen |
| 5 Washington St |
| Apt D1 |
| Reading MA 01867 |
| **To:** US ELOGISTICS SERVICE CORP |
| 112 MELRICH RD |
| CRANBURY NJ 08512-3596 |
| RMA #: 3993123017 |

*Thank you for shipping with the United States Postal Service!*

**Check the status of your shipment on the Track & Confirm page at www.usps.com**