UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Stephen F. Cass <br><br> Plaintiff <br><br> v. <br><br> JEANNE DOWNS, ARTHUR UNOBSKEY, LOUISE MILLER, ELLEN GRIECO, REGINA TATE, WAYLAND SCHOOL COMMITTEE <br><br> Defendants | C.A. No. 1:21-cv-10965-PBS |

**PLAINTIFF STEPHEN CASS' OPPOSITION TO
DEFENDANT REGINA TATE'S MOTION TO DISMISS**

## INTRODUCTION

This case concerns the right of an individual to oppose discrimination and sexism, report crimes, and uphold the law without having to fear for his well-being or having his life destroyed. This is the all-too-familiar story about what happens when a person has the courage to stand up to a powerful coach or sports team: (FAC, Pg. 2, ¶ 2) In his article about the case, Kevin Cullen of the Boston Globe Spotlight Team explained it perfectly "What happened to Steve Cass is a classic case of burying the whistleblower in a small town." (Exhibit H, Pg. 3)

It's also the story of what cowardly school officials do when confronted with scandal – they cover it up. This type of situation and behavior plays out in the national media far too frequently. In this case, the coverup was aided and directed in part by the school's attorney Regina Tate ("Tate"), who withheld important information from government agencies, made false public statements, and later told multiple lies in federal court to facilitate the coverup and redirect blame.

Sadly, I was not the first Wayland athletic director to make these allegations and be fired

1

illegally. A similar scenario played out just three years before my arrival when then athletic director Martha Jamieson made accusations about the football program including sexual misconduct, fiscal fraud, gross inequity, and a program beyond accountability. (FAC, ¶¶ 24-25)

This case is really one of four distinct cases that share a common nexus – a school and town afraid to confront an all-powerful football coach and program that were above the law and accountability. At its core, this case is about the coverup perpetuated by the WSC and Tate with different claims and issues than a previous case I brought against the Wayland Schools et al.

I bring this action pro se because of bad luck with past attorneys. In my previous lawsuit, I had two attorneys try to unlawfully deprive me of significant sums of money. For his actions, one of those attorneys has been arraigned on multiple felony charges.

## STATEMENT OF FACTS

From 2013-2015, pro se plaintiff Stephen F. Cass ("I", "Me") was employed as athletic director for the WPS. (FAC, ¶ 18) While employed in Wayland, I discovered extensive problems in the athletic program including rampant cheating, massive fiscal fraud, and the covering up of sexual misconduct by athletes and coaches. In 2019, I won a whistleblower lawsuit in federal court against WPS, whose leaders decided to fire me illegally rather than oppose a powerful coach and his supporters. (FAC, ¶ 16)

WPS attorney Tate was receiving large fees for her services. She was a central figure in covering up crimes and the actions of her clients by publicly blaming me and conspiring with WSC members to mislead the public and government agencies. (FAC, Pg. 2, ¶ 3)

As a result of my public allegations, the WSC and Tate contacted numerous state agencies to conduct investigations but chose to provide them with false and incomplete information. (FAC, Pg. 2, ¶ 4. Exhibit A, ¶¶ 1-8) Because the WSC and Tate did not address

the issues in a timely or accurate manner, I was subjected to merciless harassment by members of the football community, publicly labeled a liar, and became a pariah in the Wayland community. (FAC, Pg. 2, ¶ 4)  I was harassed at the supermarket, jogging, eating dinner…virtually any time I went out in public.  During the summer, several police friends of football coach Scott Parseghian ("Parseghian") joined in on the harassment.  100's of anonymous comments attacking me appeared in online media.  One morning, I found my car covered in white powder outside my Wayland home. Eventually, this led to my illegal arrest by local police friends of the football coach. (FAC, Pg. 2, ¶ 4.  Exhibit H)

This legal action could not have been brought sooner due to the actions of WSC members, WPS officials and their attorneys who withheld important discovery in the previous lawsuit and ignored multiple public record requests for documents. (FAC, ¶¶ 13-17)  Tate herself did not turn over personal emails until after the close of discovery in that legal action.

It made the most sense to include Tate in a lawsuit with members of the WSC.  Their last tortuous act took place in January 2020, when I wanted to speak publicly to expose the coverup of rape and other sexual misconduct in the Wayland athletic department.  Rather than allow me to speak, the WSC employed local police to intimidate me from doing so, as they had done previously. (FAC, ¶ 48)

## ARGUMENT

### A. Standard of Review

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Coll. Hill Properties, LLC v. City of Worcester, 821 F.3d 193, 195–96 (1st Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))*. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678.*

Also, in reviewing a motion to dismiss, the Court "accept[s] as true all well-pled facts alleged in the complaint and draw all reasonable inferences in [the plaintiff's] favor." *Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016) (quoting Evergreen Partnering Grp., Inc. v. Pactiv Corp, 720 F.3d 33, 36 (1st Cir. 2013) (second alteration in original)).*

A plaintiff's pro se status should be considered when evaluating the sufficiency of a complaint. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).*

Therefore, there is significant factual support for all claims in this case to support liability by the defendants.

### B. My Claims Against Tate Are Not Barred By Any Previous Agreement, Res Judicata, Or The Statute of Limitations

#### 1. In The Settlement Agreement, I Did Not Waive My Right to Bring Future Claims Against WPS Attorneys

I signed the Settlement Agreement ("SA") which concluded my previous lawsuit vs WPS et al. certain of its actual meaning and that it allowed me to bring future legal action against Wayland employees, including their attorneys, not specifically named in the SA.[1]

In her MOL, Tate uses the deceptive *phrase "("Stephen F. Cass . . . hereby remises, releases, acquits and forever discharges the [] Wayland Public Schools . . . and its respective officials . . insurers and attorneys, both past and present").* (MOL, Pg. 2, ¶ 1)

---

[1] The meaning of the SA was confirmed by my father J. Foster Cass, a 40-year high school English teacher, and his former teaching colleagues.

4

That false statement was created by compiling various pieces of the SA conjoined to appear as one quote. Here is the actual language: Paragraph 1 of the SA states: *"Stephen F. Cass (hereinafter the "Releasor") hereby remises, releases, acquits and forever discharges the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and **its** respective officials, officers, directors, principals, members, shareholders, agents, servants, employees..."*[2]

This is case of basic middle school English. The use of the possessive determiner 'its' instead of 'their' in the SA means all entities subsequent to the word 'its' can only refer to a singular item - in this case Cabot Risk Strategies, LLC. That means "its [...] attorneys" only refers to Cabot Risk Strategies, LLC and not the Wayland Schools or Town.

Tate agues the following in her MOL:

"[c]ontracts are construed to give effect to the parties' intentions, *Chicago Bridge & Iron Co. v. Lloyd's*, 59 Mass.App.Ct. 646, 656, 797 N.E.2d 434 (2003), and to avoid absurd results. *See Lawrenson v. Worcester Lunch Car & Carriage Mfg. Co.*, 300 Mass. 543, 551, 15 N.E.2d 978 (1938)." *Sunbelt Fin. Grp., LLC v. N. Reading Hardware & Paint Supply, Inc.*, No. 09-0334, 2009 WL 5910530, at *3 (Mass. Super. Nov. 23, 2009). Similarly, such an interpretation also would contradict the well-established "'series-qualifier principle' of grammatical construction, which provides that a modifier at the beginning or end of a series of terms modifies all the terms." *Atain Specialty Ins. Co. v. Bos. Rickshaw LLC*, 387 F. Supp. 3d 157, 162 (D. Mass. 2019) (quoting *Sunbelt Fin. Grp., LLC* in recognizing that "[c]ontracts" under Massachusetts law "are construed ... to

---

[2] Cass v. Wayland Public Schools, et al., 1:17-cv-11441-PBS Complaint, ¶¶ 7, 16 and 45; Release, ¶ 1

avoid absurd results") (internal quotation marks/citations omitted).

Here is additional language from *Atain v. Richshaw* which Tate chose not to cite:

"Massachusetts law is clear that a court interpreting an insurance policy must "construe the words of the policy according to the fair meaning of the language used." *Jacobs v. U.S. Fid. & Guar. Co.*, *417 Mass. 75, 76, 627 N.E.2d 463 (1994) (citation omitted) (emphasis).*

First of all, this is not a question of a 'modifier' as Tate claims. It's a question of grammar and meaning. As Tate was not a party to the drafting of the SA she can in no way speak to the intentions of the parties involved and it is hardly an absurd result for a plaintiff to preserve his right to take legal action against individuals as a result of evidence being intentionally withheld during the previous legal action. The actual legal and linguistic meaning of the SA is certainly a "fair meaning of the language used".

Finally, "Massachusetts law construes ambiguous contract language against the drafter." *ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094 1100 (D.Mass.1990) (citations omitted) (applying Massachusetts law).* "Indeed, the drafter of an ambiguous contractual term is generally held to any reasonable interpretation attributed to it by the nondrafting party." *Id. (citing Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721,724,363 S,N.E.2d,688)(1997).* As I was the non-drafting party of the SA, my reasonable interpretation should be accepted as the legal interpretation of that document. I believed upon signing the document and still do, that the SA did NOT preclude me from bringing future legal action against Wayland attorneys, including Tate, who were not named in that suit.

Tate tries to argue that another court has already resolved the meaning of the SA, but that case is presently with the appellate court.[3] In that case, as a pro se plaintiff, I did a poor job

---

[3] Stephen Cass v Augusto Saviatto, Orleans District Court, CA No. 2026CV0121

explaining the English language component and did not provide relevant case law. Thus, that unresolved matter bears no influence here.

Regardless, I believe this is a question to be resolved through discovery, expert witnesses, and/or at trial. I am certain any English expert would agree with my position.

Therefore, the Plaintiff's Claims are not barred by the Settlement Agreement.

### 2. Res Judicata Does Not Apply In This Case

Res Judicata definitely does not apply here as this is a very different legal action than my successful whistleblower suit, claims made in that lawsuit could not have been raised due to spoliation of evidence, and some claims against the WSC arose after the signing of the SA.

Three conditions are required to invoke res judicata: (1) there is "sufficient identicality between the causes of action asserted in the earlier and later suits"; (2) sufficient identicality between the parties in the two suits; and (3) a final judgment on the merits must have been entered in the previous action." *Arovonitz v. Fafard, 78 Mass. App. Ct. 1, 7 (2010)* None of the conditions are met here.

    i. The issues arising from my time working and living in Wayland did not lend itself to one lawsuit. The macro issues include: illegal termination; civil conspiracy and civil rights violations by football supporters; illegal arrest and police harassment; civil rights violations pertaining to freedom of speech; covering up crimes.

    ii. The case previously adjudicated involved an employment action and an arrest. This legal action involves the coverup of legal issues, the resulting conspiratorial actions and civil rights violations, and the suppression of free speech to coverup terrible crimes.

    iii. This case involves an entirely different population of people – none of the individuals or entities in this case were named in the previous case.

   iv. No judgement on the merits was entered regarding the civil rights violations and damage to my reputation resulting from the WSC and Tate covering up crimes and providing false information to state agencies.

"The modern view, which prevails in Massachusetts, is that a party should be held to account not only for what he actually pleaded, but for what he could have pleaded in the earlier suit." *In re Sonus Networks, Inc., 499 F.3d 47, 61 (1st Cir. 2007)*

  I could not have pleaded claims from this case in the earlier suit for numerous reasons. Tate did not turn over her emails until after the close of discovery in the previous lawsuit. (FAC, ¶ 17) The WPS refused to turn over important emails despite their legal requirement to do so. It took me several years to obtain those documents. (FAC, ¶¶ 13-17) I could not and should not have filed this lawsuit until I had ample evidence of a conspiracy directed against me resulting in part from the actions of the WSC and Tate.

  While I was aware Tate had been communicating with WSC members before February 2018, her public actions did not rise to a level necessary to bring forward claims listed in this lawsuit. It wasn't until I received all her private emails in February and October of 2018 that I became aware of the actual malice and ill-will in her words and actions.

  The WSC and Tate refused to meet with me in the spring of 2015 regarding my employment situation or the illegalities I uncovered. I assumed their actions were in-line with applicable laws and school policies. I learned in 2020 this was not the case (FAC ¶ 14). Had the WSC turned over policies as part of my previous lawsuit or had public record requests for these policies been honored, perhaps this legal action could have been commenced several years ago.

  In further opposition of invoking res judicata in light of the Defendants' intentional spoliation of evidence, "We further note that res judicata is not a shield to protect the

blameworthy. "'The doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time, but rather a rule of fundamental and substantial justice, or public policy and of private peace. The doctrine may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.'" *Grava, 73 Ohio St.3d at 386, 653 N.E.2d at 232 (Douglas, J., dissenting), quoting 46 American Jurisprudence 2d (1994) 786-787, Judgments, Section 522.* "There is something wrong with a legal doctrine that could be used in a situation like the one before us to reward a party for misrepresenting or destroying evidence." *Davis v. Wal-Mart Stores, Inc., 64 F. Supp. 2d 1176 (M.D. Ala. 1999)*

I did not have a full and fair opportunity to resolve previous issues as important evidence was withheld. Furthermore, there are substantially different issues and individuals involved in this case. Therefore, the Plaintiff's Claims are NOT barred by Res Judicata.

### 3. All Claims Were Filed Within The Three-Year Statute of Limitations

The statute of limitations for all claims against Tate is three years. This lawsuit was filed in mid-February 2021, before the three-year deadline. Here are the important dates and evidence as to why claims in this legal action were inherently unknowable for years:

i. February 28, 2018. I received previously unknowable documents from Tate and WSC members regarding their tortuous actions. This is the initial statute of limitations date for this legal. (FAC, ¶ 12)

ii. February 28, 2018, I first learned that Tate and the WSC had not provided complete or accurate information to government agencies investigating illegalities in Wayland athletics. (Exhibit A, ¶ 5) As one small example, they did not provide a

dozen+ names of Wayland coaches who had been coaching without obtaining a state-mandated CORI check. (Exhibit D, ¶ 9)

iii. Spring 2018. The date my severe emotional distress began. (FAC, ¶ 51)

iv. October 2018. I received previously unknowable emails from Tate after the close of discovery in my previous lawsuit. By producing the emails, she voluntarily waived the attorney-client privilege. (FAC, ¶ 16)

v. September 11, 2020. I received emails for the first time showing a conspiracy was formed by coach Parseghian and Wayland football supports to harass and defame me. (FAC, ¶ 13) This date is important as it was the first time I had evidence to prove the tortuous acts which resulted from the coverup perpetuated by the WSC and Tate.

vi. October 19, 2020. On this date I received copies of the WPS Collective Bargaining Agreements ("CBA") from WPS Human Resources Director Kathleen Buckley. (FAC, ¶ 14) This document, along with other WSC policy manuals, had been previously withheld from me despite repeated requests to obtain it. This was the first time I knew the WSC and Tate had violated my rights as a WPS teacher.

Had I brought legal action in 2018 and again in 2021 after receiving the aforementioned documents, Tate could legitimately have complained that I brought this legal action 'piecemeal' and engaged in 'claim splitting'. Bringing this action in February 2021, within the three-year statute of limitation window for all claims, was in the best interest of the defendants and least burdensome to our legal system.

The discovery rule is applicable here. The rule applies to "inherently unknowable" causes of action. *White v. Peabody Const. Co. Inc., 386 Mass. 121, 129 (1982).* A cause of action is "inherently unknowable" when the preceding action or injury could not have been discovered

through the exercise of reasonable diligence. *Id.; see also Hendrickson v. Sears, 365 Mass. 83, 88-91 (1974); Melrose Housing Authority v. New Hampshire Ins. Co., 24 Mass. App. Ct. 207, 212 (1988).* As stated above, I exercised more than reasonable diligence trying to procure documents to support claims brought in this legal action. In addition, the basis for every claim is contained in unknowable confidential communications in the form of private emails. Thus, the discovery rule is in effect with February 28, 2018 the first applicable date.

Therefore, the filing of this lawsuit was done within the three-year statute of limitation for all claims in this legal action.

### C. <u>Tate's Words and Actions Involved Actual Malice</u>

"Section 92 does not define "actual malice," but a 1903 case from the Massachusetts Supreme Judicial Court (SJC) defined the term as "malicious intention" or "ill will" *Conner v. Standard Publ'g Co., 67 N.E. 596, 598 (Mass. 1903)*." [4]

Because the actual malice standard is a subjective one which must necessarily be based on the evaluation of the defendant's state of mind at the time an allegedly defamatory statement about the plaintiff is published, *Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688 (1989)*, and because direct evidence of actual malice is rare, it is ordinarily proved through inference and circumstantial evidence. *Levesque v. Doocy, 560 F.3rd 82, 90 (1st Cir. 2009), citing Bose Corp., 692 F.2d at 196; Harte-Hanks, 491 U.S. at 688*. I allege that the conduct of and statements made by Tate involved actual malice. Circumstantial evidence in support of Tate's actual malice includes: she made numerous false statements about my job performance despite never having seen me work; she lied in federal court about my attendance at her Title IX seminar; she made disparaging comments about me at WSC meeting that were false

---

[4] Harvard Law Review Vol. 123, No. 3 (Jan.,2010), pg. 786

and misleading; she lied and knowingly provided false and incomplete data to government agencies; she was aware WPS officials wanted to fire me; as an employment law expert, she knowingly advised the WSC to ignore their own policies and violate my rights as a WPS employee; she was being paid substantial fees for her work. (FAC, Pg. 2, ¶ 3.  FAC ¶¶ 35-38, 60)

Therefore, ill-will and malicious intention, the standards of actual malice, have been established in regard to the words and actions of Tate.

### D. Tate Is Not Entitled to Absolute Privilege

Tate is absolutely not entitled to absolute privilege.  She waived the attorney-client privilege by voluntarily providing emails between her and WSC members after the close of discovery in my previous legal action.  Also, she made public disparaging remarks about me at televised WSC meetings that were false, malicious, and only intended to coverup the coverup of crimes by WSC members, WPS leaders, and Tate herself. (FAC, ¶ 60.  Exhibit D, ¶ 13)

Tate argues in her MOL:

> ("Statements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith. . . [t]herefore, no action will lie in relation to the testimony of Viveiros at the criminal trial of Correllas.") *(citations omitted). Harrington v. Costello, 467 Mass. 720, 729 (2014), citing Restatement (Second) of Torts, at § 558* ("[t]o create liability for defamation," the alleged defamatory statement must be conveyed via "an unprivileged publication to a third party."). Courts similarly have extended principles of "absolute immunity to government attorneys in their conduct of civil litigation." *Dinsdale v. Com., 424 Mass. 176, 179–83 (1997).*

I will concede that Tate's perjured statements made during my 2019 trial are privileged.  However, her actions as attorney for the WSC were not made during judicial proceedings and do not provide her immunity.

She made private and public comments that were knowingly false and malicious about me.  They include: Tate saying I was "either ineffective or lying" in an email despite possessing

no facts evidence (Exhibit D, ¶ 4); Tate stated "Mr. Cass has not provided any further detail than what is contained in this letter" in her letter to state agencies. She knew this was a lie as she had received at least two other documents with more comprehensive listings of issues (Exhibit D, ¶ 9); Tate needlessly placed blame on me and lied about my employment rights in a televised WSC meeting. (Exhibit D, ¶ 13) In short, she engaged in intentional, malicious conduct to deflect the cowardice and illegal actions of herself and her client.

As stated above, she waived her right to the attorney-client privilege by providing me with previously confidential emails after the close of discovery in my previous legal action.

Tate's actions were motivated by greed and cowardice. She was being paid handsomely by WSC and WPS and, rather than advise them to investigate crimes and adhere to written employment laws and policies, she conspired with school officials to engage in a coverup of crimes and intentionally violate my employment rights.

While I concede her perjured comments at my 2019 trial are privileged, none of the other actions taken by Tate afford her absolute privilege.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion in its entirety.

## REQUEST FOR HEARING

The Plaintiff respectfully requests a hearing before the Court in regard to this matter.

Respectfully submitted,
The Plaintiff,

STEPHEN CASS
PO Box 2723
Orleans, MA 02653

stephenfcass@yahoo.com<br>339.368.2961

July 12, 2021

## CERTIFICATE OF SERVICE

I, Stephen F. Cass, hereby certify that on this date, July 12, 2021, that I delivered a true and accurate copy of this document by email to the Regina Tate's attorney Peter Mello.

------------------------------------------------
STEPHEN CASS