**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Stephen F. Cass

                      Plaintiff

v.

JEANNE DOWNS, ARTHUR UNOBSKEY, LOUISE MILLER, ELLEN GRIECO, REGINA TATE, WAYLAND SCHOOL COMMITTEE

                      Defendants

**C.A. No. 1 :21-cv-10965-PBS**

**PLAINTIFF STEPHEN CASS' OPPOSITION TO**
**THE WAYLAND SCHOOL OFFICIALS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**INTRODUCTION**

This case concerns the right of an individual to oppose discrimination and sexism, report crimes, and uphold the law without having to fear for his well-being or having his life destroyed. This is the all-too-familiar story about what happens when a person has the courage to stand up to a powerful coach or sports team: (FAC, Pg. 2, ¶ 2)   In his article about the case, Kevin Cullen of the Boston Globe Spotlight Team explained it perfectly "What happened to Steve Cass is a classic case of burying the whistleblower in a small town." (Exhibit H, Pg. 3)

It's also the story of what cowardly school officials do when confronted with scandal – they cover it up.  This type of situation and behavior plays out in the national media far too frequently.  In this case, the coverup was committed by Grieco, Downs, Unobskey, Miller, and the Wayland School Committee ("WSC") (collectively "Defendants") who, among others, withheld important information from government agencies, made false public statements, engaged in spoliation of evidence, used police intimidation, and refused to turn over public

1

documents in order to obfuscate the truth.

Sadly, I was not the first Wayland athletic director to make these allegations and be fired illegally. A similar scenario played out just three years before my arrival when then athletic director Martha Jamieson made accusations about the football program including sexual misconduct, fiscal fraud, gross inequity, and a program beyond accountability. (FAC, ¶¶ 24-25)

This case is really one of four distinct cases that share a common nexus – a school and town afraid to confront an all-powerful football coach and program that were above the law and accountability. At its core, this case is about a coverup perpetuated by the WSC with different claims and issues than a previous case I brought against the Wayland Schools et al.

I bring this action pro se because of bad luck with past attorneys. In my previous lawsuit, I had two attorneys try to unlawfully deprive me of significant sums of money. For his actions, one of those attorneys has been arraigned on multiple felony charges.

## STATEMENT OF FACTS

From 2013-2015, pro se plaintiff Stephen F. Cass ("I", "Me") was employed as athletic director for the Wayland Public Schools ("WPS"). (FAC ¶ 18)   While employed in Wayland, I discovered extensive problems in the athletic program including rampant cheating, massive fiscal fraud, and the cover up of sexual misconduct by star athletes and coaches. (FAC Pg. 3 ¶ 2. ¶ 25)

In 2019, I won a whistleblower lawsuit in federal court against WPS, whose leaders fired me illegally rather than oppose a powerful coach and his supporters. (FAC, ¶ 16)   To conclude that lawsuit, I signed a Settlement Agreement ("SA") that preserved my right to take future legal action against WPS employees who were not defendants in that lawsuit. Given my suspicion that WPS officials and local police had covered up evidence, I never would have waived my right to file future lawsuits in case important evidence surfaced. (Def. MOL, Exhibit A)

After my employment ended, the WSC and their attorney Regina Tate ("Tate") contacted

numerous state agencies to investigate my allegations but provided them with false and incomplete information. (FAC, Pg. 2, ¶ 4. FAC, ¶¶ 38)  Because the WSC did not address the issues in a timely or accurate manner, I was subjected to merciless harassment by members of the football community, publicly labeled a liar, and became a pariah in the Wayland community. (FAC, ¶ 40)  Throughout the summer of 2015, I was harassed at the supermarket, jogging, eating dinner...virtually any time I went out in public.  During the summer, police friends of football coach Scott Parseghian ("Parseghian") joined in on the harassment.  100's of anonymous comments attacking me appeared in online media.  One morning, I found my car covered in white powder outside my home. Eventually, this contributed to my illegal arrest by local police friends of the football coach.  (FAC, ¶¶ 40-41)

Part of the WSC coverup was the use of local police to prevent me from speaking at their meetings.  This was done in 2015, 2016 and again in 2020. (FAC, ¶ 48. Exhibit B, ¶ 5.  Exhibit C ¶¶ 4, 14, Exhibit J)  The last tortuous act of WPS officials and WSC members took place in January 2020, when I wanted to speak publicly to expose the coverup of rape and other sexual misconduct in the Wayland athletic department.  Rather than allow me to speak, the WSC again used local police to intimidate me from doing so. (FAC, ¶ 48)

After the conclusion of my previous legal action, I expected to be reinstated to my job in accordance with WSC policies.  I received no response to my request.

This legal action could not have been brought sooner due to the actions of WSC members, WPS officials and their attorneys who withheld important discovery in the previous lawsuit and ignored multiple public record requests for documents. (FAC, ¶¶ 13-17)

## ARGUMENT

### 1.  Standard of Review

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Coll. Hill Properties, LLC v. City of Worcester, 821 F.3d 193, 195–96 (1st Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678.*

Also, in reviewing a motion to dismiss, the Court "accept[s] as true all well-pled facts alleged in the complaint and draw all reasonable inferences in [the plaintiff's] favor." *Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016) (quoting Evergreen Partnering Grp., Inc. v. Pactiv Corp, 720 F.3d 33, 36 (1st Cir. 2013) (second alteration in original)).*

A plaintiff's pro se status should be considered when evaluating the sufficiency of a complaint. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).*

Therefore, there is significant factual support for all claims in this case to support liability by the Defendants.

### 2. Plaintiff's Claims Are NOT Barred By The General Release And Settlement Agreement

I signed the Settlement Agreement ("SA") which concluded my previous lawsuit vs WPS et al. certain of its actual meaning and that it allowed me to bring future legal action against Wayland employees not specifically named in the SA.[1]

---

[1]The meaning of the SA was confirmed by my father J. Foster Cass, a 40-year high school English teacher, and his former teaching colleagues.

In their MOL, the Defendants used the words "party" or "parties" six times in one paragraph to prove their points. (Def. MOL, Pg. 8, ¶ 1)  That supports my position.  The previous SA was an agreement between parties in that case, not me and every person on earth.  None of the defendants in this case were parties in my previous lawsuit and thus are not covered by the SA.

Regarding the true meaning of the SA, in their MOL the Defendants used the deceptive phrase " Cass agreed to release "the Town of Wayland, Wayland Public Schools, Wayland Police Department[ ... ] and its respective officials, officers, directors, principals, members, shareholders, agents, servants, employees, representatives, parent companies, subsidiaries, affiliates, insurers and attorneys, both past and present (hereinafter the "Releasees") [ ... ] from any and all claims [ ... ]or under any other local, state or federal law, regulation, ordinance or bylaw[ ... ] or pursuant to any common law theory of tort or contract." (Def. MOL, Pg. 5, ¶ 2)

That false statement was created by compiling various pieces of the SA conjoined to appear as one quote.  Here is the actual language:  Paragraph 1 of the SA states: "Stephen F. Cass (hereinafter the "Releasor") hereby remises, releases, acquits and forever discharges the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and **its** respective officials, officers, directors, principals, members, shareholders, agents, servants, employees…" (Def. MOL Exhibit A, ¶ 1)

This is case of basic middle school English.  The use of the possessive determiner 'its' instead of 'their' in the SA means all entities subsequent to the word 'its' can only refer to a singular item - in this case Cabot Risk Strategies, LLC.  That means "its respective officials, officers […] employees" only refers to Cabot Risk Strategies, LLC and not the WPS or Town.

Under Massachusetts law, "Failure to read a release or understand its contents does not

void its effects." *Lee v. Allied Sports Associates, Inc., 349 Mass. 544 (1965); see also Release, 17 MASS. PRAC., Prima Facie Case § 17.31 (5th ed. 2020).* The drafters of the SA should have understood the linguistic and legal meaning of the document before giving it to me to sign.

Finally, "Massachusetts law construes ambiguous contract language against the drafter." *ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094 1100 (D.Mass.1990) (citations omitted) (applying Massachusetts law).* "Indeed, the drafter of an ambiguous contractual term is generally held to any reasonable interpretation attributed to it by the nondrafting party." *Id. (citing Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721,724,363 S,N.E.2d,688)(1997).* As I was the non-drafting party of the SA, my reasonable interpretation should be accepted as the legal interpretation of that document. I believed upon signing the document and still do, that the SA did not preclude me from bringing future legal action against Wayland employees or entities who were not named in the SA.

Defendants argue that another court has already resolved the meaning of the SA, but that case is presently with the appellate court.[2] (Def. MOL Exhibit C) In that case, as a pro se plaintiff, I did a poor job explaining the English language component and did not provide relevant case law. Thus, that unresolved matter bears no influence here.

Regardless, I believe this is a question to be resolved through discovery, expert witnesses, and/or at trial. I am certain any English expert would agree with my position.

Therefore, the Plaintiff's Claims are not barred by the Settlement Agreement.

### 3. Plaintiff's Claims Are NOT Barred By The Doctrine Of Res Judicata

Res Judicata definitely does not apply here as this is a very different legal action than my successful whistleblower suit, claims made in that lawsuit could not have been raised due to

---

[2] Stephen Cass v Augusto Saviatto, Orleans District Court, CA No. 2026CV0121

spoliation of evidence, and some claims against the WSC arose after the signing of the SA.

Three conditions are required to invoke res judicata: *(1) there is "sufficient identicality between the causes of action asserted in the earlier and later suits"; (2) sufficient identicality between the parties in the two suits; and (3) a final judgment on the merits must have been entered in the previous action." Arovonitz v. Fafard, 78 Mass. App. Ct. 1, 7 (2010)* None of the conditions are met here.

     i. The issues arising from my time working and living in Wayland did not lend itself to one lawsuit. It's small-town New England where most things that go on in town are interconnected. The macro issues include: illegal termination; civil conspiracy and civil rights violations by football supporters; illegal arrest and police harassment; civil rights violations pertaining to freedom of speech; covering up crimes.

     ii. The case previously adjudicated involved an employment action and an arrest. This legal action involves the coverup of legal issues, the resulting conspiratorial actions and civil rights violations, and the suppression of free speech to coverup crimes.

     iii. This case involves an entirely different population of people – none of the individuals or entities in this case were named in the previous case.

     iv. No judgement on the merits was entered regarding the civil rights violations and damage to my reputation resulting from the WSC and Tate covering up crimes and providing false information to state agencies.

     v. The civil rights claims regarding the WSC using police to silence me last occurred in January 2020. (FAC, ¶ 48)

     vi. The failure of the WSC and WPS officials to reinstate me according to their policies did not occur until 2020. (FAC, ¶¶ 49-51)

vii.  The failure of the WSC and WPS officials to turn over the Collective Bargaining

Agreement between the Wayland Teachers Association and the Wayland School

Committee (the "CBA") during discovery or through public record requests meant the

contract claims could not have been brought until I received that document in 2020.

(FAC ¶¶ 14-16)

"The modern view, which prevails in Massachusetts, is that a party should be held to

account not only for what he actually pleaded, but for what he could have pleaded in the earlier

suit." *In re Sonus Networks, Inc., 499 F.3d 47, 61 (1st Cir. 2007)*

I could not have pleaded claims from this case earlier for numerous reasons.  As stated in

this document, the WPS refused to turn over important emails despite their legal requirement to

do so.  It took me several years to obtain those documents. (FAC, ¶¶ 13-16)  I could not and

should not have filed this lawsuit until I had ample evidence of a conspiracy directed against me

resulting in part from the actions of the WSC.

The WSC refused to meet with me in June of 2015 regarding my employment situation or

the illegalities I uncovered.  I assumed their actions were in-line with applicable laws and school

policies.  I learned years later this was not the case.  Had the WSC turned over their policies as

part of my previous lawsuit or had public record requests for these policies been honored,

perhaps this legal action could have been commenced several years ago. (FAC, ¶¶ 13-17)

The last examples of civil rights deprivation, whistleblower retaliation, and contract

violation occurred in 2020, after the SA was signed. (FAC ¶ 48)

Regarding the res judicata claim in light of the Defendants' intentional spoliation of

evidence, I cite the following:

"We further note that res judicata is not a shield to protect the
blameworthy. "`The doctrine of res judicata is not a mere matter of practice or

procedure inherited from a more technical time, but rather a rule of fundamental and substantial justice, or public policy and of private peace. The doctrine may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.'"

*Grava, 73 Ohio St.3d at 386, 653 N.E.2d at 232 (Douglas, J., dissenting), quoting 46 American Jurisprudence 2d (1994) 786-787, Judgments, Section 522.*

"There is something wrong with a legal doctrine that could be used in a situation like the one before us to reward a party for misrepresenting or destroying evidence." *Davis v. Wal-Mart Stores, Inc., 64 F. Supp. 2d 1176 (M.D. Ala. 1999)*

I did not receive a full and fair opportunity to resolve my legal issues with Wayland. *Restatement of Torts 28(5)(c)* states "because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."

Therefore, the doctrine of res judicata should not be invoked in the interest of "justice and fairness". Also, there is something inherently wrong with rewarding a party for "misrepresenting or destroying evidence". Res judicata should not be applied so rigidly as to "work an injustice". I have not previously brought claims against the Defendants so they have not yet been required to account for their actions. They should not be allowed to escape justice because important documents were intentionally withheld.

Furthermore, there are substantially different issues, claims, and individuals involved in this case. Therefore, the Plaintiff's Claims are NOT barred by Res Judicata.

4. **All Claims Were Filed Within The Existing Statute of Limitations**

The statute of limitations for all claims is three years. This lawsuit was filed in mid-February 2021, before the three-year deadline. Had I brought legal action in 2018 and again in

2021 after receiving previously withheld documents, the Defendants could legitimately have complained that I brought this legal action 'piecemeal' and engaged in 'claim splitting'. Bringing this action in February 2021, within the three-year statute of limitation window for all claims, was in the best interest of the Defendants and least burdensome to our legal system.

Here are important dates and evidence as to why claims in this legal action were inherently unknowable for years:

i.   February 28, 2018.  I received documents from WSC members regarding their tortuous actions.  This is the initial statute of limitations as most actions and documents of WSC members were private up until that point. (FAC, ¶ 12)

ii.   February 28, 2018, I first learned that Tate and the WSC had not provided complete or accurate information to government agencies. (FAC, ¶¶ 12, 37-38)  As one small example, they did not provide a dozen+ names of Wayland coaches who had been coaching without obtaining a state-mandated CORI check. (Exhibit D, ¶ 9)

iii.   My severe emotional distress did not manifest itself until the spring of 2018. (FAC, ¶ 51)

iv.   September 11, 2020.  I received emails which for the first time revealed clear evidence of a conspiracy formed by Coach Parseghian and Wayland football supporters to harass and defame me. (FAC, ¶ 13) This date is important as it was the first time I could prove conspiracy and other tortuous acts resulting from the WSC's coverup.

v.   My reinstatement was denied in the summer of 2020 which is the effective date for contract violations. (FAC ¶ 49)

vi.   October 19, 2020.  On this date I received copies of the CBA from Human

Resources Director Kathleen Buckley. (FAC, ¶ 14) This document, along with other WSC policy manuals, had been previously withheld from me despite repeated requests to obtain it.  This was the first time I knew that the WSC and Tate had violated my rights as a WPS teacher.

     vii.    On January 16, 2020, I was prevented from speaking at a WSC meeting about the coverup of rape and sexual assault by Wayland coaches and athletes. (FAC, ¶ 48.  Exhibit C, ¶ 14)  The WSC, as they had done before, used the local police to prevent me from publicly exposing issues of tremendous importance.

The discovery rule is applicable here.  The rule applies to "inherently unknowable" causes of action. *White v. Peabody Const. Co. Inc., 386 Mass. 121, 129 (1982).* A cause of action is "inherently unknowable" when the preceding action or injury could not have been discovered through the exercise of reasonable diligence. *Id.; see also Hendrickson v. Sears, 365 Mass. 83, 88-91 (1974); Melrose Housing Authority v. New Hampshire Ins. Co., 24 Mass. App. Ct. 207, 212 (1988).*  As stated above, I exercised more than reasonable diligence trying to procure documents to support claims brought in this legal action.  Thus, the discovery rule is in effect with February 28, 2018 the first applicable date along with other 2020 dates.

Therefore, the filing of this lawsuit was done within the three-year statute of limitation for all claims in this legal action.

5.  **<u>The Complaint Does NOT Fail to State A Claim For Common Law Conspiracy (Count I)</u>**

Conspiracy among the Defendants is rooted in their collective decision to not properly investigate crimes and prevent me from speaking at WSC meetings on numerous occasions by using police intimidation.

  To state a claim of civil conspiracy in Massachusetts, the plaintiff must allege, with

sufficient supporting facts, that the defendants "acting in unison, had 'some peculiar power of coercion'" over him that they would not have had if acting independently." *Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002), quoting Fleming v. Dane, 304 Mass. 46, 22 N.E.2d 609, 611 (1939)*." Joint action with resulting coercive effect (or, as Fleming described it, "a commanding influence," *22 N.E.2d at 612)* are hallmark characteristics of conspiracy, consequently."

The fact the Defendants refused to meet with me per my rights guaranteed as a Wayland teacher, refused to turn over critical policy documents despite admitting they possessed them, and the fact that they were all fully aware of the use of police officers at WSC meetings is ample evidence of a joint action and "persons working together", as stated by the defendants. (FAC, ¶¶ 13-15, 48 )

In addition,"the complaint must contain "specific facts" establishing the "existence and scope" *of the alleged conspiracy); see also Farrah ex rel. Farrah Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 248 (D. Mass. 2010)"*

There is substantial evidence and specific facts in the complaint which provide existence and scope. The coverup of issues, the use of police to prevent public speaking and to retaliate, lies to the public, veiled threats to school employees, and providing false and incomplete information to government agencies show both existence and scope of the conspiracy. (FAC, ¶¶ 33-39, 44, 46-48)

Therefore, Plaintiff does NOT Fail to State a Claim for Conspiracy.

6. **Plaintiff's Claims Surrounding Negligent Supervision Should Not Be Dismissed (Count III)**

Grieco and WSC had a duty to not let me be harassed by Parseghian in response to my reporting him for state ethics violations for which he was ultimately convicted. Grieco and WSC

received emails in late July 2015 which supported conspiratorial conduct by football parents and Parseghian but took no action.  Allegations in the Jamieson lawsuit made it clear Parseghian had a history of retaliation against athletic directors who tried to hold him accountable and require him to adhere to school policy and state laws. (FAC, ¶¶ 24-25)

Grieco, Downs and WSC had an obligation to ensure I was reinstated to my position as athletic director in 2020 in accordance with WSC policies.  They were required to supervise Superintendent Unobskey so that he did not violate my employment rights.

Principal Allyson Mizoguchi's affidavit was not submitted as part of actual litigation. Regardless, the WSC should have been aware of her bogus claim that I was not properly certified to be reinstated as the Wayland athletic director. (FAC, ¶¶ 67, 990, 102)  Her false statement could easily be construed as 'Fraud on the Court' as her lie was later recited by Judge Saris during our post-trial hearing in October 2019. (Def. MOL, Pg. 5, ¶ 1)

As a result, the claim of Negligent Supervision Should Be Upheld.

### 7. Plaintiff's Claims Surrounding Negligent Infliction Of Emotional Distress Should Not Be Dismissed (Count V)

I have alleged all of five elements of this claim: 1. negligence; 2. emotional distress; 3. causation; 4. physical harm manifested by objective symptomology; and 5. that a reasonable person would have suffered emotional distress under the same circumstances of the case.

The defendants raise two points.  The first is that I failed to allege negligence.  Evidence of negligence is documented throughout the complaint.   The Defendants owed me a duty of care to thoroughly investigate issues of policy and law (FAC, ¶¶ 33-34, 37-38), to not be subjected to harassment for reporting violations of law, and to not use the police to violate my civil rights. (FAC, ¶ 48. Exhibit B, ¶ 5. Exhibit C ¶¶ 4, 14) They were also negligent for covering up and not addressing the issues in a previous lawsuit filed by a former WPS athletic director in 2011.

13

(FAC, ¶¶ 24-25)  If they had done so, both the public and I would have been aware the issues involving the football program when I accepted the job in 2013.

Defendants state that "a failure to allege specific physical harm is fatal to a negligent infliction of emotional distress claim on a motion to dismiss." *Arroyo v. City of Boston, 2021 WL 2338879, at \*8 (D. Mass. June 8, 2021)(citations omitted)*.

In Massachusetts, a claimant must prove physical harm resulting from emotional distress, but the state is quite liberal in the symptoms that qualify. Nervousness, anxiety, difficulty sleeping, or traumatic flashbacks may all constitute physical harm.  These have been alleged in the complaint. (FAC, ¶¶ 75, 82)

For these reasons, Count V should not be dismissed.

8. **Plaintiff Does NOT Fail to State A Claim For Intentional Infliction Of Emotional Distress (Count IV)**

I endured harassment and suffering no person should have to endure as a result of the actions of the Defendants.  This is well documented through the complaint. (FAC ¶¶ 40, 41, 80)

All four legal criteria for this claim have been satisfied. (Def. MOL Pg. 16. ¶ 3)  By choosing to coverup the serious issues in the football program, the defendants should have known they would be subjecting me to the wrath of the football community, which is exactly what happened.

The Defendants argue that "School Officials cannot be held liable for "not properly investigating Cass's allegations [thereby] subjecting him to scorn, ridicule, and harassment with the Town of Wayland." *See, e.g., Martinez v. Colon, 54 F. 3d 980, 984 (1st Cir. 1995)("The Due Process Clause ordinarily does not require the state to protect an individual's life, limb, or property against the marauding of third parties not acting to the state's behoof.")"*

This defense fails completely.  WSC, Grieco and Downs were in receipt of defamatory

letters from the football community before they were published.  They were communicating with assistant principal Parseghian and/or several football parents as supported by emails.  Therefore, they were conspiring with the marauding third parties who then acted at the "state's behoof".[3]

Despite claims by the defense, it is stated in the notes of WSC member Barb Fletcher that the WSC decided to continue prosecuting me for a bogus crime despite WSC member Donna Bouchard wanting charges to be dropped. (Exhibit C, ¶ 19)  They could easily have confirmed that evidence presented to the District Attorney was fraudulent but took no action.  Thus, the WSC, Grieco and Downs bear responsibility for my baseless prosecution and the associated emotional distress that continues to this day.

It was certainly extreme and outrageous and beyond the bounds of decency for the Defendants to repeatedly use local police to harass me, arrest me, and prevent me from speaking publicly.  The lie and coverup by WPS officials and WSC members simply got too big and the way they justified their actions with the public was to destroy my reputation and turn me into a pariah in Wayland.  The severe emotional distress I suffered is well-documented and not something any person should ever have to endure. (FAC, ¶¶ 75, 82)

For those reasons, the complaint states a claim for Intentional Infliction of Emotional Distress.

### 9. Plaintiff Has NOT Failed To State A Claim Under 42 U.S.C. Section 1983 Or The Massachusetts Civil Rights Act (Count VII)

A § 1983 claim "has two essential elements: the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (quotation omitted)*. Additionally, the plaintiff must show "that the [defendant's] conduct was the

---

[3] CA 2172CV00060 *Cass v Parseghian et al.* ¶¶ 42, 71, 77, 81, 86, 88, 90, 93.

cause in fact of the alleged deprivation." Id. (quotation omitted). The MCRA is the state

analogue to § 1983 but "is narrower than § 1983 in that it limits its remedy to conduct that

interferes with a secured right `by threats, intimidation or coercion.'" *Nolan v. CN8, 656 F.3d 71,*

*76 (1st Cir. 2011) (quoting Mass. Gen. Laws ch. 12, § 11H)).*

For some reason, the defense speaks about my employment situation and violations that

occurred while I served as athletic director.  That is untrue and they missed the point completely.

The actions of Grieco, Downs, Unobskey and Miller which are relevant to this claim all

occurred after my last day as a WPS employee.  The use of police to prevent me from exercising

my 1st Amendment right to freedom of speech in 2015, 2016 and 2020 is a clear violation of my

civil rights. (FAC, ¶ 48. Exhibit B, ¶ 5.  Exhibit C ¶¶ 4, 14)  This use of police to silence a critic

includes my arrest in 2015.  (FAC ¶¶ 41, 42)

Unobskey, Miller, Grieco, and Downs acted under the color of law to use police

intimidation when I wished to publicly provide evidence of sexual misconduct crimes in January

2020. (FAC, ¶ 48)  I understand they did not want to be linked to a scandal covering up rape and

sexual misconduct or exposed for violating their legal duties as 'Mandated Reporters' of child

abuse and neglect as required by the Department of Children and Families.  They used the police

to silence me and perpetuate the coverup, just like they had done numerous times previously.

In addition, Downs and Grieco assume responsibility for the civil rights actions initiated

by Parseghian and football supporters.  Downs and Grieco were in receipt of numerous emails by

members of the football community.

*Under 4.4.3 Section 1983 - Whether a Private Person Conspired with a State Official,*

"[T]o act 'under color of' state law 18 for § 1983 purposes does not require that the defendant be

an officer of the State. It is enough that he is a willful participant in joint action with the State or

its agents. Private persons, jointly engaged with state officials in the challenged action, are acting
see [sic] 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks, 449 U.S. 24, 27-
28 (1980) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970); United States v. Price,
383 U.S. 787, 794 (1966)); see also Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998).*
"[A]n otherwise private person acts 'under color of' state law when engaged in a conspiracy with
state officials to deprive another of federal rights." *Tower v. Glover, 467 U.S. 914, 920 (1984)
(citing Dennis, 449 U.S. at 27-28); see also Adickes, 398 U.S. at 152*

WSC members Grieco and Downs conspired with members of the football community
and share responsibility for violations of my civil rights by others acting on behalf of the state.

Therefore, my federal and state civil rights claims do not fail.

### 10. Plaintiff's Claims Surrounding Breach of Contract (Counts VIII & IX) Are NOT Barred By Res Judicata Or Because He Failed to Exhaust His Remedies Under the CBA.

In my contract, it explicitly stated that "I hereby accept the conditions stated herein and
agree to abide by all relevant laws, Wayland School Committee policies, and administrative rules
and regulations which apply to my position." (FAC, ¶ 20)  I did just that – I enforced policies
that were listed in their manual.

After I succeeded in my whistleblower lawsuit, I expect to be reinstated and provided
seniority rights in accordance with WSC policy.  WSC policy DIF states: "Any WPS employee
who reasonably believes that an incident of fraud has occurred, is occurring, or may occur, shall
promptly and without unreasonable delay report such belief and the basis thereof to the
Superintendent of Schools, or to the Chair of the School Committee if the belief concerns the
Superintendent." "All persons who make a report of a violation or suspected violation of this
policy are subject to the protections of G.L. c. 149, §185, and of G.L. c. 12A, § 14. Accordingly,

no such person who attempts to comply with this policy shall: be dismissed or threatened with dismissal; be disciplined, suspended, or threatened with discipline or suspension; be penalized or be the subject of any other retribution or retaliation; be intimidated or coerced, or be subjected to any other adverse employment action." (FAC, ¶ 21.  Exhibit D, ¶ 14)

MA G.L. c. 149, §185 reads: Any party to said action shall be entitled to claim a jury trial. All remedies available in common law tort actions shall be available to prevailing plaintiffs. These remedies are in addition to any legal or equitable relief provided herein. The court may: (1) issue temporary restraining orders or preliminary or permanent injunctions to restrain continued violation of this section; (2) reinstate the employee to the same position held before the retaliatory action, or to an equivalent position; (3) reinstate full fringe benefits and seniority rights to the employee; (4) compensate the employee for three times the lost wages, benefits and other remuneration, and interest thereon; and (5) order payment by the employer of reasonable costs, and attorneys' fees."

Protections guaranteed under WSC policy DIF include reinstatement and full fringe benefits.  Rather than endorsing their policy and affording me the protections of G.L. c. 149, §185, the WSC fought my legal rights.  Evidence of conduct done by and permitted by the WSC includes: the affidavit of Principal Mizoguchi who proffered lies to prevent my reinstatement; (FAC ¶ 67) lies of WPS John Wilusz send to Judge Saris to prevent my reinstatement (FAC ¶ 67); public remarks by Jeanne Downs in her role as WSC chair which showed she and the WSC opposed my reinstatement, in contradiction of WSC policy. (FAC ¶ 46)

WSC policy DIF clearly states you cannot be dismissed for bringing forward an "incident of fraud".  It also states "…shall promptly and without unreasonable delay report such belief". (Exhibit D, ¶ 14)  This policy clearly set forth my requirements as a WPS employee and

18

guaranteed reinstatement if my claims proved to be true.  Thus, reinstatement was not a decision for the courts, but a right clearly guaranteed by the WSC.

Thus, the WSC, Grieco and Unobskey breached my contract by not immediately reinstating me to my job as athletic director and restoring my seniority rights.

Regarding the Defendants' claims that I did not pursue remedies in the CBA, there are important reasons why.  I am not an expert at employment law and thus asked to meet with the WSC in May 2015 to better understand my rights.  They refused to meet. (FAC, ¶¶ 32-34)  I did not have a copy of the CBA and expected to receive one during discovery in my previous legal action.  It was never provided despite numerous requests for policy manuals.  Later, Unobskey admitted they possessed various policy manuals but offered to provide them for $1,242.50. (FAC, ¶15)  I finally emailed the new WPS human resources director who unwittingly provided the document. (FAC, ¶ 14) Therefore, I was not aware of my rights under the CBA until 2020 as a result of previous lies perpetuated by WSC members and the absurd extortion tactics of Unobskey.  Had the WSC met with me in 2015 or had they provided the CBA agreement when requested, this issue likely could have been resolved years earlier.

Again, Res Judicata does not apply since I did not receive the CBA or become aware the WSC had violated my employment rights until 2020.  Also, the contract violation to which I refer took place after the previous lawsuit concluded.  I could not have brought these claims earlier than I did.

Additionally, the veiled threats made by Grieco and the WSC to school employees not to testify on my behalf violated the general terms of WSC Policy DIF which afforded me the "protections of G.L. c. 149, §185, and of G.L. c. 12A, § 14." (Exhibit C, ¶ 2)  Witness intimidation certainly deprived me of the protections of those laws.

19

Therefor Contract Claims VIII and IX do not fail.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion in its entirety.

## REQUEST FOR HEARING

The Plaintiff respectfully requests a hearing before the Court in regard to this matter.

Respectfully submitted,
The Plaintiff,

STEPHEN CASS
PO Box 2723
Orleans, MA 02653
stephenfcass@yahoo.com
339.368.2961

July 12, 2021

## CERTIFICATE OF SERVICE

I, Stephen F. Cass, hereby certify that on this date, July 12, 2021, that I delivered a true and accurate copy of this document by email to the defendants' attorney Adam Simms.

STEPHEN CASS