# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**C.A. No. 1 :21-cv-10965-PBS**

Stephen F. Cass

                          Plaintiff

v.

JEANNE DOWNS, ARTHUR UNOBSKEY,
LOUISE MILLER, ELLEN GRIECO,
REGINA TATE, AND WAYLAND SCHOOL
COMMITTEE

                          Defendants

## MOTION SEEKING LEAVE TO SUPPLEMENT THE RECORD

Now comes *pro se* Plaintiff Stephen Cass who respectfully requests the court to allow

one supplementary exhibit to be included in the record so it can be raised in argument during

the Motion to Dismiss hearing on January 6, 2022.

When I submitted my Opposition to the Defendants' Motion to Dismiss in this case on

July 12, 2021, the document in question was not yet available.  The supplementary document is

a summary judgment finding dated August 2, 2021 involving a complementary case [Stephen

Cass v. John Ritchie (C.A. NO. 2072CV00454) in Barnstable Superior Court (MA)].  Many of

the issues in this case mirror those in the Cass v. Ritchie case including Statute of Limitations

and the terms of the agreed upon Settlement Agreement.  In addition, the Defendants' have

already submitted a similar document in this case (Exhibit C in Defendants' Motion to Dismiss)

Plaintiff respectfully asks the court to supplement the record with attached Exhibit A.

Respectfully submitted,
*Pro Se* Plaintiff,

STEPHEN CASS

PO BOX 2723
Orleans, MA 02653
stephenfcass@yahoo.com
339.368.2961

January 3, 2022

## CERTIFICATE OF SERVICE

I, Stephen F. Cass, hereby certify that on this date, January 3, 2022, that I delivered a true and accurate copy of this document by email to the defendants' attorneys Peter Mello and Adam Simms.

---------------------------------------------------------------
STEPHEN CASS

# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.                                        SUPERIOR COURT
                                                       CIVIL ACTION
                                                       NO. 2072CV00454

### STEPHEN F. CASS

### vs.

### JOHN RITCHIE

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Stephen F. Cass ("Cass"), brings claims against the defendant, John Ritchie (Ritchie), for defamation (count I), invasion of privacy (count II), interference with advantageous relations (count III), and violation of the Massachusetts Whistleblower Act, G. L. c. 149, § 185 (count IV).  Ritchie filed a motion to dismiss all claims pursuant to Mass. R. Civ. P. 12(b)(6).  Cass filed an opposition with exhibits attached.  The court heard arguments and took the motion under advisement on February 11, 2021.

On May 12, 2021, pursuant to Mass. R. Civ. P. 12(b), the court notified the parties that it was converting the motion to dismiss into a motion for summary judgment because it would be considering "matters outside the pleading" that were "presented to … the court" in deciding the defendant's motion.  The court provided the parties time to conduct discovery and file additional materials.

Cass chose not to present additional material.  On June 23, 2021, Ritchie filed two affidavits and accompanying exhibits relating to a settlement agreement and release that Cass had signed in a prior federal lawsuit, which Ritchie contends bars the present case.  Ritchie's additional materials do not address the other issues he had raised in his Rule 12(b)(6) motion.

On June 26, 2021, the court heard further arguments on the motion and took it under advisement. For the following reasons, Ritchie's motion for summary judgment is **DENIED** as to counts I, II, and III, and **ALLOWED** as to count IV.

## BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Cass, the nonmoving party.

### Cass's Employment as Athletic Director of the Wayland Public Schools

Cass was employed as the athletic director of the Wayland Public Schools ("WPS") from July 2013 through June 2015. Ritchie served as the interim principal for Wayland High School ("WHS") from July 7, 2013 through June 30, 2014. Ritchie and Cass met infrequently due to Ritchie's interim status and reluctance to be involved in any significant changes or decisions regarding WHS athletics. At Ritchie's suggestion, Cass met with assistant superintendent Brad Crozier ("Crozier").

While Ritchie was the interim principal, Cass informed him of what Cass perceived to be an illegal conflict of interest situation involving WHS assistant principal and football coach Scott Parseghian ("Parseghian"). Cass also informed Ritchie of past fiscal fraud committed within the football program, including its use of funds belonging to other teams to fund the football program's preseason trip in Maine. Cass told Ritchie that he felt pressured by Parseghian to pay thousands of dollars for the use of a coach bus that the football program had hired for its preseason trip to Maine, which Cass believed was unethical and fiscally irresponsible.

Cass also informed Ritchie of another WHS coach's plans to run a raffle in violation of the town's and WPS's policies, and Massachusetts law. Cass told Ritchie that he had advised this coach that he could no longer run the raffles, but the coach had ignored him. Cass further

informed Ritchie that WHS's athletics' spending and fundraising practices had been and continued to be inequitable across teams and possibly violated Title IX.

In May 2014, Ritchie and Cass had a mildly contentious discussion about Ritchie's perception that Cass had mishandled interactions with two WHS coaches. Cass objected to Ritchie's characterization of events.

On June 14, 2014, Ritchie approved and submitted to the Wayland School Committee ("WSC") for approval the Wayland football team's application for its out-of-state trip for preseason training in Maine. Ritchie never discussed with Cass the reasons he approved the application.

After Ritchie's employment with WPD ended, he wrote a mostly favorable professional evaluation of Cass. Except for one paragraph with which Cass disagreed, Cass felt the evaluation was fair and accurate.

**Cass's Termination**

In the Spring of 2015, Cass was informed by the WHS principal, Allyson Mizoguchi, that his contract was not being renewed for the next school year. In May and June 2015, Cass complained to the WSC about his employment situation. In June 2015, Cass saw Ritchie in the WHS parking lot. Cass had not seen him previously during the 2014-2015 school year. At that time, Cass initiated a discussion with Ritchie about his apparent involvement in Cass's employment situation and about comments Ritchie had written the prior year in Cass's evaluation. Cass accused Ritchie of covering-up Parseghian's misconduct.

**Cass's Federal Lawsuit**

In 2017, Cass filed a multi-count lawsuit in Federal District Court against the Town of Wayland, the Wayland Police Department ("WPD"), the WPS, and other school officials that did

not include Ritchie (collectively "Wayland defendants").  Among other claims, Cass alleged

unlawful retaliation and discrimination in violation of Title IX ("Title IX count") and unlawful

retaliation and termination in violation of the Massachusetts Whistleblower Act ("Whistleblower

count").

**During Discovery in his Federal Case, Cass Learns of Statements made by Ritchie**

In late February 2018, during discovery in his federal case, Cass first learned of the

following statements that Ritchie had made about him.

1.  Statements to WPS Superintendent Paul Stein

On May 28, 2015, Ritchie met with WPS Superintendent Paul Stein ("Stein") and Crozier

about Cass's employment situation.  Ritchie told them that Cass had stated, "Cheerleading [was]

not ... a sport."  Ritchie also mischaracterized Cass's whistleblowing activities from the previous

year.

2.  Statements to Boston Globe reporter Kevin Cullen

On March 23, 2016, Ritchie sent an email to Boston Globe Spotlight Team reporter

Kevin Cullen ("Cullen") in response to a favorable article that Cullen had written about Cass.  In

his email, Ritchie wrote the following:

> "... I spent thirty years as a Principal and Superintendent at places like Winchester,
> Lincoln-Sudbury, and Brookline before my year in Wayland, and Stephen Cass was – by
> far – the most incompetent, blundering, unethical, and dishonest administrator I've ever
> worked with.
>
> Most of my time in Wayland was spent either trying to keep him out of trouble, or getting
> him out of messes he created for himself.  He was a disaster, and he was a liar.
>
> When, after much, much feedback, and countless earnest efforts to help him do a better
> job, he was told he wouldn't be rehired, he suddenly adopted the mantle of a
> "whistleblower."  This was preposterous and infuriating.

The decision to have him arrested for keeping a laptop was undoubtedly a public relations disaster – but I can't tell you how many times he'd been asked to return it, and how many times he lied about having it.

PS Cass was fired from his previous job in Florida for the exact same reasons he was fired in Wayland, and he tried to adopt a whistleblower role there."

3. Statements to Boston Globe

From May 25-28, 2017, an individual under the name "pushcart," whom Cass claims is Ritchie, wrote four comments in response to a Boston Globe article about Cass. The statements referenced Cass's previous lawsuit in Florida, which Cass had confidentially shared with Ritchie as part of their supervisor-employee relationship. Ritchie had mentioned information about Cass's Florida employment in his March 2016 email to Cullen.

**Summary Judgment and Trial in Cass's Federal Case**

On November 16, 2018, Ritchie signed an affidavit, which the Wayland defendants submitted in support of their motion for summary judgment against Cass in the federal case.[1] The federal district court allowed the Wayland defendants' motion for summary in part and denied it in part.

At trial, Cass prevailed against the Town of Wayland on the Whistleblower count and lost on the Title IX count.

**Post-Trial Settlement Agreement and Release**

After trial, the parties filed post-verdict motions. While these motions were pending, Cass and the Wayland defendants entered into a settlement agreement. In exchange for the payment of an agreed-upon monetary settlement, Cass agreed to release "the [Wayland defendants], Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and

---

[1] The court agrees with Ritchie that his affidavit, dated November 16, 2018, is absolutely privileged and cannot form a basis for any civil liability. See *Correllas* v. *Viveiros*, 410 Mass. 314, 319-320 (1991) (absolute immunity from suit has long been accorded to witnesses in judicial proceedings).

its respective ... employees, ... both past and present (hereinafter the Releasees), of and from

any and all claims ... asserted, or could have been asserted, in the [federal district court]

matter..."

Before agreeing to sign the release, Cass insisted that its language be changed.  The

release's drafter, the Wayland defendants' counsel, agreed to change the language by replacing

the word "their" for "its" in the first sentence, fourth line down.  After that change was made,

Cass signed the release.

**DISCUSSION**

I.   **Standard of Review**

Summary judgment is proper where no genuine issues of material fact exist and the

moving party is entitled to judgment as a matter of law.  Mass. R. Civ. P. 56(c).  See *Cassesso* v.

*Commissioner of Correction*, 390 Mass. 419, 422 (1983).  The moving party bears the burden of

affirmatively demonstrating that no genuine issue of material fact exists on every relevant issue

and that it is entitled to judgment as a matter of law.  *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17

(1989).  Once the moving party satisfies its burden, the burden shifts to the party opposing

summary judgment to allege specific facts establishing the existence of a genuine issue of

material fact.  See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991).  The

court reviews the evidence in the light most favorable to the nonmoving party but does not weigh

evidence, assess credibility, or find facts.  *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370-371

(1982).

II.   **Analysis**

Ritchie argues that Cass's lawsuit against him is barred by the release and the applicable

statute of limitations.  He also argues that he is entitled to an absolute privilege and a conditional

6

privilege regarding the defamation and interference with advantageous relations counts.  Ritchie

further asserts that Cass cannot establish a claim for invasion of privacy because he is entitled to

common law immunity.  Finally, he asserts that Cass's claim for violation of the Massachusetts

Whistleblower Act fails because the statute does not provide a cause of action against

individuals.

    A.  Release

Ritchie argues that the release signed by Cass on December 2, 2019, is a general release

that bars this lawsuit.  Cass argues that the use of the possessive determiner "its" instead of

"their" in the first paragraph (fourth line down) of the release "means all entities subsequent to

the word 'its' can only refer to a singular item – in this case, Cabot Risk Strategies, LLC."  The

release states:

> Stephen F. Cass (hereinafter the "Releasor") hereby remises, releases, acquits and forever discharges the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and **its** respective officials, officers, directors, principals, members, shareholders, agents, servants, employees, representatives, parent companies, subsidiaries, affiliates, insurers and attorneys, both past and present (hereinafter the "Releasees"), of and from any and all claims … arising out of … or connected in any way to any disparate treatment, harassment and/or retaliation allegedly suffered or experienced by the Releasor, as such claims are asserted, or could have been asserted, in the matter of *Stephen Cass v. Town of Wayland, et al.*, United States District Court (D. Mass.), C.A. No. 1:17-cv-11441 (PBS). (emphasis supplied)

A written release is a form of contract and must be construed in accordance with ordinary

contract principles. *Leblanc* v. *Friedman,* 438 Mass. 592, 596 (2003).  "[Courts] must interpret

the words in a contract according to their plain meaning."  *Polito* v. *School Comm. of Peabody*,

69 Mass. App. Ct. 393, 396 (2007). See *Siebe, Inc.* v. *Louis M. Gerson Co.*, 74 Mass. App. Ct.

544, 549 (2009) (citation omitted) ("It is a well-settled rule of contract interpretation that to

determine whether an agreement is clear and unambiguous, the document must be viewed in its

entirety and its language be given its plain, ordinary and usual meaning"). Grammatically

speaking, Cass's interpretation of the first paragraph of the release is correct. The possessive

determiner "its" is singular and thus the word to which it refers must agree in

number. Consequently, the phrase "and its respective officials, … agents, servants,

employees…" only applies to Cabot Risk Strategies, LLC. For this reason, the court agrees with

Cass that under the plain meaning of the language that was specifically negotiated to be used in

the release ("its" instead of "their"), the release does not preclude Cass's claims here.

Moreover, even assuming that the defendant's interpretation of the release is correct, the

release does not bar Cass's claims against Ritchie because the acts underlying Cass's complaint

were all committed by Ritchie after his employment as WHS interim principal ended.

B. Statute of Limitations

Ritchie argues that he is entitled to summary judgment because Cass's claims for

defamation, invasion of privacy, and interference with advantageous relations are barred by the

applicable three-year statute of limitations.[2] G. L. c. 260, §§ 2A, 4. Because factual issues

remain as to when Cass knew or should have known of the harm caused by Ritchie, summary

judgment is inappropriate.

A cause of action accrues when the plaintiff "learns, or reasonably should have learned,

that he has been harmed by the defendant's conduct." *White* v. *Peabody Constr. Co.*, 386 Mass.

121, 129 (1982). "In defamation cases, 'the general rule is that the cause of action accrues, and

the statute of limitations begins to run, on publication of the defamatory statement.'" *Harrington*

v. *Costello*, 467 Mass. 720, 725 (2014), quoting *Flynn* v. *Associated Press*, 401 Mass. 776, 780

---

[2] The court addresses the whistleblower count in Section "II. F."

(1988). "A statement is published when it is communicated to a third party." *Harrington*, 467 Mass. at 725 (citation omitted).

Under the discovery rule, "a cause of action accrues when the plaintiff discovers or with reasonable diligence, should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm." *Id.* at 727. In his affidavit, Cass avers that he first became aware in late-February 2018 that Ritchie had secretly met with, and made "defamatory" statements about him to, Stein and Crozier on May 28, 2015. Cass states that he only learned of this information when he received Crozier's handwritten notes as part of the discovery process in his federal lawsuit. Cass also avers that he did not know about either Ritchie's "defamatory" email to Cullen on March 26, 2016, or his "defamatory" online comments in the Boston Globe under the pseudonym "pushcart" in May 2017 until late-February 2018 when he received copies of the documents in discovery. In light of these averments, and viewing the facts in the light most favorable to Cass, a genuine issue of material fact exists as to when Cass knew or should have known of the harm caused by Ritchie's conduct. See *Riley* v. *Presnell*, 409 Mass. 239, 240 (1991) ("hold[ing] that the question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact").

C.  Defamation (Count I)[3]

To prove defamation, a plaintiff must establish that the defendant published false statements of fact that exposed the plaintiff to either economic loss or public scorn, hatred, ridicule, or contempt in any considerable and respectable class in the community. *Phelan v. May*

---

[3] As noted in footnote 1, Ritchie's claim that he is entitled to an absolute privilege with respect to his affidavit of November 16, 2018, is correct. The court, therefore, will not consider the affidavit as a basis for Cass's defamation claim.

*Dep't Stores Co.*, 443 Mass. 52 (2004); *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64 (2004).  Ritchie argues that Cass's defamation claim fails because the statements identified in Cass's complaint are statements of opinion, which are not actionable.  Although a statement that merely expresses the defendant's opinion, rather than fact, generally cannot be defamatory, a statement of opinion may be defamatory if it implies an underlying assertion of objective fact.  *Milkovich* v. *Lorain Journal*, 497 U.S. 1, 18 (1990); *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 708 (1987).  "The determination whether a statement is a factual assertion or an opinion is a question of law if the statement unambiguously constitutes either fact or opinion."  *King*, 400 Mass. at 709 (internal quotations and citation omitted).  However, the determination whether a statement is a factual assertion or is a statement of opinion is a question of fact if the statement reasonably can be understood both ways (i.e., as fact or as opinion).  *Id.*  See *Jones* v. *Taibbi*, 400 Mass.786, 792 (1987) (if statement reasonably is susceptible of defamatory and nondefamatory meaning, question of fact exists for jury).  In determining whether a statement reasonably can be understood as fact or opinion, the court considers the totality of circumstances and examines the statement in the context within which it was published.  *Cole* v. *Westinghouse Broadcasting Co.*, 386 Mass. 303, 309 (1982).

The first statement identified in Cass's complaint as defamatory is Ritchie's statement to Stein and Crozier that Cass had stated that "cheerleading is not a sport."  This statement is a statement of fact, not opinion.  Further, in the circumstances where Cass is the high school athletic director and Ritchie was speaking to the school superintendent, falsely attributing this statement to him could be defamatory.  See *Masson* v. *New Yorker Magazine*, 501 U. S. 496, 511-512 (1991).

The other statements identified in Cass's complaint as defamatory include statements that fairly can be read as statements of fact or, at the very least, opinions that imply an assertion of fact. For instance, the statement, "Cass was fired from his previous job in Florida for the exact same reasons he was fired in Wayland, and he tried to adopt a whistleblower role there," is reasonably understood as a statement of fact, not opinion. Also, the statement, "When, after much, much feedback, and countless earnest efforts to help him do a better job, he was told he wouldn't be rehired, he suddenly adopted the mantle of a 'whistleblower,'" is a statement of fact, because one can determine the truth as to whether he suddenly became a "whistleblower" or whether he had been one before he was told his contract was not being renewed. Moreover, the statement, "The decision to have him arrested for keeping a laptop was undoubtedly a public relations disaster – but I can't tell you how many times he'd been asked to return it, and how many times he lied about having it," conveys the innuendo that Cass stole a laptop. See *Reilly* v. *Associated Press*, 59 Mass. App. Ct. 764, 774 (2003) ("defamation can occur by innuendo as well as by explicit assertion"). "The existence of defamatory innuendo is a question of fact for the jury to consider." *Id.* Consequently, the statements in question are not opinions as a matter of law. See *Hi-Tech Pharms., Inc.* v. *Cohen*, 277 F. Supp. 3d 236, 244-245 (D. Mass. 2016), citing *Lyons* v. *New Mass Media, Inc.*, 390 Mass. 51, 59-61 (1983).

Ritchie also argues that he is entitled to a conditional privilege for the allegedly defamatory statements he published to Stein and Crozier because, as interim principal, they shared a common interest in Cass's fitness to perform his job. While "[a]n employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job," the facts here show that Ritchie was not employed as

interim principal at the time he made his allegedly defamatory statements to Stein and Crozier (i.e., May 28, 2015). Ritchie's employment with the WPS ended on June 30, 2014. Therefore, Ritchie is not entitled to summary judgment on the grounds of a conditional privilege.[4]

Ritchie further argues that summary judgment is appropriate because Cass was a public official and he cannot show that Ritchie acted with actual malice. In determining whether a government employee is a public official for purposes of defamation, a major factor "is whether the employee's position in government 'has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general interest in the qualifications and performance of all government employees....'" *Rotkiewicz* v. *Sadowsky*, 431 Mass. 748, 752-753 (2000), quoting *Rosenblatt* v. *Baer*, 383 U.S. 75, 86 (1966). "The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Rotkiewicz*, 431 Mass. at 753, quoting *Rosenblatt*, 383 U.S. at 86. "Some of the other relevant considerations in making a determination regarding public official status are the government employee's ability to set policy guidelines that are of importance to public debate; the impact of the government position on everyday life; the potential for social harm from abuse of the government position; as well as the employee's access to the press." *Rotkiewicz*, 431 Mass. at 753. Cass was an athletic director for a small-town high school. He disputes that he is a public official. The question of whether Cass is a public official is a question for the jury. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 862-863 (1975). Summary judgment is therefore denied on count I.

---

[4] Also, Ritchie was not a public official performing his official duties when he made the allegedly defamatory statements; therefore, he is not entitled to a conditional privilege on that basis. *Mulgrew* v. *Taunton*, 410 Mass. 631, 635 (1991).

D. Invasion of privacy (Count II)

Invasion of privacy claims are governed by G. L. c. 214, § 1B, which provides that an individual "shall have a right against unreasonable, substantial or serious interference with his privacy." The statute proscribes disclosure of private facts about an individual that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest." *Bratt* v. *International Bus. Mach. Corp.*, 392 Mass. 508, 518 (1984). Whether an intrusion is unreasonable, substantial, or serious are questions of fact determined by the jury. *Polay* v. *McMahon*, 468 Mass. 379, 383 (2014).

Ritchie claims that Cass cannot prove that Ritchie invaded his privacy because he only disclosed information about a previous lawsuit that Cass had filed, which is in the public domain. Cass asserts that his Florida lawsuit was unknown to anyone except himself, a few school officials in Florida, and Wayland school administrators to whom Cass had confided during his WPS employment application process. He asserts that the Florida lawsuit could not be found through a general computer search; it could only be found by accessing a specific Florida county court system. Furthermore, WPS had already confirmed the facts surrounding Cass's previous employment situation in Florida before they hired him. When Ritchie disclosed the Florida lawsuit information online in the Boston Globe on May 25 and May 28, 2017, he no longer worked for the WPS. In fact, he had not worked for the WPS for nearly three years. Consequently, no apparent legitimate purpose exists for Ritchie's disclosures. Accordingly, genuine issues of material fact exist as to whether Ritchie's disclosures constitute an "unreasonable, substantial, or serious" intrusion of Cass's privacy. *Id.* Summary judgment is thus denied on count IV.

### E. Interference with advantageous relations (Count III)

To prove intentional interference with advantageous relations, a plaintiff must establish that he had an advantageous relationship with a third party (e.g., an employment relationship); the defendant knowingly induced a breaking of the relationship; the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and the plaintiff was harmed by the defendant's actions. The defendant argues that he is entitled to an absolute privilege in connection with the affidavit he filed in Cass's federal lawsuit. As previously mentioned in footnotes 1 and 3, the defendant is correct in this regard, and thus, Cass's interference claim cannot be based on Ritchie's November 2018 affidavit.

Cass's interference claim is also premised on Ritchie's meeting with Stein and Crozier in May 2015, of which Cass alleges he was unaware until February 2018 when he received Crozier's notes during discovery in his federal case. At the time Ritchie met with Stein and Crozier, he was no longer employed by WPS. Cass alleges that, during the meeting, Ritchie attributed false statements to him and lied about Cass's relationships with WPS coaches. Cass also claims that Ritchie lied about Cass's disclosures to Ritchie about the football coach's unethical and unlawful activities. Cass asserts that Ritchie made these false statements about Cass not to promote WPS's interests, but rather to cover-up his own wrongdoing in turning a blind eye to the football coach's misconduct. He alleges that Ritchie's false statements induced Stein to decline renewing Cass's contract for the 2015-2016 school year. There are genuine issues of material fact with regard to Ritchie's intentions and motive. Thus, summary judgment is denied on count III.

F.   Violation of the Massachusetts Whistleblower Act (Count IV)

Ritchie argues that he is entitled to summary judgment on count IV because the Massachusetts Whistleblower statute, G. L. c. 149, § 185, "permits only an 'employer' to be sued, not individual supervisors." *Brosnahan* v. *City of Somerville*, 96 Mass. App. Ct. 1106, 2019 WL 5418314 (unpublished decision), citing *Welch* v. *Ciampa*, 542 F.3d 927, 943 n. 6 (1st Cir. 2008).  The court agrees.  Ritchie is entitled to summary judgment on count IV.

## ORDER

For the foregoing reasons, the defendants' motion for summary judgment is **DENIED** as to counts I, II, and III, and **ALLOWED** as to count IV.

Dated:   8 - 2 - 21

Gregg J. Pasquale
Justice of the Superior Court