UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
                                                    )
STEPHEN F. CASS,                                    )
                                                    )
            Plaintiff,                              )
                                                    )
                  v.                                )       Civil Action No. 21-10965-PBS
                                                    )
JEANNE DOWNS, et al.,                               )
                                                    )
            Defendants.                             )
———————————————————————)

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS
[Docket Nos. 6, 9]

January 10, 2022

Boal, M.J.

        Defendants have moved to dismiss pro se plaintiff Stephen F. Cass's complaint against

them.  Docket Nos. 6, 9.[1]  For the following reasons, I recommend that Judge Saris grant the

Defendants' motions.

I.      FACTUAL AND PROCEDURAL BACKGROUND[2]

        Cass served as athletic director for the Wayland Public Schools from July 2013 through

June 23, 2015.  Complaint at ¶ 18.  Cass alleges that, prior to accepting the position, he was

never informed of the severe fiscal and operational problems which had plagued Wayland

_____

[1] On July 13, 2021, Judge Saris referred the case to the undersigned for full pretrial management,
including report and recommendation on dispositive motions.  Docket No. 17.

[2] Because this matter is before the Court on a motion to dismiss for failure to state a claim, the
Court "recite[s] the facts as alleged in the plaintiff['s] complaint, accepting all well-pleaded facts
as true and drawing all reasonable inferences in favor of the non-moving party."  Abdisamad v.
City of Lewiston, 960 F.3d 56, 57 (1st Cir. 2020) (quoting Squeri v. Mount Ida Coll., 954 F.3d
56, 61 (1st Cir. 2020)).  Except as set forth below, this Court has not considered facts presented
by the parties in their memoranda of law that are not alleged in the Complaint.

athletics for years.  Id. at ¶ 23.  Cass claims that while scrutinizing financial documents in August 2013, he uncovered a long list of issues that had not been mentioned to him before accepting his position, including violations for which the high school football coach, Parseghian, was ultimately "convicted" by the State Ethics Commission in December 2017.  Id. at ¶ 27.  He also alleges that he was informed of and witnessed sex discrimination in Wayland High School athletics.  Id. at ¶ 28.  He further alleges that he informed his superiors of the many "illegal" practices within the athletic program, but none were willing to support Cass in resolving the problems or confronting the coaches involved.  Id. at ¶ 29.

According to Cass, under his direction, Wayland varsity teams achieved more on-field success than at any time in history.  Id. at ¶ 30.  He also reduced the budget deficit from nearly $100,000 to $7,000 in each of his two years as athletic director.  Id.  Despite these accomplishments and the alleged support of the vast majority of Wayland High School coaches, athletes, and parents, Wayland High School Principal Allyson Mizoguchi informed him that his contract would not be renewed in May 2015.  Id. at ¶ 31.

Cass then elevated his concerns and employment issues to the Wayland School Committee, including speaking publicly at a Wayland School Committee meeting, which caused the situation to become a public matter.  Id. at ¶¶ 32-33.  Cass alleges that Attorney Regina Tate, former Town counsel, falsely informed the Wayland School Committee that they were not allowed to meet with him.  Id. at ¶ 35.  As a result, the Wayland School Committee refused to meet with him, which according to Cass was a violation of Wayland School Committee policy and Cass's rights under the collective bargaining agreement.  Id. at ¶ 34.  In addition, Cass alleges that Tate made "numerous spoken and written comments which disparaged Cass rather than applaud his courage for addressing issues and confronting an all-powerful coach."  Id. at ¶

36.  Cass also alleges that the Wayland School Committee and Tate did not properly investigate Cass's complaints.  Id. at ¶ 38.

Cass alleges that, as a result of his raising issues publicly and the Wayland School Committee not investigating his complaints, he was harassed any time he went out in public throughout the summer of 2015.  Id. at ¶ 40.  "This came to a head on October 6, 2015 when Cass was falsely arrested in his home for the alleged theft of a five-year old computer based on false claims by WPS officials."  Id. at ¶ 41.  Cass was found not guilty by directed verdict at trial. Id. at ¶ 42.

Cass continued to advocate for an end to sex discrimination at Wayland High School.  Id. at ¶ 44.  He also continued to advocate that the Wayland School Committee investigate allegations of sexual misconduct being directed at female Wayland High School students.  Id.

These and other related events led Cass to file a multi-count civil rights lawsuit in 2017 against the Town of Wayland, the Wayland Public Schools, the Wayland Police Department, and four Town and/or school employees.[3]  See Cass v. Town of Wayland, et al., No. 17-cv-11441-PBS (D. Mass.) (the "2017 Action").  In the 2017 Action, Cass alleged, as he does in this lawsuit, that his contract non-renewal was in retaliation for his engaging in certain protected activities under Title IX and for raising other concerns about the Wayland High School Athletic Department.  See 2017 Action at Docket No. 46.  Cass's 2017 Action included several of the same claims he asserts here, including defamation, intentional infliction of emotional distress, and claims under 42 U.S.C. § 1983 and M.G.L. c. 12, § 11H.  See id.  On May 30, 2019, Judge

---

[3] Specifically, Cass named Dr. Paul Stein, Superintendent of the Wayland Public Schools; Brad Crozier, Assistant Superintendent of the Wayland Public Schools; Allyson Mizoguchi, the principal of Wayland High School; and Jamie Berger, a police officer with the Wayland Police Department.  See Amended Complaint in 2017 Action, Docket No. 46, at ¶¶ 5-8.

Saris granted in part the defendants' motion for summary judgment, dismissing several claims. 2017 Action at Docket No. 104.

Two claims proceeded to trial: Cass's whistleblower claim and his claim for retaliation under Title IX.  Following an eight-day trial, the jury found in Cass's favor on the whistleblower claim and for the individual school officials on the Title IX retaliation claim.  See 2017 Action at Docket No. 171.

While various post-trial motions were pending, on December 2, 2019, the parties entered into a Settlement Agreement, whereby Cass agreed to release:

> the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and **its** respective officials, officers, directors, principals, members, shareholders, agents, servants, employees, representatives, parent companies, subsidiaries, affiliates, insurers and attorneys, both past and present (hereinafter the "Releasees"), of and from any and all claims, compensatory damages, punitive damages, obligations, promises, covenants, agreements, contracts, controversies, suits, actions, causes of action, injuries (including but not limited to, emotional distress), debts, harms, sums, expenses, costs, attorneys' fees, liabilities and demands, both in LAW and EQUITY, which as against said Releasees, or any of their heirs, executors, administrators, successors or assigns, the Releasor ever had, now has, or may ever have, whether known or unknown, anticipated or unanticipated, by reason of any matter, cause or event whatsoever, from the beginning of the world to the date of the execution of this General Release & Confidential Settlement Agreement, including, but not limited to, any claim arising out of, related to, or connected in any way to any disparate treatment, harassment and/or retaliation allegedly suffered or experienced by the Releasor, as such claims are asserted, or could have been asserted, in the matter of *Stephen Cass v. Town of Wayland, et al.*, United States District Court (D. Mass.) C.A. No. 1:17-cv-11441 (PBS). . .

Docket No. 6-1 at 2 (emphasis added); see also Complaint at ¶ 45.[4]  Cass alleges that the

---

[4] Defendants attached the Settlement Agreement to their motion to dismiss.  Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into a motion for summary judgment.  Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987

Settlement Agreement provided him with the ability to take legal action against any Wayland Public Schools or Town employee who was not a named defendant.  Complaint at ¶ 45.  On December 20, 2019, the parties filed a stipulation of dismissal with prejudice.  2017 Action at Docket No. 201.

Nevertheless, Cass alleges that he "fully expected he would be immediately reinstated to his job" in accordance with Wayland School Committee policy.  Complaint at ¶ 46.  Rather than reward his actions, Wayland School Committee member Downs made several public comments about Cass which had negative connotations.  Id.  No Wayland Public Schools employee was reprimanded, dismissed, or disciplined as a result of violating Cass's employment rights despite Wayland School Committee policies allegedly providing for such disciplinary action.  Id. at ¶ 47.

According to Cass, on January 16, 2020, Wayland officials engaged in a "final act of intimidation and retaliation."  Id. at ¶ 48.  Cass emailed Wayland School Committee member Grieco that he would attend a Wayland School Committee meeting the next day.  Id.  Cass had prepared a speech documenting how Wayland officials and the Wayland Police Department had covered up past incidents of rape and sexual assault.  Id.  In response, Downs sent Cass an email reply that Cass perceived as a veiled threat.  Id.  Upon Cass's arrival at the Town Offices, he encountered Officer Chris Cohen, who was one of three Wayland Police officers who had

---

F.2d 1, 3 (1st Cir. 1993)).  However, when a complaint fails to state a claim unless the defendant retains some measure of liability, dependent on an agreement, the court may consider the agreement in evaluating a motion to dismiss.  See id. at 34 (holding that district court properly considered settlement agreement when ruling on motion to dismiss because existence of defendant's potential liability depended directly on whether claims had been released under settlement agreement and plaintiff did not dispute the settlement agreement's authenticity).  Here, whether the defendants retain some liability in this case is dependent on whether the release contained in the settlement agreement covers the claims alleged in the Complaint.  In addition, Cass has not challenged the authenticity of the Settlement Agreement and specifically references the parties' Settlement Agreement in his Complaint.  Complaint at ¶ 45.  Accordingly, this Court properly may consider the Settlement Agreement in deciding this motion.

arrested Cass.  Id.  Rather than risk being falsely arrested again, Cass chose not to speak at the Wayland School Committee meeting.  Id.

Cass was not reinstated to his athletic director position on July 1, 2020 (the first legal day of the new school year).  Id. at ¶ 49.  Cass appealed to Superintendent Unobskey on August 24, 2020 but received no reply.  Id.

Cass filed this action in Massachusetts Superior Court on May 20, 2021.  See Docket No. 1-2.  He asserts the nine following claims: (1) civil conspiracy, (2) defamation, (3) negligent supervision, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) discrimination and retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, (7) violation of 42 U.S.C. § 1983 and G.L. c. 12, § 11H, I, (8) breach of contract, and (9) breach of the implied covenant of good faith and fair dealing.  Cass named as defendants Arthur Unobskey, an employee of the Wayland Public Schools; Louise Miller, an employee of the Town of Wayland; the Wayland School Committee; Ellen Grieco, the former chair of the Wayland School Committee; Jeanne Downs, the current chair of the Wayland School Committee; and Regina Tate, former Town counsel for the Wayland Public Schools.  Complaint at ¶¶ 2-7.

The Defendants removed the case to this Court on June 9, 2021.  Docket No. 1.  On June 16, 2021, the Defendants filed their motions to dismiss.  Docket No. 6, 9.  Cass opposed the motions on July 12, 2021.  Docket Nos. 15, 16.

II.      ANALYSIS

A.      Standard Of Review

A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the

complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Abdisamad, 960 F.3d at 59 (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id. (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the Court must first "strip away and discard the complaint's conclusory legal allegations."  In re Montreal, Maine & Atlantic Railway, Ltd., 888 F.3d 1, 6 (1st Cir. 2018) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)).  The Court must then "determine whether the remaining facts allow it 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016)).

A document filed by a pro se party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).  See also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

B.     The Release Is Ambiguous As To The Covered Releasees And, Therefore, Raises Issues Of Fact Not Appropriately Decided On A Motion To Dismiss

The Defendants argue that Cass's claims are barred by the general release contained in the Settlement Agreement.  Docket No. 7 at 7-9; Docket No. 10 at 3-4.  A written release is a form of contract and must be construed in accordance with ordinary contract principles.  See Leblanc v. Friedman, 438 Mass. 592, 596 (2003).  The interpretation of a contractual provision is a question of law for the court.  General Hosp. Corp. v. Esoterix Genetic Labs., LLC, 16 F.4th 304, 308 (1st Cir. 2021) (citations omitted).  "Contract language is ambiguous where the

phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." Id. (citation omitted). "[T]he parties' intent must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part." Id. (citation omitted). "Words that are 'plain and free from ambiguity' must be understood in their 'usual and ordinary sense,' and a contract should be interpreted 'in a reasonable and practical way, consistent with its language, background and purpose.'" Id. "[A]bsent ambiguous provisions, we look solely to the language of the contract and do not consider extrinsic evidence." Id. (citation omitted). If the contract is ambiguous, however, the court can also then look to extrinsic evidence "in order to give a reasonable construction in light of the intentions of the parties at the time of the formation of the contract." President and Fellows of Harvard College v. PECO Energy Co., 57 Mass. App. Ct. 888, 896 (2003) (citations omitted).

The Defendants argue that, as employees, officials, and attorneys of the Town of Wayland, they are necessarily covered by the release. Docket No. 7 at 9; Docket No. 10 at 3.[5] However, there is some ambiguity regarding which individuals or entities are covered by the release. The Settlement Agreement identifies the Releasees as "the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC

---

[5] In arguing that Cass's claims in this action are barred by the release, the Defendants focus on the breadth of the types of claims encompassed by the release. See Docket No. 7 at 8-9. However, the question of what types of claims have been released is separate from which individuals or entities have been released. See Cram v. Town of Northbridge, 410 Mass. 800, 804 (1991) ("[A] plaintiff who signs a general release form does not discharge all potential joint tortfeasors who are not specifically mentioned in the release unless the plaintiff intended to do so.").

and *its* respective officials, [. . .] agents, servants, employees, [and] attorneys . . ." as opposed to "*their* respective officials, [. . .], agents, servants, employees [and] attorneys . . ."  The use of the singular pronoun "its" as opposed to the collective pronoun "their" could be interpreted to mean that only Cabot Risk Strategies' officials, agents, servants and employees were included in the release.[6]  Such ambiguity presents issues of fact not appropriately resolved on a motion to dismiss.  Accordingly, I decline to recommend dismissal of the complaint based on the Settlement Agreement.

      C.      <u>Cass's Claims Are Barred By The Doctrine Of Res Judicata</u>

Defendants also argue that Cass's claims are barred by the doctrine of res judicata. Docket No. 7 at 9-10; Docket No. 10 at 4-6.  Federal common law governs the application of claim preclusion where, as here, an earlier federal judgment's preclusive effect is at stake. <u>Maher v. GSI Lumonics, Inc.</u>, 433 F.3d 123, 126 (1st Cir. 2005) (citations omitted).  "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action."  <u>Id.</u> (citation omitted).

In order for claim preclusion to apply, three factors must be present: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of the parties or privies in the two suits."  <u>Id.</u> at 127 (citation omitted).  Here, there can be no dispute that the first element is met.  The 2017 Action ended via a stipulation of dismissal with prejudice, which operates as a final adjudication of the merits of the

---

[6] Defendants argue that the logic behind such an interpretation "is difficult to follow," because "it has no merit," Docket No. 7 at 9, but such an interpretation simply follows basic rules of grammar.  <u>Cf.</u> <u>Elliott v. S.D. Warren Co.</u>, 134 F.3d 1, 9 (1st Cir. 1998) (plaintiff's suggestion that the third person plural possessive "their" in "their subsidiaries, successors, and related companies" referred to a singular company "offend[ed] abecedarian rules of grammar").

dismissed claims.  See United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998) (citations omitted).

The analysis under the second prong turns on whether the two suits share a "common nucleus of operative facts." Cordell v. Howard, 879 F. Supp. 2d 145, 153 (D. Mass. 2012) (citations omitted).  In making that determination, a court looks to factors such as "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations." Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 15 (1st Cir. 2010) (quoting In re Iannochino, 242 F.3d 36, 46 (1st Cir. 2001)).

Here, it is beyond dispute that the majority of the allegations and legal claims in this action are substantially identical to the allegations and claims in the 2017 Action.  In addition, any new allegations also stem from the same series of events as the claims asserted in the 2017 Action.  Cass's claims all arise out of the events leading up to his termination as athletic director in June 2015 and his arrest on October 2015.

Finally, claim preclusion applies if there is privity or "if the new defendant is 'closely related to a defendant from the original action-who was not named in the previous lawsuit . . .'" Silva v. City of New Bedford, 660 F.3d 76, 80 (1st Cir. 2011) (citation omitted).  "Whether a 'close and significant relationship' exists between an original defendant and a defendant only named in a later suit varies with the facts." Airframe Sys., Inc., 601 F.3d at 17.  For instance, where some alleged conspirators are sued in the first action and the remainder in a second suit based on the same allegations, courts have held that there is a sufficiently close relationship that the later defendants could raise preclusion as a defense. Id.  Similarly, courts have held that a "sufficiently close relationship existed based on employment and agency to support claim

preclusion." <u>Silva</u>, 660 F.3d at 80 (collecting cases).  In addition, where an attorney is sued for actions taken on behalf of a client, there is a sufficient relationship between the attorney and the clients such that non-mutual claim preclusion applies.  <u>Hughes v. McMenamon</u>, 379 F. Supp. 2d 75, 79 (D. Mass. 2005).  "The common factors in these cases were that 'the [later] claims were or could have been brought against the original defendant in the original suit'[7] and the subsequent suit tried to hold related defendants liable on related claims."  <u>Airframe Sys., Inc.</u>, 601 F.3d at 18.

Cass was the plaintiff in both actions.  The Defendants in this action are officials or employees of the Town of Wayland, who was a defendant in the 2017 Action, and/or are alleged to have been acting in concert with the defendants in the 2017 Action.  <u>See</u> Complaint at ¶¶ 52-56 (alleging a conspiracy among all of the Defendants for same conduct alleged in the 2017 Actioon).  In addition, Attorney Tate is being sued for actions taken on behalf of the Wayland Public Schools.  <u>See</u> Complaint at ¶¶ 7, 35, 37-38.  Therefore, I find that there is a sufficiently close relationship between the parties in this action and the parties in the 2017 Action.  Accordingly, res judicata bars Cass's claims except for those pertaining to the January 16, 2020 School Committee meeting.

> D.   Cass's Claims Other Than His Contract
>       <u>Claims Are Barred By The Statute Of Limitations</u>

Except for Cass's breach of contract claims, all of Cass's claims have a three-year statute

---

[7] Two allegations could not have been made in the 2017 Action: that Wayland Officials engaged in a final act of retaliation and intimidation on January 16, 2020 in connection with a Wayland School Committee meeting, <u>see</u> Complaint at ¶ 48, and that Superintendent Unobskey failed to reply to Cass's request for reinstatement.  Complaint at ¶ 49.  Defendants' counsel acknowledged as much at oral argument.  As discussed below, however, such allegations fail to state a claim upon which relief may be granted or are otherwise dismissable.

of limitations.[8]  See M.G.L. c. 260, §§ 2A & 5; Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (Section 1983 claims borrow the forum state's limitation period governing personal injury causes of action, which in Massachusetts is three years).

Ordinarily, actions in tort accrue at the time the plaintiff is injured.  Taygeta Corp. v. Varian Assocs., Inc., 436 Mass. 217, 229 (2002) (citation omitted).  Defamation claims accrue on publication of the allegedly defamatory statement.  Flynn v. Associated Press, 401 Mass. 776, 780 (1988).  Here, the events referenced in the complaint, including the allegedly defamatory remarks by Grieco, Downs, and Tate, date back over five years and are therefore time-barred.[9] See, e.g., Complaint at ¶¶ 34-36, 58-60.

Cass argues that because he did not receive certain documents related to his claims until February 2018, while discovery was ongoing in the 2017 Action, his claims are not time-barred under the discovery rule.  Complaint at ¶ 12; Docket No. 15 at 9-11; Docket No. 16 at 9-11. Under the discovery rule, "a cause of action . . . does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known of the factual basis for his cause of action." Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 48 (1st Cir. 2004) (quoting Patsos v. First Albany Corp., 433 Mass. 323, 329 (2001)).

Massachusetts, however, does not require that the plaintiff discover each of the elements

---

[8] Defendants argue that all of Cass's claims are barred by the three-year statute of limitations. Docket No. 7 at 10-12.  Cass, however, has asserted a breach of contract claim, which has a six-year statute of limitations.  M.G.L. c. 260, § 2.  Specifically, Cass alleges that the Wayland School Committee, Grieco, and Unobskey breached Cass's employment contract when they refused to reinstate him to his former position after the parties reached a settlement in December 2019.  See Complaint at ¶¶ 45, 46, 101.  Accordingly, his breach of contract claim is not barred by the statute of limitations.

[9] One event appears to be within the limitations period: Cass's claim regarding the January 16, 2020 School Committee meeting.  See Complaint at ¶ 48.  As discussed below, however, such allegations fail to state a claim.

of his cause of action before the limitations period starts running.  <u>Donovan v. Philip Morris USA, Inc.</u>, 455 Mass. 215, 228 (2009).  Rather, "[i]t is sufficient that the plaintiff has enough information to suggest that he has suffered an injury caused by the defendant's conduct."  <u>Wolinetz</u>, 361 F.3d at 48 (citing <u>Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.</u>, 29 Mass. Appt Ct. 215 (1990)).

Here, Cass was aware of his injury and the cause of his injury when it occurred or shortly thereafter.  Indeed, those same injuries were the subject of the 2017 Action.  The fact that he may not have been aware of all the facts surrounding such injuries does not toll the statute of limitations.  Accordingly, Counts I-VII of the Complaint (with the exception of any claims regarding the January 2020 School Committee meeting) are subject to dismissal on this basis.

     E.    <u>The Complaint Fails To State A Claim Against Defendants Unobskey And Miller</u>

The Complaint names defendants Miller and Unobskey in multiple counts.  However, the Complaint contains no factual allegations regarding defendant Miller.  With respect to defendant Unobskey, Cass alleges only that he failed to respond to Cass's appeal of his denial of reinstatement.  Complaint at ¶ 49.  For that reason, Cass has failed to state any claims against those two defendants.  <u>See</u> <u>Educadores Puertorriqueños En Acción v. Hernández</u>, 367 F.3d 61, 68 (1st Cir. 2004) ("[I]n a civil rights action . . . the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why . . .").  Accordingly, the claims against these two defendants should be dismissed for this reason alone.

     F.    <u>The Waiver Provisions Of The Massachusetts</u>
               <u>Whistleblower Act Do Not Bar Cass's Claims In This Case</u>

In the 2017 Action, Cass pursued a whistleblower claim under the Massachusetts Whistleblower Act, M.G.L. c. 149, § 185.  The Defendants argue that the waiver provision of Section 185(f) bars Cass's state law or common law claims against the Wayland School Officials

named in this case.  Docket No. 7 at 12-13.  That contention is incorrect.  The statute only allows

for claims against an "employer."[10]  See Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 221

(D. Mass. 2002). The waiver provision of the Massachusetts whistleblower statute therefore only

bars claims against the employer, not individual defendants.  Id.  Indeed, the whistleblower

statute was designed "to broaden protection to vulnerable workers, not to force them to jettison

legitimate independent claims as a condition to invoking the statute."  Id.  Accordingly, while

Cass's claims are subject to dismissal based on other grounds, they are not subject to dismissal

based on the waiver provisions of the Massachusetts whistleblower statute.

> G.     Cass's Negligence Claims Are Barred By The Massachusetts Tort Claims Act

The Massachusetts Tort Claims Act ("MTCA") provides that no public employee "shall

be liable for any injury or loss of property or personal injury or death caused by his negligent or

wrongful act or omission while acting within the scope of his office or employment."  M.G.L. c.

258, § 2.  In other words, liability runs to the municipality, not an individual employee, for

negligence claims.  Here, Cass has sued the individual defendants in their individual capacity.

Complaint at ¶¶ 2, 3, 5, 6, 7.  Thus, Cass's negligence claims against the individual defendants

are barred by the MTCA.  See, e.g., Morgan v. Town of Lexington, 138 F. Supp. 3d 82, 91 (D.

Mass. 2015).

> H.     Dismissal of Cass's Claims Against Attorney Tate Is Not
>        Appropriate Based On The Litigation Privilege Or The
>        Doctrine Of Absolute Immunity For Government Attorneys

Attorney Tate also argues that the claims against her are barred by the litigation privilege

---

[10] It is not clear whether Cass alleges that the Wayland School Committee was his employer.  To
the extent that it was, then the Whistleblower Act would bar Cass's claims against the Wayland
School Committee.  This Court need not reach this issue, however, as Cass's claims against the
Wayland School Committee are subject to dismissal on other grounds.

and by principles of absolute immunity for government attorneys in the conduct of civil litigation. Docket No. 10 at 6-7. Application of these doctrines, however, is not properly resolved on a motion to dismiss. "Whether an absolute privilege applies is determined on a case-by-case basis, after a fact-specific analysis." Fisher v. Lint, 69 Mass. App. Ct. 360, 365-366 (2007). In addition, Attorney Tate bears the burden of showing that the litigation privilege and absolute immunity doctrines apply to her alleged conduct. Patriot Group, LLC v. Edmands, 96 Mass. App. Ct. 478, 484 (2019); Penate v. Kaczmarek, 928 F.3d 128, 135 (1st Cir. 2019). Thus, a motion to dismiss based on the litigation privilege or absolute immunity only succeeds when entitlement of the privilege is demonstrated by the complaint itself. If the complaint construed in the plaintiff's favor does not support the application of the privilege, the issue is more properly resolved on a motion for summary judgment or at trial.

Here, Cass alleges that Attorney Tate made numerous defamatory statements against him, including during Wayland School Committee public meetings. Complaint at ¶¶ 36, 59. This Court must construe this allegation in the light most favorable to Cass. Therefore, it is not clear that the statements were made in the institution or conduct of litigation or in conferences and other communications preliminary to litigation, as required for the litigation privilege to apply.[11] See Riverdale Mills Corp. v. Cavatorta North Am., Inc., 189 F. Supp. 3d 317, 321 (D. Mass. 2016). It is also not clear that in making such statements, Attorney Tate was "functioning as an advocate for the state in a way that is intimately associated with the judicial process," as required for absolute immunity. See Penate v. Kaczmarek, No. 3:17-30119-KAR, 2018 WL 6437077, at *12 (D. Mass. Dec. 7, 2018) (citations omitted), aff'd 928 F.3d 128 (1st Cir. 2019).

---

[11] Cass concedes that her statements during the 2019 trial are covered by the litigation privilege. Docket No. 15 at 12-13.

Accordingly, viewing all of the Complaint's allegations as true and construing them in the light most favorable to Cass, this Court cannot rule as a matter of law that the litigation privilege or absolute immunity bar Cass's claims against Attorney Tate.  I therefore decline to recommend dismissal on that basis.

      I.      Cass Has Not Stated A Claim With Respect To The
              January 16, 2020 Wayland School Committee Meeting

As referenced above, one of Cass's allegations could not have been made in the 2017 Action and appears to be within the limitations period: that on January 16, 2020, the Wayland Police Department engaged in a "final act of intimidation and retaliation."  Complaint at ¶ 48. According to Cass, on January 16, 2020, he emailed Wayland School Committee member Grieco that he intended to speak at the School Committee meeting the next day regarding his allegations that the Wayland Public Schools and the Wayland Police Department had covered up past incidents of rape and sexual assault by football players.  Id.  In response, Downs sent Cass an email that Cass perceived as a "veiled threat."  Id.  Upon Cass's arrival at the Town's offices, he encountered Wayland Police Officer Chris Cohen.  Cohen was one of the officers who arrested Cass in 2015.  Id.  "Rather than risk being falsely arrested again Cass chose not to speak at the WSC meeting and publicly expose the terrible crimes and coverup."  Id.

It appears that these allegations form the basis, in part, for Cass's Section 1983 and MCRA claims against Downs, Grieco, Unobskey, and Miller.  See Complaint at ¶¶ 93-97.  Cass does not allege, however, that any of the Defendants had anything to do with Officer Cohen being present at the meeting or that his presence was meant to prevent Cass from speaking at the

meeting.[12]  See Lehman v. Kornblau, 134 F. Supp. 2d 281, 288 (E.D.N.Y. 2001) (citation omitted) ("Section 1983 imposes liability only upon those who actually cause a deprivation of rights, and thus, the 'personal involvement of [each] defendant in alleged constitutional deprivations' is a necessary element of a Section 1983 claim.").

In order to show a First Amendment violation, a plaintiff must show that the defendant intended to inhibit speech protected by the First Amendment, and that the defendant's conduct had a chilling effect on the protected speech that was more than merely "speculative, indirect, or too remote."  Dolan v. Tavares, No. 10-10249-NMG, 2011 WL 10676937, at *6 (D. Mass. May 16, 2011) (citations omitted).  The proper inquiry is "whether the defendant's actions would deter a 'reasonably hardy individual . . .' from exercising his constitutional rights."  Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) (citing Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989)).  Downs' email itself did not deter Cass from attending the meeting.  In addition, Cass has not alleged that any Wayland official or employee prevented him from speaking at the January meeting or that Officer Cohen (or any other officer) threatened him with arrest or in any other way.  He has also failed to allege any facts to support an inference that Officer's Cohen's mere presence at the meeting would chill or silence a person of ordinary firmness from engaging in protected First Amendment activities.

While it might be understandable for Cass, given the other allegations in the complaint, to be fearful of attending the meeting, the standard is not a subjective one.  Rather, Cass must allege facts that support the reasonably hardy person analysis.  He has not done so.  Therefore, he has failed to state a First Amendment violation.  Similarly, he has not stated sufficient facts to

---

[12] In a related action, Cass alleges that Chief of Police Patrick Swanick placed Officer Cohen at the meeting to prevent Cass from speaking.  See Cass v. Irving, et al., No. 21-cv-10966-PBS (D. Mass.), Complaint, at ¶ 154.

support a MCRA claim.  See Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996) (To state a claim under the MCRA, the plaintiff must allege facts plausibly suggesting that the exercise of his constitutional rights has been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by "threats, intimidation, or coercion.").

Accordingly, Cass has failed to state a claim under Section 1983 or the MCRA in connection with the January 16, 2020 Wayland School Committee meeting.

III.    RECOMMENDATION

For the foregoing reasons, this Court recommends that Judge Saris grant the Defendants' motions to dismiss.

IV.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge