UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 1:21-cv-10965-PBS

Stephen F. Cass

      Plaintiff

v.

JEANNE DOWNS, ARTHUR UNOBSKEY,
LOUISE MILLER, ELLEN GRIECO,
REGINA TATE, AND WAYLAND SCHOOL
COMMITTEE

      Defendants

**PRO SE PLAINTIFF STEPHEN CASS' OBJECTIONS TO MAGISTRATE'S**
**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**

  Pursuant to 28 U.S.C. § 636(b)(1), pro se Plaintiff Stephen Cass ("I") respectfully makes the following objections to the Report and Recommendation ("Report", "R&R") entered in this matter on January 10, 2022. For the reasons stated below, the Report should not be followed, and this case should not be dismissed.

**INTRODUCTION**

  I had previously brought a legal action against the Wayland Public Schools ("WPS") in 2017 regarding my illegal termination as Wayland athletic director. This case involves new claims against the Wayland School Committee ("WSC"), several of its members and the new Wayland superintendent regarding actions undertaken after the conclusion of my previous legal action. None of those individuals were defendants in the previous case.

  In order to provide an understanding of the new claims, it was important to provide background information on prior events in the First Amended Complaint ("FAC"). This may have influenced conclusions in the Report. "A document filed by a pro se party "is to be

1

liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). See also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.")." That guidance should apply here.  In my Opposition to the Defendants' Motion to Dismiss ("OppMTD") and the January 6, 2022 Motion to Dismiss hearing("MTDHearing"), without offering new facts, I clarified information contained in the FAC. (OppMTD, Pg. 3 ¶¶ 2,3) (MTDHearing Pg. 17 ¶12, Pg. 19 ¶23, Pg. 20 ¶¶5, 23, Pg. 21 ¶6, Pg. 23 ¶7)

The claims I brought were for (1) breach of contract which occurred in 2019-20 when I was not reinstated to my job or given other remedies, as explicitly and implicitly promised in WSC policies and the WPS Collective Bargaining Agreement ("CBA") which was withheld from me until October 2020 (FAC ¶14-15);  (2) Intentional Infliction of Emotion Distress ("IIED") stemming from the failure of the WSC to properly investigate crimes in violation of their policies, resulting in my being harassed by members of the football community.  IIED claims could not be brought until I purchased previously withheld emails in October 2020, [1]  (3) Civil rights claims arising from the defendants' use of local police officers from September 2015 through 2020 to threaten me for reporting crimes and speaking out in support of girls whose sexual assaults had been covered up by the WSC.

For reasons stated below, I respectfully request the Court decline to accept the recommendations of the Report.  First, the Report erred when it concluded claims are barred by the doctrine of Res Judicata. (R&R Pg. 9)  None of the claims have previously been litigated and the two contract claims are brand-new claims arising from events that occurred in 2019-20.

---

[1] Cass v. Parseghian et al, No. 2172-CV-00060, Barnstable (MA) s.s., FAC ¶19

2

Second, the Report erred in concluding that my claims, other than my contract claims are barred by the statute of limitations. (R&R Pg. 11)  Allegations in the FAC clearly show the first time I had enough information to suggest I had suffered an injury as a result of the defendants' conduct was February 28, 2018 (FAC ¶12.  OppMTD Pg. 10, ¶¶ i,ii )

Third, the Report erred in finding I had not stated a claim with respect to the January 16, 2020 Wayland School Committee meeting. (R&R, Pg. 16)

## LEGAL STANDARD

This Court's review is de novo. See 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

To survive a motion to dismiss, the complaint must include enough facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 555. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." Id. at 547.

## OBJECTIONS

A. The Report Erred In Stating That "Cass's Claims Are Barred By The Doctrine Of Res Judicata"

"In order for claim preclusion to apply, three factors must be present: '(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the

3

earlier and later suits; and (3) an identity of the parties or privies in the two suits.' (R&R Pg. 9) I will concede the 3rd claim preclusion factor of the defendants being in privity with defendants from the 2017 Action. However, the 1st and 2nd factors are not applicable here.

The Report incorrectly asserts "Here, it is beyond dispute that the majority of the allegations and legal claims in this action are substantially identical to the allegations and claims in the 2017 Action. In addition, any new allegations also stem from the same series of events as the claims asserted in the 2017 Action. Cass's claims all arise out of the events leading up to his termination as athletic director in June 2015 and his arrest on October 2015." (R&R, Pg10 ¶2). While the FAC did provide extensive background information, allegations and claims in this lawsuit refer to actions from June 2015 through 2020.  It does not include events "leading up to my termination as athletic director", with one small exception.[2]   This misstatement is at the core of the Report's error in allowing the application of claim preclusion.

The Report is mistaken in concluding that the first element of res judicata was met as there has not previously been an adjudication of the claims brought in this action.  The Report is also incorrect in asserting that there is an identity of the cause of action in this and the 2017 Action (R&R Pg. 9-10.  OppMTD Pg. 7-8 ¶¶ii-vi)

As stated in the FAC, claims several claims occurred in July 2019, after the conclusion of the 2017 Action, and other claims could not have been brought due to the evidence being withheld by the defendants and their privities.

1. <u>Contract Claims</u>

This breach occurred post-trial, in 2019-20.  (FAC Exh. B, FAC ¶¶46-47.  OppMTD Pg. 8 ¶vi)

---

[2] Emails provided by Regina Tate in October 2018 after the close of discovery in my previous legal action v. Wayland Schools et al are from April-May 2015.

4

In order to eliminate fiscal fraud in their schools, the WSC made exceptional guarantees to school employees which supplemented existing state law. (FAC ¶21)  Since the WSC was not my employer, I could not have filed contract claims against them in 2017. (MTDHearing, Pg. 23, ¶¶1-14)  However, since they were the entity who guaranteed 'no harm would come to me' and that I would be 'made whole' if I reported fiscal fraud to them, they were required to honor that agreement.

While other claims in the FAC may be less clear, I was very clear as to the contract claims (FAC ¶¶99-102, 107-108) (FAC ¶¶14, 46, 49, 51) (OppMTD Pg. 10, ¶¶4i, 4v, 4vi.  Pg. 17, ¶10).  The Report even recites this important fact, stating "Cass alleges that he 'fully expected he would be reinstated to his job' in accordance with Wayland School Committee policy." (R&R, Pg. 5, ¶2)

"Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action." Maher v. GSI Lumonics, Inc., 433 F.3d 123 (1st Cir. 2005)  The contract breach by the WSC occurred in 2019 at the earliest and could not have been raised in the 2017 Action.

"Even when two suits concern "essentially the same course of wrongful conduct," the first suit cannot be seen as precluding "claims which did not even then exist and which could not possibly have been sued upon in the previous case." Lawlor v. National Screen Service Corp., 349 U.S. at 327-28 (1955) That is, even if the claims in the two suits appear to be similar, if the circumstances have changed since the first lawsuit such that claims in the second suit are based on facts that did not exist at the time of the first suit, then res judicata cannot apply." Minarik Elec. Co. v. Electro Sales Co., Inc., 223 F. Supp. 2d 334 (D. Mass. 2002)  That reasoning applies here.  While contract claims against the WSC are related to previous events, they did not exist

5

during the 2017 action.

Therefore, these are different claims than what was adjudicated in the 2017 Action. Thus, there has been no judgment on the merits.  Thus, claim preclusion should not apply.

Regarding claims other than the contract claims, "The analysis under the second prong turns on whether the two suits share a 'common nucleus of operative facts." Cordell v. Howard, 879 F. Supp. 2d 145, 153 (D. Mass. 2012) (citations omitted). In making that determination, a court looks to factors such as "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations." Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 15 (1st Cir. 2010) (quoting In re Iannochino, 242 F.3d 36, 46 (1st Cir. 2001)).  The phrase "…time, origin or motivation" is important here.  The overriding factor here is *I had absolutely no desire or 'motivation' to file a lawsuit against the WSC* if they provided me remedies guaranteed in WSC policy DIF.  When they reneged on those promises, I promptly filed suit and included claims not barred by their respective statute of limitations since they form a convenient trial unit with other claims against the WSC.

2. Civil Rights Claims

The last action involving a civil rights violation occurred in January 2020. (R&R Pg. 11,¶2).  While this was an ongoing pattern of behavior by the WSC going back to 2015, I was not motivated to bring claims against the WSC in the 2017 Action since I simply wanted them to honor their contractual promises to me. *Airframe at 36*  Since there was a more recent civil rights violation by the WSC and its members, the continuing violation doctrine links past uses of the police by the WSC in one lawsuit.  "Massachusetts law also adheres to the continuing violation doctrine as an exception to the limitations periods in chapter 151B." DaCosta v. Town of

6

Plymouth, No. 11-cv-12133, at *15 (D. Mass. 2014). The Massachusetts Supreme Judicial Court (the "SJC") has held that "in certain discrimination cases arising under G.L. c. 151B, § 4, . . . the continuing violation doctrine permits plaintiffs to recover for damages occurring outside the limitations period as long as 'there is a discrete violation within the [statute of] limitations period to anchor the earlier claims.'" Crocker v. Townsend Oil Co., Inc., 979 N.E.2d 1077, 1084–85 (Mass. 2012)

Therefore claim preclusion does not apply to the civil rights claims.

3. Title IX Claim

This legal action focuses on the mismanagement of rape and sexual assault allegations by the WSC and WPS officials. (FAC, ¶44.  MTDHearing Pg. 19 ¶23, Pg. 21, ¶¶1-14)  Unlike previous Title IX complaints I made to school administrators from 2013-15, these complaints were made to the WSC from June 2015 through 2020.

My previous Title IX action was based on my advocacy for the rights of female athletes while serving as Wayland athletic director.  The effective final date of that 'whistleblowing' was May 19, 2015 or the date of the adverse employment action taken against me by WPS administrators.  This claim focuses on actions after that date.  Retaliatory acts pertaining to my Title IX advocacy are, (1) The failure of the WSC to reinstatement me to my job and provide me other promised remedies after the conclusion of my trial in 2019, and (2) The use of WPD officers to intimidate me from speaking about the continued coverup of rape and sexual assault which last occurred in 2020.  The principles of *Lawlor at 327-328* apply here since claims in the two suits do appear to be similar, but circumstances have changed since the first lawsuit such that claims in this suit are based on facts that did not exist at the time of the first suit.

Due to the somewhat inartful way I formatted the FAC, the distinction between the two

Title IX actions may be a little unclear. However, as *Erickson* states, a pro se pleading should be held to less stringent standards than if drafted by lawyers. Also, the factual allegations in the FAC are NOT "too meager, vague and conclusory to remove the possibility of relief…". (R&R Pg. 7, ¶1).

Therefore, this is a different claim than what was adjudicated in the 2017 Action and there has been no judgment on the merits regarding this claim. Viewing facts in a light most favorable to the pro se plaintiff, claim preclusion should not apply.

4. Regina Tate's actions

Some of her tortuous conduct was not revealed until the CBA was produced in 2020 and none was evident before October 2018. I mistakenly stated in the FAC that Attorney Tate was only the attorney for the Wayland Public Schools ("WPS"). (FAC ¶7) However, throughout the FAC, I described her tortuous conduct as having been done while working for the WSC and not the WPS. (FAC ¶¶35, 37-38) Therefore, the Report's conclusion that "Attorney Tate is being sued for actions taken on behalf of the Wayland Public Schools" is incorrect (R&R, Pg. 11, ¶2).

Attorney Tate forms a "convenient trial unit" (R&R Pg. 10, ¶1) with the WSC *Airframe at 36, 46* thus, claim preclusion should not apply.

For those reasons and viewing facts in a light most favorable to the pro se plaintiff, the Report's finding that "res judicata bars Cass' claims except for those pertaining to the January 16, 2020 School Committee meeting" (R&R, Pg. 11, ¶3) is in error and no claims should be barred under the doctrine of res judicata.

B. The Report Erred In Stating That Cass's Claims Other Than His Contract Claims Are Barred By The Statute Of Limitations

Because factual issues remain as to when I knew or should have known of the harm caused by the defendants' action, dismissal is inappropriate at this early stage of litigation.

8

Viewing the facts in the light most favorable to the pro se plaintiff, a genuine issue of material fact exists as to when I knew or should have known of the harm caused by the defendants' conduct. See Riley v. Presnell, 409 Mass. 239, 240 (1991) ("hold[ing] that the question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact").  In further support of my position, I state the following:

    i.       The Report Erred in not applying the discovery rule.

"Under the discovery rule, "a cause of action . . . does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known of the factual basis for his cause of action." Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 48 (1st Cir. 2004) (quoting Patsos v. First Albany Corp., 433 Mass. 323, 329 (2001)).  Also,"[i]t is sufficient that the plaintiff has enough information to suggest that he has suffered an injury caused by the defendant's conduct." Wolinetz, 361 F.3d at 48 (citing Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass. Appt Ct. 215 (1990)).

The following statement in the Report is incorrect when viewing facts alleged in the FAC in a light most favorable to me, "Cass was aware of his injury and the cause of his injury when it occurred or shortly thereafter." (R&R, Pg. 13, ¶1)  I was not aware of any injury caused by the WSC or its members until February 28, 2018, within the three-year statute of limitations for all claims in this case. (FAC ¶12)  This was stated clearly in the FAC.

I will address why the Report is in error in and the discovery rule should apply to individual claims.

<u>Civil Conspiracy</u>

As stated above, the discovery rule should apply to when I learned I had a cause of action for Conspiracy. The operative dates for the claim as a whole is February 28, 2018.  As for the

tortuous acts supporting the Conspiracy claim, the following dates apply:

1. Civil Rights. The first date of this claim is September 2015 and the last date is January 16, 2020. I am including previous acts through the continuing violation doctrine.

2. Defamation – February 28, 2018. The last defamatory statement made by the WSC and Downs was in October 2019.

3. IIED – February 28, 2018. January 16, 2020 is the most recent date which pertains to this claim. (FAC ¶48)

Defamation

The Report erred in making the following statement "…remarks by Grieco, Downs, and Tate, date back over five years and are therefore time-barred (R&R. Pg 12) I have provided a clear statement in the FAC as to when I had any information regarding this claim. (FAC ¶12) Factual allegations of a complaint are assumed true and construed in favor of the plaintiff and the Report erred in not following this legal standard.

"[A] cause of action for the redress of an 'inherently unknowable' wrong does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the factual basis for a cause of action." Patsos v. First Albany Corp., 433 Mass. 329 (2001). "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.' " Ibid., quoting from Riley v. Presnell, 409 Mass. 239 , 247 (1991).

Derogatory remarks made by Grieco and Downs were first revealed in previously private emails and notes provided to me on February 28, 2018, but did not quite provide a cause of action. (FAC ¶12) What I did not state, and which I did not feel was necessary at this stage of

10

the pleadings, is that after learning of their comments made in private WSC sessions, I suspected they may have made similar public comments. Thus, over the next 12 months, I reviewed nearly 100 hours of WSC meetings previously broadcast on Wayland Community Television (WAYCAM). This is how and when I learned of their defamatory statements. There is also a 2019 event involving the WSC and Downs which applies to the defamation claim. (FAC ¶46)

Attorney Tate did not turn over her private emails until October 2018, at which point she waived the attorney-client privilege.[3] By then, all discovery and deposition deadlines in the previous legal case had passed. This was the first time I had any idea that Tate had acted with actual malice and had been defaming me soon after I reported issues to school administrators. Also, her comments regarding the CBA were not known to be false and malicious until the CBA was finally produced on October 19, 2020. (FAC ¶14)   Therefore, no claims existed against Attorney Tate before October 2018.

For the aforementioned reasons, the Report erred in not applying the discovery rule appropriately as questions regarding when I should have known of this cause of action exist and should not be resolved at this early stage of litigation.

Federal and State Civil Rights Violations

As stated above, I was aware in September 2015 that the WSC was employing Wayland police officers to intimidate me and prevent me from speaking. However, this behavior continued through 2020 (in fact, in occurred again in 2021). These claims are addressed in more detail later in this document (Pg. 14 ¶F)

C. The Report Erred in not addressing other variations of the Discovery Rule, Equitable Tolling and Equitable Estoppel (Fraudulent Concealment)

---

[3] Tate's private emails to WPS officials is the only evidence in this case which predates May 19, 2015 – the date I was terminated illegally and the end date used in my whistleblower trial against the Wayland schools et al. (TATE OppMTD, Pg. 9, ¶iv.)

11

The fraudulent concealment of evidence was discussed throughout the FAC and Opposition to Motion to Dismiss. (FAC ¶¶13-15, 17.  OppMTD Pg. 7-9)  Evidence pertaining to contract claims and IIED were not produced until 2020 despite repeated requests. (FAC ¶¶14-15) The report erred in not addressing this issue.

Equitable estoppel "presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant -- beyond the wrongdoing upon which the claim is grounded -- to prevent the plaintiff from filing a timely complaint." Cada v. Baxter Healthcare Corp., 920 F.2d at 451 (7th Cir. 1990).  In the context of a statute of limitations, this is also called fraudulent concealment. It "presupposes that the plaintiff has discovered" the injury but may elongate the limitations period where a defendant takes other steps to stop the plaintiff from filing suit. *Id.*.  As stated in the complaint, the CBA was not produced as part of discovery in the 2017 Action or in subsequent public records requests and documents pertaining to harassment which support the IIED claim were requested but not produced until 2020. (FAC ¶¶14-15)  The fraudulent concealment of evidence during and since the 2017 Action allow for equitable estoppel in this case.

Equitable tolling also applies.  Where a plaintiff knows he or she is injured but cannot, through the exercise of reasonable diligence, "obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Cada at 451*  As stated throughout the FAC, I exercised more than reasonable diligence to acquire all necessary documents to determine wrongdoing by the defendants. (FAC ¶¶ 13-15, 17)  Therefore, equitable tolling should apply.

For the aforementioned reasons, the Report erred in barring claims due to statute of limitations.

D. The Report Erred In Part By Stating "The Complaint Fails To State A Claim Against Defendants Miller And Unobskey

I am willing to withdraw all claims against Ms. Miller.  However, the Report erred in making the following conclusion regarding Unobskey "With respect to defendant Unobskey, Cass alleges only that he failed to respond to Cass's appeal of his denial of reinstatement. Complaint at ¶ 49. For that reason, Cass has failed to state any claims against those two defendants." (R&R Pg. 13)  I alleged more against Unobskey than his failure to respond to my appeal for reinstatement.  For the following reasons, claims against Unobskey should not be dismissed:

1. Civil Rights – As stated above, because the Civil Rights claims do not fail, those claims against Unobskey do not fail.

2. Conspiracy, IIED – Unobskey was one of three individuals along with Downs and WPD Chief Patrick Swanick who received the January 15, 2020 email in which I stated my intention to speak at a WSC meeting about the coverup of rape and sexual misconduct in the Wayland schools.  It is unclear which of those three individuals employed WPD officer Chris Cohen to stand guard outside the meeting.  Therefore, it is quite possible Unobskey continued the use of WPD officers to intimidate and threaten me from exercising my First Amendment rights.  The matter of 'who did what' is one to be resolved through discovery and not at this stage of the legal process.

3. Contract Claims – Unobskey, along with Grieco and the WSC, are in part responsible for not reinstating me to my position as promised in WSC policy DIF.  Since the contract claims are not barred by either the statute of limitations or the provisions of the Massachusetts Whistleblower Act (R&R Pg. 13-14, ¶F), the contract claims against Unobskey should not be dismissed.  Indeed, in the Report it states, "The waiver provision of the

13

Massachusetts whistleblower statute therefore only bars claims against the employer, not individual defendants". (R&R Pg14 ¶1)

Therefore, the Court's finding that "The Complaint Fails To State A Claim Against Defendant[s]…Unobskey" should not be upheld.

E. <u>The Report Erred In Dismissing Claims Against Attorney Regina Tate</u>

    1.    Litigation Privilege Does Not Apply. As stated in the Report, "this Court cannot rule as a matter of law that the litigation privilege or absolute immunity bar Cass's claims against Attorney Tate. I therefore decline to recommend dismissal on this basis." (R&R, Pg16, ¶1)

    2.    As stated above in this document, the discovery rule preserves all claims against Tate. (Pg. 10-11) Therefore, all claims against Attorney Tate were filed within the applicable statute of limitations.

    3.    Claims against Attorney Tate should not be barred under the doctrine of res judicata. (Pg. 8)

For those reasons, all claims against Regina Tate should be upheld.

F. <u>The Report Erred In Stating That "Cass Has Not Stated A Claim With Respect To The January 16, 2020 Wayland School Committee Meeting</u>

"In order to show a First Amendment violation, a plaintiff must show that the defendant intended to inhibit speech protected by the First Amendment, and that the defendant's conduct had a chilling effect on the protected speech that was more than merely "speculative, indirect, or too remote." <u>Dolan v. Tavares</u>, No. 10-10249-NMG, 2011 WL 10676937, at *6 (D. Mass. May 16, 2011) (citations omitted). The proper inquiry is "whether the defendant's actions would deter a 'reasonably hardy individual . . .' from exercising his constitutional rights." <u>Barton v. Clancy</u>, 632 F.3d 9, 29 (1st Cir. 2011) (citing Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989))." (R&R Pg. 17)

14

In *Barton v. Clancy* it further states "A campaign of informal harassment, for example, would support a First Amendment retaliation claim if the alleged harassment would have such a chilling effect. See id. (informal harassment short of actual or constructive discharge can support §1983 retaliation claim if "government's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations"); accord Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 42 (1st Cir. 2007) (same); see also Rosario-Urdaz v. Velazco, 433 F.3d 174, 179 (1st Cir. 2006) (stating that a "substantial campaign of harassment, instigated or knowingly tolerated by superiors," can form the basis for a § 1983 claim)."

    i.    The Report's interpretation of the reasonably hardy individual standard is in error as is its assertion that "Cass must allege facts that support the reasonably hardy person analysis. He has not done so. Therefore, he has failed to state a First Amendment violation." (R&R Pg. 17)

I felt at this stage at the pleadings, stating "Rather than risk being falsely arrested again Cass chose not to speak" showed the chilling effect Officer Cohen's presence had on me. (FAC ¶48  Drawing all reasonable inferences in favor of the non-moving party and viewing facts asserted in the FAC in a light most favorable to me, it can be inferred that the presence of Officer Cohen made me extremely fearful, thus I did not list all past retaliatory actions of the WPD. Here is a more complete list of WPD misconduct from the companion case cited in the Report: placed my mugshot on the internet (the only time they did so regarding an alleged larceny); illegally searched both my school-owned computers to dredge up dirt which they shared with the Wayland community; did background checks on my family members; did a background check on me and illegally shared results with the Wayland community; filed false police reports about me in cooperation with football parents; staked out my home; violated state law by not recording an interrogation they did of me then falsified the written report; would not investigate football

parents who harassed me for months.[4]   Therefore the Report erred in making the following conclusion "He has also failed to allege any facts to support an inference that Officer's Cohen's mere presence at the meeting would chill or silence a person of ordinary firmness from engaging in protected First Amendment activities." (R&R Pg. 17)

In the Report (R&R, Pg. 17, ¶3), it states "understandable for Cass […] to be fearful of attending the meeting."  That assertion is incorrect.  I was not at all afraid of attending the WSC meeting as I had no idea police would be present let alone an officer who falsely arrested me in my home. (FAC ¶48)  Given the past conduct of WPD officers and their history of violating their own policies, state and federal law, and falsifying police reports, any "reasonably hardy individual" would be fearful that he would be again be falsely arrested or subjected to an adverse police action if he spoke critically of the Wayland Schools and Police.

Under the MCRA, the Report (R&R, Pg. 18) states "(To state a claim under the MCRA, the plaintiff must allege facts plausibly suggesting that the exercise of his constitutional rights has been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by "threats, intimidation, or coercion.")  Given the past actions of the WPD and Officer Cohen, in that situation any individual would have felt threatened and intimidated and be fearful of exercising his constitutional right to speak freely.

The Report incorrectly states "Cass does not allege, however, that any of the Defendants had anything to do with Officer Cohen being present at the meeting or that his presence was meant to prevent Cass from speaking at the meeting."  See Lehman v. Kornblau, 134 F. Supp. 2d 281, 288 (E.D.N.Y. 2001) (citation omitted) ("Section 1983 imposes liability only upon those who actually cause a deprivation of rights, and thus, the 'personal involvement of [each]

---

[4] See Cass v. Irving, et al., No. 21-cv-10966-PBS (D. Mass.), (¶36-38, 66-67, 72, 76-78)

16

defendant in alleged constitutional deprivations' is a necessary element of a Section 1983 claim."). "In a related action, Cass alleges that Chief of Police Patrick Swanick placed Officer Cohen at the meeting to prevent Cass from speaking". See Cass v. Irving, et al., No. 21-cv-10966-PBS (D.Mass.), Complaint, at ¶ 154." That quote is inaccurate.  Here is the actual quote "Cass emailed WPS officials and Chief Swanick that he intended at speak at the WSC meeting the next day. Cass had prepared a speech documenting how WPS officials and the WPD had covered up past incidents of rape and sexual assault by football players. Upon Cass' arrival, he encountered WPD officer Chris Cohen."[5]

Due to drafting the FAC pro se, some ambiguity may exist here.  However, it is clear I emailed "WPS Officials" as well as Chief Swanick.  Some or all of those individuals bear responsibility for placing Officer Cohen at the meeting.  Downs and Unobskey were the two "Wayland Public School officials" who received the email.  At this stage of the pleadings, it is impossible to know who placed the officer at the meeting.  That is a question to be resolved through discovery.

Therefore, viewing facts in a light most favorable to me, I have not failed to state a claim with respect to the January 16, 2020 Wayland School Committee meeting.

## CONCLUSION

For the above reasons, the Court should not adopt the Report and Recommendation of the Magistrate Judge and should enter its Order consistent with the Plaintiff's above objections.

In the event the Court accepts the Report and Recommendation and dismisses my claims, I respectfully request that it do so with prejudice so to allow the filing of a second amended complaint.

---

[5] See Cass v. Irving, et al., No. 21-cv-10966-PBS (D. Mass.), (¶80)

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.1(d), I respectfully request oral argument in connection with the above-stated objections.

Dated this 4th day of February, 2022.

Respectfully submitted,
*Pro Se* Plaintiff,

_____
STEPHEN CASS

PO BOX 2723
Orleans, MA 02653
stephenfcass@yahoo.com
339.368.2961
